1  Graham S.P. Hollis (SBN 120577)
   ghollis@grahamhollis.com
2  Geoff D. LaVal (SBN 279987)
   glaval@grahamhollis.com
3  GRAHAMHOLLIS APC
   3555 Fifth Avenue
4  San Diego, CA  92103
   Telephone:    (619) 692-0800
5  Facsimile:    (619) 692-0822

6  Michael D. Singer (SBN 115301)
   msinger@ckslaw.com
7  Janine R. Menhennet (SBN 163501)
   jmenhennet@ckslaw.com
8  COHELAN KHOURY & SINGER
   605 C Street, Suite 200
9  San Diego, CA 92101
   Telephone:    (619) 595-3001
10 Facsimile:    (619) 595-3000

11 Attorneys for Plaintiff Michael Stoddart

12              UNITED STATES DISTRICT COURT

13         FOR THE EASTERN DISTRICT OF CALIFORNIA

14 MICHAEL H. STODDART individually and on        Case No.:    2:12-cv-01054-KJM-CKD
   behalf of similarly situated and similarly
15 aggrieved current and former employees of       **CLASS ACTION**
   EXPRESS SERVICES, INC. d/b/a EXPRESS
16 EMPLOYMENT PROFESSIONALS,                        **[UNOPPOSED]**
   PHILLIPS & ASSOCIATES, INC. d/b/a
17 EXPRESS EMPLOYMENT                               **MEMORANDUM OF POINTS AND**
   PROFESSIONALS, WESTERN WINE                      **AUTHORITIES IN SUPPORT OF**
18 SERVICES, INC., and Does 1 through 100,          **PLAINTIFF'S MOTION FOR PRELIMINARY**
   inclusive,                                       **APPROVAL OF CLASS ACTION**
19                                                  **SETTLEMENT**
                   Plaintiff,
20
            v.
21
   EXPRESS SERVICES, INC. d/b/a EXPRESS            Date:          April 20, 2018
22 EMPLOYMENT PROFESSIONALS,                        Time:          10:00 a.m.
   PHILLIPS & ASSOCIATES, INC. d/b/a               Courtroom:     3 (15th Floor)
23 EXPRESS EMPLOYMENT                               Judge:         Hon. Kimberly J. Mueller
   PROFESSIONALS, WESTERN WINE
24 SERVICES, INC., and Does 1 through 100,
   inclusive,
25                                                  Action Filed:   March 13, 2012
                   Defendants.                      Case Removed:   April 20, 2012
26                                                  Trial Date:     None set

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION AND BACKGROUND ......................................................... 1

II.     THE PARTIES.......................................................................................... 2

    A.      Plaintiff Michael Stoddart .................................................................. 2

    B.      Defendant Express Services, Inc. ...................................................... 2

    C.      Defendant Phillips & Associates ........................................................ 2

    D.      Defendant Western Wine .................................................................... 3

    E.      The Class .......................................................................................... 3

III.    OVERVIEW OF FACTS AND CONTENTIONS .................................................. 3

IV.     THE PROPOSED CLASS ............................................................................. 4

V.      LITIGATION HISTORY ............................................................................... 4

VI.     INVESTIGATION AND DISCOVERY .............................................................. 6

VII.    MEDIATION AND THE PROPOSED SETTLEMENT ........................................... 7

    A.      Mediation .......................................................................................... 7

    B.      The Settlement Terms ....................................................................... 7

    C.      The Notice, No Claim Form Required and Release of Claims............. 8

VIII.   ARGUMENT ............................................................................................. 9

    A.      Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure ............................................................ 9

    B.      The Proposed Settlement is Fair, Adequate and Reasonable........................... 10

        1.      Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation .............................................................. 11

        2.      The Extent of Discovery and Stage of the Proceedings Support the Settlement ... 13

        3.      The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations and Is a Reasonable Compromise of Claims ................................... 13

IX.     ATTORNEYS' FEES REQUEST AND SERVICE PAYMENT TO NAMED PLAINTIFF .... 16

    A.      Motion for Award of Attorneys' Fees and Litigation Costs ........................... 16

    B.      Class Representative Service Payment to the Named Plaintiff ...................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

X.     THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ........... 17

       A.     All Rule 23(a) Prerequisites Certification Are Present .................................... 17

       B.     Rule 23(b)(3) —Predominance and Superiority ........................................... 18

       C.     PAGA Penalty Claims .................................................................................. 19

       D.     Cy Pres Distribtuion .................................................................................... 19

XI.    CONCLUSION ......................................................................................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## **TABLES OF AUTHORITIES**

2
                                                                                              **PAGE**

3
## **CASES**

4
*Amchem Prods., Inc. v. Windsor*
5
    521 U.S. 591 (1997)..................................................................................... 17, 18

6
*Armstrong v. Bd. of Sch. Directors*
    616 F.2d 305 (7th Cir. 1980) ............................................................................ 10

7
*Berry v. School Dist. of City of Benton Harbor*
8
    184 F.R.D. 93 (W.D. Mich. 1998) .................................................................... 10

9
*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................................... 13

10

11
*Brotherton v. Cleveland*
    141 F. Supp. 2d 907 (S.D. Ohio 2001) ............................................................. 17

12
*Chindarah v. Pick Up Stix, Inc.*
13
    171 Cal.App.4th 796 (2009) ............................................................................... 7

14
*Class Plaintiffs v. City of Seattle*
15
    955 F.2d 1268 (9th Cir. 1992) .......................................................................... 11

16
*Comcast Corp. v. Behrend*
17
    133 S. Ct.1426 (2013)................................................................................... 12, 13

18
*Crown, Cork & Seal Co. v. Parker*
    462 U.S. 345 (1983) ......................................................................................... 19

19
*Dennis v. Kellogg Co.*
20
    697 F.3d. 858 (9th Cir. 2012) .......................................................................... 20

21
*Dunleavy v. Nadler*
22
    213 F.3d 454 (9th Cir. 2000) ........................................................................... 10

23
*Garcia v. Gordon Trucking, Inc.*
    2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) .................................................. 19

24
*Glass v. UBS Financial Services*
25
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................................. 17

26
*Hanlon v. Chrysler Corp.*
27
    150 F.3d 1011 (9th Cir. 1988) .............................................................. 10, 17, 18

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

*Hopson v. Hanesbrands Inc.*
   2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) ............................................................. 19

*Hopson v. Hanesbrands Inc.*
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ............................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*
   213 F. 3d 454 (9th Cir. 2000) ................................................................................... 15

*In re Mid-Atlantic Toyota Antitrust Litig.*
   564 F. Supp. 1379 (D. Md. 1983) ............................................................................. 10

*In re Omnivision Technologies, Inc.*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................... 15

*James v. City of Dallas*
   254 F.3d 551 (5th Cir. 2001) .................................................................................... 17

*Linney v. Cellular Alaska Partnership*
   151 F.3d 1234 (9th Cir. 1998) ........................................................................... 10, 15

*Molski v. Gleich*
   318 F.3d 937 (9th Cir. 2003) .................................................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th  Cir. 1982) ................................................................................... 15

*Singer v. Becton Dickinson & Co.*
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ........................................... 16

*Six Mexican Workers v. Ariz. Citrus Growers*
   904 F.2d 1301 (9th Cir. 1990) ................................................................................. 19

*Staton v. Boeing Corp.*
   327 F.3d 938 (9th Cir. 2003) .................................................................................... 16

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) ..................................................................................... 11

*Van Bronkhorst v. Safeco Corp.*
   529 F.2d 943 (9th Cir. 1976) .................................................................................... 11

*Van Vranken v. Atlantic Richfield Co.*
   901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................... 17

*Ventura v. New York City Health and Hosp., Inc.*
   125 F.R.D. 595 (S.D.N.Y. 1989) ............................................................................. 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

*Villacres v. ABM Indus. Inc.*
    189 Cal. App. 4th 562 (2010) ............................................................................ 19

*Wal-Mart, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ........................................................................... 12, 13

## STATUTES AND REGULATIONS

                                                                                        **PAGE**

*California Business and Professions Code*
    § 17200, *et seq* ............................................................................................ 4

*California Labor Code*
    § 203 .................................................................................................... 14
    § 226 ............................................................................... 1, 2, 5, 6, 11, 14
    § 226(a). ............................................................................................. 5
    § 226(a)(6) .......................................................................................... 4
    § 2699(e) ........................................................................................... 14

*Federal Rules of Civil Procedure*
    Rule 23 ................................................................................. 12, 13, 20
    Rule 23(a) ......................................................................................... 17
    Rule 23(a)(1) ..................................................................................... 17
    Rule 23(a)(2) ..................................................................................... 17
    Rule 23(a)(3) ..................................................................................... 18
    Rule 23(a)(4) ..................................................................................... 18
    Rule 23(b) ......................................................................................... 17
    Rule 23(b)(3) ............................................................................... 17, 18
    Rule 23(b)(3)(D) ................................................................................ 17
    Rule 23(e) ..................................................................................... 9, 10
    Rule 23(g)(1) ..................................................................................... 18
    Rule 30(b)(6) .................................................................................. 7, 13

*United States Code*
    Title 28, §1332(d) .................................................................................. 5

## MISCELLANEOUS AUTHORITIES

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions,* vol. 4 (4th ed. 2002)
    § 11.25................................................................................................ 10

Manual for Complex Litigation (Fourth) (2004)
    § 21.632.............................................................................................. 10

5 James Wm. Moore et al., *Moore's Federal Practice,* (3d ed. 1999)
    § 23.22................................................................................................ 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Michael H. Stoddart ("Plaintiff") and Defendants Express Services, Inc., and/or Phillips & Associates, Inc. (together "Express" or Defendants") (collectively the "Parties") seek preliminary approval of a pre-certification wage and hour non-reversionary class action settlement of $10,000,000 (the "Settlement") on behalf of approximately 162,993 other current and former non-exempt employees who were employed by Defendants in California from March 13, 2008 through December 31, 2017 (the "Class"). Defendants Express and Phillips provide temporary labor services to businesses throughout California. Named Defendant Western Wine used Express' and Phillips' services to staff its Northern California wine-shipping business, and also hired its own direct permanent employees. Western Wine did not participate in the mediation or settlement of this case and is not a signatory to the Settlement Agreement. Express/Phillips employees assigned to work at Western Wine were W2 employees of Express, and are members of the defined Class. All clients of Express are being released, which includes Western Wine.

Plaintiff's claims are primarily non-compliant meal period policies during this time period, failure to pay overtime at the correct rate, and during a portion of the time period, non-compliant wage statements under Labor Code section 226 for failure to provide the inclusive dates of the pay period. Derivative claims regarding inaccurate wage statements, failure to pay meal period premiums, failure to provide all wages due upon separation of employment, unfair competition under the Business and Professions Code, and penalties under the Private Attorneys General Act of 2004, Labor Code section 2698, *et seq.* ("PAGA") have also been pleaded.  Plaintiff's meal period claims are three-fold:  1) some Express employees were subject to an on-duty meal period agreement with Western Wine during their assignments, that agreement and the nature of the work did not meet the conditions for allowing for the provision of an on-duty meal period; 2) For employees working for Express prior to September 2012, those employees were working without any meal period policy implemented by Express; and 3) for those employees working after September, 2012, Express did not monitor or enforce its new meal period policy, resulting in *de facto* noncompliant meal periods and non-payment of premiums. Western Wine changed its on-duty meal period policy after this lawsuit was filed on March 13, 2012.

Defendants strongly deny Plaintiff's allegations and all liability or wrongdoing of any sort.

1  Defendants believe Plaintiff cannot obtain class certification due to the dozens of locations that they, as
2  temporary services providers, sent their employees to, which had individual meal policies arguably not
3  susceptible to class treatment. Defendants also contend that Plaintiff's overtime regular rate claim is
4  without merit and adjudicating the claim would require individualized inquiries which are not suitable
5  for class or representative adjudication. Defendants contend that class certification would be easily
6  defeated due to myriad individualized policies, practices, and employee experiences. Despite having
7  strong defenses to Plaintiff's claims, Defendants concluded that further litigation would be protracted,
8  distracting and expensive, that the outcome would be uncertain, and that therefore the Lawsuit should be
9  settled in the manner set forth in the Class Action Settlement Agreement ("Agreement") submitted with
10 this Motion.

11 **II.     THE PARTIES**

12    **A.     Plaintiff Michael Stoddart.** Stoddart was employed, through Phillips & Associates
13 staffing company, at Western Wine's location in Vallejo, California, from April, 2007 through May,
14 2011.  He drove a forklift during the night shift, and signed an on-duty meal agreement with Western
15 Wine, which meant that he was prevented from leaving the premises during his meal break. Stoddart
16 also received bonus payments that he contends should have been included in the regular rate used to
17 calculate overtime wages, and he received wage statements from Express that he contends did not
18 comply with Labor Code section 226 on both direct and derivative grounds.

19    **B.     Defendant Express Services, Inc.** Express Services, Inc. is a staffing services
20 franchisor.  During the alleged settlement period, it had approximately 60 independently owned and
21 operated franchisees operating in California, including Phillips & Associates. It is listed as the Labor
22 Code section 226(a) employer represented on Plaintiff's and the Class' wage statements and W2
23 forms.

24    **C.     Defendant Phillips & Associates.** Phillips is an Express franchisee. As a franchisee,
25 Phillips recruits, hires and assigns Express associates to work at client sites, such as Western Wine.
26 The Phillips office is where Stoddart and other Express associates who were hired through that
27 franchisee, would interview, obtain employment training and materials, submit time sheets, and pick
28 up paychecks.

**D.     Defendant Western Wine.** Western Wine is a wine logistics business near Napa, California, and provides services related to the transport of wine.  Western Wine instituted an on-duty meal period policy and entered into on-duty meal period agreements with its employees (and temporary employees placed through Express/Phillips) ostensibly to reduce theft and for safety reasons. Western Wine had its own W2 employees in addition to those it hired through Express/Phillips; those direct employees are not Class Members. Western Wine and its direct employees are not a party to this settlement.

**"Defendants"** means and refers only to Express Services, Inc. and Phillips & Associates, Inc. Settlement Agreement ("SA") §I.12.

**E.     The Class.** The Class is defined as: All current and former employees of Defendants who worked assignments during the period March 23, 2008 through December 31, 2017. Settlement Agreement, §I.7.

**III.     OVERVIEW OF FACTS AND CONTENTIONS**

Stoddart contends that the working conditions at Western Wine did not justify or meet the requirements allowing for the provision of on-duty meal periods, notwithstanding Western Wine's purported theft reduction and safety rationales. After this lawsuit was filed, Western Wine revised its on-duty meal period policy and discontinued use of its on-duty meal period agreements. Plaintiff contends that prior to September 2012, Express had no meal period policy whatsoever, but directed its employees called "associates" to "comply with" the meal period policies of the company to which the associate was assigned. Plaintiff also contends that Western Wine did not provide second meal periods to Express associates while on assignment. Plaintiff contends that these policies and practices violate the employer's duty to have a lawful meal period policy which complies with the applicable Wage Orders; Express denies this. Express published and promulgated a facially compliant meal period policy in September 2012. Plaintiff's extensive investigation, however, seems to indicate that Express did not enforce, train, or monitor its California associates with respect to whether they received timely, compliant meal periods. Plaintiff further contends that Express failed to pay any meal period premiums for any non-compliant meal periods. Express contends that its policies have always complied with the law and that there is no liability for non-compliant meal periods. Express further contends that due to the

3                              2:12-cv-01054-KJM-CKD

nature of its franchise model, and the fact that its dozens of franchisees further dilute and dissipate employees to hundreds of different companies across California, that Plaintiff would have a difficult hurdle to prove any class-wide policies or violations.

Plaintiff also contends that Express failed to pay him and California associates overtime using the correct regular rate, because he and other alleged class members were paid non-discretionary bonuses that were not included in the rate used to calculate overtime.

Plaintiff also contends that Express violated section 226(a)(6) by failing to include the inclusive dates of the pay period on the wage statement, for a certain part of the Class Period.

## IV.    THE PROPOSED CLASS

For Settlement purposes only, the proposed Class is defined as:

All current and former employees of Defendants who worked assignments during the period March 23, 2008 through December 31, 2017.

Settlement Agreement, ¶I,7. There are 162,993 members of the Class, covering 2,531,423 wage statements.  Class Members are paid and provided with wage statements on a weekly basis.

## V.    LITIGATION HISTORY

On July 20, 2011, Plaintiff sent a letter to the California Labor and Workforce Development Agency ("LWDA"), and to Express Services, Inc. and Western Wine, alleging them to be joint employers, detailing alleged Labor Code violations regarding meal period violations, failure to pay wages and overtime, inaccurate wage statements and failure to pay all wages due at separation of employment because of failure to pay meal period premiums and overtime. On August 21, 2011, Western Wine contends that it revised its on-duty meal period policy and discontinued use of its on-duty meal period agreements. Plaintiff believes that this was in response to the LWDA letter. On October 17, 2011, Plaintiff filed a revised letter with the LWDA, adding Phillips & Associates, Inc. as another alleged joint employer. The LWDA declined to investigate the claims made in either letter.

On March 13, 2012, Plaintiff filed the instant action, asserting the following wage and hour violations as a putative class action: (1) failure to provide mandated meal periods; (2) failure to timely pay all wages upon termination; (3) failure to provide accurate itemized wage statements; (4) failure to maintain accurate records; (5) violation of Business and Professions Code §§17200, *et seq.*; and (6) for

penalties pursuant to PAGA. Express answered the complaint, and then removed the action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), on April 20, 2012. On September 18, 2012, Express published and disseminated a facially compliant meal period policy to its employees; however, Express contends that its policies and practices before this time were lawful as well. The Parties engaged in informal discovery, and agreed to mediate this case with David Rotman, which occurred in March, 2014. The Parties reached an agreement at mediation conditioned upon approval by Express Services, Inc.'s Board of Directors and signed an MOU, and notified the Court of the pending Settlement; the Court set a date to file for preliminary approval.

As stated, Express' agreement to the settlement terms as memorialized in the MOU was contingent upon approval by its board of directors. This approval was slow in coming, and Plaintiff filed a request for extension to file his motion for preliminary approval. Eventually, in August, 2014, Express' board rejected the settlement, and litigation began again in earnest. Further discovery revealed additional related claims, and Plaintiff sought and was granted leave to file a First Amended Complaint ("FAC"), adding in claims for improper calculation of the overtime rate related to non-discretionary bonuses, and language clarifying the employer/employee relationship among the Defendants, as well as revised the non-compliant meal period allegations to specifically include on-duty meal periods and second meal periods, together with all related derivative claims.

Express moved to dismiss and strike portions of the FAC. On September 16, 2015, the Court granted Express' motion to dismiss new PAGA allegations on the ground that Plaintiff failed to exhaust the notice requirements with respect to Plaintiff's newly alleged inclusive dates claim under Labor Code section 226, and the second meal period claim, and calculation of correct overtime rate. The Court also struck Plaintiff's request for injunctive relief and denied the rest of the relief requested. (Dkt. 91) Pursuant to the Court's Order, Plaintiff filed his Second Amended Complaint ("SAC"). Express moved to dismiss claims in the SAC, on the grounds that the PAGA allegations were dismissed by the September 16, 2015 Order. Plaintiff's opposition pointed out that the Court did not dismiss the stand-alone claim for failure to include inclusive dates in the September 16, 2015 Order, rather, only the PAGA allegations were dismissed, for failure to properly notify the LWDA and the employer(s) of the alleged Labor Code violations, and that the inclusive dates claim related back to the date of the original

complaint. The Court denied Express' motion to dismiss in its entirety, preserving the section 226 inclusive dates claim, on June 21, 2016. (Dkt. 109) Express answered the SAC. The Parties then resumed discovery in earnest.

**VI.     INVESTIGATION AND DISCOVERY**

Discovery in this case is extensive and well-developed, and contentious.  Informal discovery and data and documents produced for the first mediation numbered in the tens of thousands of pages. Although this data was not formally produced and was protected by the mediation privilege, it allowed Plaintiff to gather information regarding the strength of his claims and the approximate size of the class and damages at stake.

Formal discovery has been hallmarked by adversarial relations the entire time. Plaintiff propounded class-wide discovery on Defendants immediately after the Parties recommenced this case after the first mediation settlement fell through. Express refused to provide any discovery beyond Plaintiff's location at Western Wine. Plaintiff then filed a motion to clarify the scope of discovery; however, this motion was mooted while Express' motion to dismiss was being briefed and under consideration. After the FAC was mooted with the filing of the SAC, Express' second motion to dismiss claims held further discovery in abeyance while that motion was under consideration. After that motion was determined in June, 2016, the Parties began discovery immediately after the July, 2016 status conference, and the same issues arose again regarding the scope of discovery Plaintiff was entitled to from Express. The Parties met and conferred, and filed a motion to have Magistrate Delaney resolve the dispute. In December, 2016, Magistrate Delaney ruled that Plaintiff was entitled to Express' handbooks and wage statements covering all California locations, as well as to the class list, which was delivered in January, 2017.  Plaintiff contacted thousands of class members after receiving the class list, in order to prepare for class certification.  During this time, the Parties began exploring the possibility of another mediation to occur prior to class certification. Discovery continued through the date of mediation in September, 2017, while Plaintiff prepared to file a motion for class certification. When the Court granted the Parties' request to continue certification proceedings pending the outcome of mediation, the Parties mediated the case on September 27, 2017 and reached an initial agreement. If the Parties had not reached a settlement agreement, there were certain remaining discovery disputes that the Parties would

have brought to the attention of Magistrate Delaney prior to filing for class certification.

Plaintiff was deposed twice, and three Rule 30(b)(6) depositions were taken while preparing for class certification. Class contact information was provided to Plaintiff in January 2017 and Plaintiff contacted approximately 10,000 class members and interviewed many by phone. Class certification discovery was essentially complete when the case was mediated the second time.

## VII.   MEDIATION AND THE PROPOSED SETTLEMENT

### A.   Mediation.

For the 2014 mediation, Express produced thousands of documents and data comprising time cards, wage statements, and related information to produce a meaningful estimation of classwide damages with respect to meal period violations and the rate at which they occurred. For the 2017 mediation, Express produced some additional information, but discovery was largely formally complete by September 27, 2017.

While Express and Phillips attended the 2017 mediation with Plaintiff and mediator Jeffrey Ross, Esq., Western Wine abstained from the mediation. Western Wine indicated that it believes that its liability in this lawsuit is limited, in part, due to the extensive use (hundreds) of settlement agreements similar to those approved in *Chindarah v. Pick Up Stix, Inc.,* 171 Cal.App.4th 796 (2009), with its direct employees. With Mr. Ross' assistance, after a contentious, arm's-length process, Express, Phillips, and Plaintiff reached an agreement in principle. Western Wine did not participate in the mediation and has not joined in or contributed to the Settlement.

### B.   The Settlement Terms.

The Parties have agreed that the Action may be settled and compromised for the non-reversionary Gross Settlement Amount of $10,000,000 (GSA), which includes, subject to and contingent upon the approval of this Court: (a) attorneys' fees of $2,500,000[1] (25% of the GSA) to compensate Plaintiff's Counsel for work performed and all work remaining to be performed in documenting and administrating the Settlement and securing final Court approval; (b) Plaintiff's Counsel's litigation expenses of up to $70,000; (c) a Service Payment to Plaintiff Michael Stoddart in the sum of $10,000 in

---

[1] Plaintiff signed a retainer agreement providing for attorneys' fees of 33.3% of any recovery, and specifically provides for the apportionment of fees as follows: Cohelan, Khoury & Singer: 50%, and Graham Hollis, APC: 50%. Khoury Decl. ¶18.

consideration of his initiation and prosecution of this action, work performed, and risks undertaken for the payment of costs in the event the case had not concluded successfully, benefits conferred on the absent Class Members, and a general release of claims; (d) administration fees and expenses to Claims Administrator Rust Consulting, Inc., in an amount not to exceed $350,000; and (e) the payment to the California Labor and Workplace Development Agency of $37,500 (75% of $50,000) allocated for the payment of all applicable civil penalties under PAGA. SA ¶¶I, 3, 6, 19, 22, 34. Express will bear the employer's share of FICA, FUTA and SDI contributions, on the portion of the settlement payments attributed to wages separately from the GSA.

After all Court-approved deductions from the GSA, the remaining sum, the "Net Settlement Amount" or "NSA", estimated at $7,032,500, will be distributed entirely to Class Members who do not request to be excluded from Settlement as 10% wages and 90% interest and penalties. A claim form is not needed. Class Members will receive a share of the NSA based on the number of workweeks they worked during the period March 13, 2008 through December 31, 2017 ("Class Period"). The NSA, divided by the number of wage statements covered by the Settlement, is currently estimated to be approximately $2.78 per workweek, based on a workweek count of 2,531,423 spanning a Class Period of nearly ten years.  Over just one year, a Class Member can receive up to $139 for 50 weeks of work.

### C.    The Class Notice Satisfies Due Process and Should Be Approved

Following preliminary approval, the Claims Administrator selected by the Parties, Rust Consulting, Inc., will mail to each Class Member a Notice of Class Action Settlement ("Notice"), Change of Address form, and a pre-printed return envelope (collectively, "Notice Packet"). Khoury Decl. ¶¶16-17, Exh. 1, A-C.

The Notice advises the Class: (1) of their rights to participate in the Settlement; (2) that each will receive an Individual Settlement Payment without a claim form as long as a request for exclusion is not returned; (3) that a current address must be kept on file with the Administrator  to receive an Individual Settlement Payment check; (4) how to object to the Settlement; (5) how to opt-out of the Settlement; (6) how to challenge the information upon which their Individual Settlement Payments will be based; and (7) the procedures and timing for doing each of these acts. The Notice also advises the Class of the formula for distribution, the estimated weekly payment rate, and the number of workweeks Defendants'

records show the Class Members worked during the Class Period.

The Notice specifically describes the release of claims that will be provided by all Class Members who do not return a valid and timely request for exclusion, and provides the date, place and time for Final Approval. The Notice also advises Class Members that because federal labor law claims are also being released pursuant to the Fair Labor Standards Act ("FLSA"), the back of their Individual Settlement Payment check will include release language and their signature will indicate their intent to opt-in and be bound by that release. The inclusion of a release of claims under federal law was necessary, because claims of unpaid overtime based upon on-duty meal periods was brought to the attention of the LWDA in Plaintiff's initial PAGA letter, and therefore could have been alleged each of the complaints, and the SAC alleges failure to pay overtime at the correct rate. There are a few different time frames to analyze the various claims. First, while Plaintiff argues that the pre-September, 2012 period of time is certifiable based on Express' lack of formal meal period policy, Express argues that there was no meal period violation, and case law supports both arguments. Proof of the extent of meal period violations would likely include an expensive, time-consuming, expert-driven survey, which is subject to attack by Defendant. Second, beginning in March, 2011, there are now inclusive dates wage statement claims, and claims for PAGA penalties for meal period violations and inaccurate wage statements, which constitute their own valuable claims. In view of the competing liability and certifiability arguments of multiple claims over the length of the Class Period, the Parties have agreed the most equitable distribution of the settlement funds is to treat each workweek equally.

Importantly, the Settlement Agreement provides for multiple levels of attempts to locate Class Members so that they may participate in the Settlement, including a pre-mailing in-depth skip trace, and a National Change of Address search and another in-depth skip trace on all Notice Packets returned as undeliverable. SA ¶III,13(a),(c).

## VIII.   ARGUMENT

### A.   Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure.

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's

sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)). The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.25. The *Manual for Complex Litigation* (Fourth) (2004) *("Manual"*) characterizes the preliminary approval state as an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settlement parties. *Manual* § 21.632.

At this stage, the Court is not making a final determination on whether the Settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e). Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25.

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted.)

**B.    The Proposed Settlement is Fair, Adequate and Reasonable**.

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent

of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted.) A discussion of these factors supports the conclusion that the proposed Settlement is indeed "fair, adequate and reasonable." Further, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976).

### 1.   Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.

Plaintiff was prepared to file his motion for class certification if this matter did not resolve at mediation and had developed theories supporting class certification. Plaintiff believes that the lack of any written meal policy by Express constituted a non-compliant meal period policy as to the time before September, 2012, approximately four and a half years of the Class Period. Plaintiff also contacted approximately 10,000 Class Members to obtain information on their meal period experience, both before and after September, 2012. Plaintiff's information indicated that even after Express issued its published meal policy, Class Members were still not provided compliant meal periods and were not paid premiums for non-compliant meal periods. Further, if state-wide certification looked difficult, Plaintiff had interviewed enough groups of employees at locations where large numbers of Class Members were assigned to work by Defendant, which could be certified as to particular locations where numerosity were satisfied.   Finally, Plaintiff believes the inclusive dates wage statement claim is intrinsically certifiable. Plaintiff contends that the inclusive dates wage statement claim is objective, is apparent on the face of the wage statement, is a state-wide practice, and is ascertainable from Express' records. However, Plaintiff is aware that Express may defend this claim on a number of grounds, including, but not limited to the knowing and willful, and injury requirements of section 226, which compromise the apparent strength of this claim.

While Plaintiff believes in the merits of his case, he also recognizes the inherent risks and

uncertainty of litigation and understands the benefits of providing significant Individual Settlement Payments to the Class now as opposed to risking:  (i) the Court's denial of certification of his Rule 23 proposed Class; (ii) an unfavorable result on the merits on summary judgment or at trial and/or on appeal, a process that can take several more years to litigate. Plaintiff's claims involve complex and disputed legal issues and fact-specific arguments that the Parties have been litigating fiercely since the inception of the action. Indeed, even if certification were granted, there would be significant risks to Plaintiff's ability to maintain that certification.  This, significantly, includes the risk of proving damages at trial by a meal period survey, which would be expensive, time-consuming, and subject to attack under *Duran* and other cases.

Defendants presented significant defenses and good faith objections to Plaintiff's ability to obtain Rule 23 certification, maintaining that the claims are inappropriate for class treatment due to variations among the work duties and demands of the varied clients that Class Members worked with and generally determined their own individual meal policies. Specifically, Express initially directed its employees to follow the rules of the companies where they were assigned to work, and Express expected these companies to be familiar with California law and comply with it. While Express maintains that at all times it had a compliant meal period policy and posted the IWC Wage Orders, after this lawsuit was filed, Express published a detailed written meal period policy that complied with California law. However, Plaintiff contends that Express did not actively police this policy at its various clients. Express therefore contends that certifying a statewide class across thousands of companies with different business needs, supervisors, policies, practices, shift lengths, applicable Wage Orders, compensation schemes, and waivers, would face insurmountable challenges. Defendants also assert that the obstacles faced by Plaintiff in seeking Rule 23 certification and maintaining that certification are all the greater given the United States Supreme Court's rulings in *Wal-Mart, Inc. Dukes*, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct.1426 (2013). As a result of *Dukes* and *Comcast*, along with many other cases, Defendants believe Plaintiff will not be able to obtain certification outside of the Settlement context. Defendants further contend *Dukes* explicitly disapproved the use of sampling and surveys to determine class-wide practices, and *Comcast* overturned a certification ruling based on the named representative's failure to identify a reliable damages model that could be used on a class-wide basis.

*Dukes*, 131 S. Ct. at 2561; *Comcast*, 133 S. Ct. at 1432-33. Thus, while Plaintiff believes and continues to believe this is a strong case for Rule 23 certification, there is always a risk and enormous expense associated with class certification proceedings. Similarly, while Defendants believe Plaintiff will face steep hurdles going forward should this matter not resolve, Defendants are also mindful that there are burdens, risks and significant expenses associated with continued litigation.

### 2.    The Extent of Discovery and Stage of the Proceedings Support the Settlement

The proposed Settlement is the product of substantial effort by the Parties set forth above in Section IV. Plaintiff's investigation of the facts and claims was robust with written discovery exchanged and multiple Rule 30(b)(6) depositions taken, interviews with thousands of putative Class Members, from which Plaintiff obtained hundreds of statements to be used for declarations in support of Plaintiff's Rule 23 Certification motion. Plaintiff also evaluated significant amounts of data and documents produced through discovery as well as informal exchange of pay data and workweeks worked for mediation. Sufficient discovery had occurred to allow Plaintiff to prepare for filing his motion for class certification.

This litigation, therefore, has reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

### 3.    The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations and Is a Reasonable Compromise of Claims

The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced, neutral, and well-respected mediator of wage and hour class actions, Jeffery Ross, Esq. Following agreement to a settlement in concept, the Parties have worked diligently and in earnest to reach agreement on all terms of the proposed Settlement. Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature. Continued good faith, but occasionally contentious, negotiations were required to reach agreement on all terms set forth in the Settlement Agreement presented here for preliminary approval.  In fact, although the agreement in principle was reached in September, the final agreement was not reached until just days before Plaintiff filed this motion due to continuing negotiations on released terms and Parties. The Gross Settlement

Amount is an extraordinary recovery for the Class, who will receive an estimated $2.78 for each workweek worked from the estimated $7,032,500 NSA. Class Counsel relied upon the extensive information and documentation produced through formal discovery, depositions taken, information obtained from over 10,000 members of the Class by way of in-depth interviews inquiring about their work duties, hours worked, meal periods taken, and wages paid.

The number of workweeks involved in this Settlement is enormous, more than 2.5 million, which would lead to a gross potential damage exposure if Plaintiff could prove all of his claims and that all violations were occurring on a regular basis. Even if Plaintiff could obtain class certification, proof of the rate of meal period infractions would be problematic because much of the data is not electronic. For the first mediation, Express produced thousands of time sheets, which were filled out by hand. This required extensive time and effort to hand analyze each week's time records to determine whether a meal period was short, late, or missed. Further, many time cards had no place to indicate whether or when a meal period was taken. Accordingly, it would not make sense to prepare a damage model assuming one meal period violation for each work week, because it could never be proved, especially during the nearly ten-year Class Period, with temporary service employees who are transitory in nature. This Settlement represents a reasonable compromise and presents every Class Member with a wage component and penalty component for each week worked, without the necessity of having to remember, or prove, when meal periods were taken. However, for purposes of evaluating the reasonableness of the Settlement amount, if Plaintiff assumes just one meal period violation for each work week for each Class Member with an hourly wage of $10, the estimated value of the claim totals approximately $25,314,230. The $10,000,000 GSA represents a sizeable 40% of the total exposure.

The estimated liability exposure does not include all potential penalties, as such claims require willfulness and/or injury, and because the award of penalties is discretionary with the Court, the assessment of such damages can be speculative. Defendant's exposure was further discounted because certain derivative claims are also entitled to a good faith defense and subjected to a knowing and intentional standard of proof in order to recover, i.e., Labor Code §§ 203 and 226.

PAGA penalties are also subject to judicial discretion and are not mandatory. PAGA penalties are also to be restrained so that they are not punitive or confiscatory. Labor Code §2699(e). Further, the

trial methodology of PAGA cases continues to develop and is uncertain. Defendants' position is that should this action be tried as a PAGA representative action, it would be unmanageable and involve a multitude of thousands upon thousands of individual issues. PAGA penalties if awarded would require 75% of any award to be paid to the State of California. Fortunately, as a result of the mediated Settlement, a class action resolution was accomplished which will provide substantially more benefits to the Class. The amendments to PAGA in July 2016 further add to uncertainty, particularly for actions filed long before the amendments. The bottom line is that the Class is receiving value for strongly contested claims, and the PAGA statute, while a valuable tool for Class Members, leaves most of the nature and extent of recovery, if any, up to the Court. From Class Counsel's perspective, given the ups-and-downs of such cases over the last six years, the proposed Settlement is a solid settlement for which we believe there will considerable and substantial approval among the Class Members.

Overall, and in face of these uncertainties, the Parties agreed to a compromise non-reversionary settlement of $10,000,000 for the 162,993 Class Members. A settlement is not judged *solely* against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F. 3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). The adequacy of the amount recovered must be judged as "a yielding of absolutes. . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair", "*Officers for Justice, supra,* at 628; see also *In re Omnivision Technologies, Inc.*, 2007 U.S. Dist LEXIS 95616, at p. 21 (N.D.Cal. 2007), noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2002 through 2006.) Accordingly, the proposed Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska Partnership, supra.*

In light of all the information provided above, the proposed Settlement reflects an excellent

1  recovery for the Class and is well within the "ballpark" of reasonableness and should be granted

2  preliminary approval.

3  IX.   **ATTORNEYS' FEES REQUEST AND SERVICE PAYMENT TO NAMED PLAINTIFF**

4      **A.  Motion for Award of Attorneys' Fees and Litigation Costs.**

5      Class Counsel expended thousands of hours litigating this Action and there can be little question

6  of the degree of commitment and vigorous prosecution of this protracted litigation which covers such a

7  large class, given the multitude of motions and extent of discovery involved in this litigation.  Class

8  Counsel will file a motion requesting reimbursement of their litigation expenses of up to $70,000, and an

9  award of attorneys' fees of up to $2,500,000 (25% of the GSA), which will be paid from the GSA.

10  Class' Counsel's motion for attorneys' fees and costs will thoroughly detail the hours expended and the

11  litigation expenses advanced.

12      **B.  Service Payment to the Named Plaintiff.**

13      According to the Ninth Circuit, "...named plaintiffs ... are eligible for reasonable incentive

14  payments. The district court must evaluate their awards individually, using 'relevant factors including

15  the actions the plaintiff has taken to protect the interests of the class, the degree to which the class had

16  benefitted from those actions, the amount of time and effort the plaintiff in pursuing the litigation and

17  reasonable fears of workplace retaliation.'" *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003)

18  [citations and internal alterations omitted].

19      Subject to the Court's approval at the time of the final fairness hearing, Class Counsel will

20  request a Class Representative Service Payment on behalf of Named Plaintiff Michael Stoddart the sum

21  of $10,000 for his time, effort, risks undertaken for the payment of costs in the event this action had

22  been unsuccessful, and stigma upon future employment opportunities for having initiated this action

23  against a former employer, and the more expansive general release of all claims related to his

24  employment. The requested Service Payment is fair and reasonable because Mr. Stoddart invested a

25  great deal of personal time and effort into the investigation, prosecution, and the settlement of the case,

26  provided two days of deposition testimony, and written responses to written discovery and production of

27  documents, as will be set forth in his declaration.  The $10,000 request is within the range of other

28  service payments awarded to class representatives. See, e.g., *Singer v. Becton Dickinson & Co.,* 2010

U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) ("The $25,000 incentive award is ... well within the acceptable range awarded in similar cases."); discussing, *Brotherton v. Cleveland*, 141 F. supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class representative payment to named plaintiff]; and *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (same); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) (per Chesney, J.; approving $25,000 class representative payment].

## X.      THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

### A.      All Rule 23(a) Prerequisites Certification Are Present.

Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes. *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 620.  However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id*.  Plaintiff respectfully submits that conditional certification is appropriate because the Settlement Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b)(3).

1.      Rule 23(a)(1) —Numerosity

There are an estimated 162,993 putative Class Members. Khoury Decl. ¶19. A putative class of 162,993 satisfies the Rule 23(a)(1) numerosity element in the settlement context. 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).

2.      Rule 23(a)(2) —Commonality

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *Hanlon, supra*, 150 F.3d at 1019. The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to satisfy the commonality requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Plaintiff alleged that Defendants failed to authorize and permit 30-minute off-duty meal periods consistent with all applicable IWC wage orders for its employees, both through lack of any policy, and failure to pay any premiums for late, short, or

1   missed meal periods. Plaintiff has also alleged that for a certain time period, Defendants failed to

2   provide the inclusive dates of the pay period on employees' wage statements. For settlement purposes,

3   Plaintiff's claims meet the minimum burden of establishing commonality.

4                   3.   <u>Rule 23(a)(3) —Typicality</u>

5          Under this rule's "permissive standards," the representative Plaintiff's claims are "typical" if

6   they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The

7   typicality requirement is satisfied if Plaintiff's claims arise from the same events or course of conduct

8   that give rise to the claims of other class members and are based on the same legal theory. *Ventura v.*

9   *New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). Plaintiff contends his

10   claims arise from a common source—Express' lack of maintaining a compliant meal period policy or

11   payment of premiums for non-compliant meal periods. Furthermore, the claims of Plaintiff and the

12   putative Class are based on identical legal theories. Based on the foregoing, the typicality requirement is

13   also satisfied in the settlement context.

14                   4.   <u>Rule 23(a)(4) —Adequacy of Representation</u>

15          Adequacy requirements are established on the basis that the proposed Class Representative,

16   Named Plaintiff, has no conflict of interest with other Class Members and is represented by qualified

17   counsel. *Hanlon*, *supra,* 150 F.3d at 1020. Plaintiff's Counsel are well-situated to assume the

18   responsibilities of Class Counsel because they are experienced employment and class action litigators

19   who are fully qualified to pursue the interests of the Class. Khoury Decl. ¶¶ 2-5; Declaration of Graham

20   Hollis in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement

21   ("Hollis Decl."), ¶¶ 3-5. They are adequate class counsel under Rule 23(a)(4) and meet the criteria for

22   fairly and adequately representing the class under Rule 23(g)(1).

23       **B**.   **Rule 23(b)(3) —Predominance and Superiority.**

24          The predominance inquiry focuses on the relationship between the common and individual

25   issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by

26   representation. *Amchem Products, Inc.,* 521 U.S. at 623.  Plaintiff contends several questions of law and

27   fact are common to his claims and to those of the putative Class and provide a justification for handling

28   the dispute on a representative rather than on an individual basis for settlement purposes. *Id.*  Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983).  This is true in the settlement context, because the Court need not consider the manageability (or lack thereof) of a trial. Given the sheer number of Class Members, and resolution of claims spanning nearly ten years, it is clear that class treatment is the superior method to resolve the claims pleaded herein.

### C.     PAGA Penalty Claims.

The settlement of the claim for penalties under the Labor Code's Private General Act of 2004, as amended ("PAGA") for civil penalties in the sum of $50,000, 75% of which ($37,500) will be paid to the LWDA, reserving $12,500 to be paid to the Class through the NSA, is reasonable and appropriate under the circumstances. The $37,500 portion to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. Khoury Decl. ¶31. Where settlements "negotiate[] a good faith amount" for PAGA penalties and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc*., No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009). The amount to be paid to the LWDA comports with PAGA settlement amounts approved by the courts.  See, e.g., *Hopson, supra,* 2008 WL 3385452, at *1 (N.D. Cal. Aug. 8, 2008) (approving a PAGA settlement of 0.3% or $1,500); *Garcia v. Gordon Trucking, Inc.,* No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving a PAGA settlement of 0.27%); *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562 (2010), review denied (Feb. 16, 2011) (PAGA claims may be settled without any money allocated to those claims).

### D.     Cy Pres Distribution.

The Parties anticipate that, as is common in class, collective, and representative actions, there will be some unclaimed funds, even after redistribution of the funds declined through the Opt-Out process.  Thus, a plan is required for distributing those unclaimed funds. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  Cy pres distribution allows unclaimed funds to indirectly benefit the entire class. *Id.* at 1305. This approach requires the cy pres award to qualify as "the

next best distribution" to giving the funds directly to the class members. *Dennis v. Kellogg Co.*, 697 F.3d. 858, 865 (9th Cir. 2012).

"Not just any worthy charity will qualify as an appropriate cy pres beneficiary[;]" and there must be "a driving nexus between the plaintiff class and the cy pres beneficiary." *Id.*  Thus, the Parties have designated the Salvation Army's California programs to benefit the unemployed and underemployed workers, which serves such workers in gaining the employment skills and experience necessary to obtain employment and support them during periods of unemployment as the cy pres beneficiary of unclaimed funds.

## XI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, grant conditional certification pursuant to FRCP Rule 23 for settlement purposes only, appoint Plaintiff as the Class Representative for the purpose of settlement, appoint Plaintiff's attorneys as Class Counsel, approve as to form the proposed Notice to the Settlement Classes, appoint Rust Consulting, Inc. as the Claims Administrator, and to set a final approval hearing date.

Respectfully submitted,

Dated: March 9, 2018                              COHELAN KHOURY & SINGER

By:   s/Janine R. Menhennet
Janine R. Menhennet

Attorneys for Plaintiff
MICHAEL H. STODDART