UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H. STODDART, et al., | No. 2:12-cv-01054-KJM-CKD |
| Plaintiffs, | |
| v. | ORDER |
| EXPRESS SERVICES, et al., | |
| Defendants. | |

      Plaintiff Michael Stoddart ("Plaintiff") brings this putative class action against defendants Express Services, Inc. ("Express"), Phillips & Associates, Inc. ("Phillips"), and Western Wine Services, Inc. ("Western Wine"), alleging several California Labor Code violations. *See generally* Second Am. Compl. ("SAC"), ECF No. 94. Plaintiff has moved for preliminary approval of class action settlement. Mot., ECF No. 156. The motion is unopposed, but Elaine Martin ("Martin"), a named plaintiff in a related wage and hour class action pending in California Superior Court, requested leave to file an amicus brief in opposition to plaintiff's motion. Ex Parte Appl., ECF No. 158. The court held a hearing on May 18, 2018 regarding both the settlement approval and ex parte application and granted Martin's request for leave to file her

brief. As explained below, the court DENIES plaintiff's motion for preliminary class settlement approval.[1]

I. BACKGROUND

    A. Factual and Procedural Background

Express provides staffing, job placement, human resource, consulting, and related services to businesses worldwide. SAC ¶ 2. Phillips is a California corporation and franchisee of Express. *Id.* ¶ 3. Defendant Western Wine contracts with Express for temporary service employees. *Id.* ¶ 4.

Express formerly employed plaintiff in Vallejo, California, and assigned him to work for Western Wine. *Id.* ¶ 5. Plaintiff alleges Express and Phillips systematically violated employment laws by not providing legally mandated off-duty meal periods, failing to pay overtime at the correct rate, issuing inaccurate and non-compliant wage statements, failing to pay meal period premiums, and failing to provide all wages due upon separation of employment. *Id.* ¶¶ 11, 33, 70, 77, 88, 95, 102. In early 2012, plaintiff brought a putative class action in state court for damages and injunctive relief. Compl., ECF No. 1-1 at 4. A month later, Express removed the case to this court. Removal, ECF No. 1. The parties thereafter attended mediation and reached a tentative class-wide settlement, but Express's Board of Directors rejected it. Notice Re. Status of Settlement, ECF No. 42 at 2:2–9.

After extended litigation in federal court, the parties covered by the proposed settlement here, plaintiff and defendants Express and Phillips (the "Settlement Parties"), scheduled another private mediation.[2] Decl. of Janine Menhennet ¶ 10, ECF No. 128-2.

---

[1] As the court was preparing to sign this order, it received the parties' joint request for a status, which is well-taken. *See* ECF No. 173. In the constant juggling act this court attempts to perform conscientiously in managing its significant caseload, this matter has been repeatedly sidelined, which the court regrets. While it wishes it could draw on superhuman powers to issue more timely decisions in every case, it has not yet divined that trick. This order moots the parties' request, and hopefully provides sufficiently clear direction for the next step, whatever the parties determine that to be.

[2] Western Wine did not participate in the mediation or settlement of this case and is not a signatory to the Proposed Settlement Agreement. Mot. at 1.

2

B. <u>Proposed Settlement Agreement</u>

After a contentious, arm's-length process, the parties to the mediation reached a settlement agreement. Decl. of Graham S.P. Hollis ¶ 6, ECF No. 156-3; Stip. & Settlement ("Proposed Agreement") § III.31, ECF No. 156-2. Western Wine is not a party to the Proposed Agreement but would nonetheless be released of liability as a client of Express, along with all the settling defendants' other client employers. Proposed Agreement § I.12; Notice of Class Action Settlement at 38, ECF No. 156-2; Mot. at 1.

1. <u>Gross Settlement Amount</u>

Under the Proposed Agreement, the Settlement Defendants, Express and Phillips, would make a $10 million gross payment to the claims administrator, Rust Consulting, Inc. Proposed Agreement §§ I.5, III.7. The Settlement Parties propose allocation of the gross settlement as follows:

(1) An amount not to exceed $2,500,000, one-fourth of the gross settlement, for class counsel as attorneys' fees. *Id.* § III.8.

(2) An amount not to exceed $70,000 for class counsel in litigation costs. *Id.* § III.8.

(3) An amount up to $10,000 for plaintiff in consideration of his work as the named plaintiff. *Id.* § III.4.

(4) An amount estimated to be $350,000 to the claims administrator, Rust Consulting. *Id.* § III.9.

(5) A $50,000 California Private Attorneys General Act of 2004 ("PAGA") penalty, 75 percent ($37,500) of which would be paid to the California Labor and Workforce Development Agency and 25 percent ($12,500) of which would be paid to the class. *Id.* §§ I.27, I.31.

(6) Any applicable tax withholding required, not to include the employer's share of FICA, FUTA and SDI contributions on the portion of the settlement payments attributed to wages. *Id.* § I.19.

3

### 2. Net Settlement Amount

Accounting for all proposed distributions described above, plaintiff estimates a net settlement amount of $7,032,500. Mem. in Supp. Mot. for Prelim. Approval of Class Action Settlement ("Pl.'s Mem.") at 8:10, ECF No. 156-1; Decl. of Isam C. Khoury ¶ 19, ECF No. 156-2. The Settlement Parties propose distribution of the net settlement in payments to class members who do not request exclusion from the settlement based on the number of weeks worked during the period of March 13, 2008 through December 31, 2017, as 10 percent wages and 90 percent interest and penalties. Proposed Agreement §§ I.10, III.12.

## II. LEGAL STANDARDS

### A. Preliminary Class Certification and Approval of Settlement under Rule 23

#### 1. Preliminary Class Certification

Although Rule 23 of the Federal Rules of Civil Procedure does not expressly provide for preliminary class certification, district courts in this circuit often certify settlement classes on a preliminary basis for settlement purposes, deferring final class certification until the court holds a final fairness hearing. *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 n.9 (E.D. Cal. Jan. 11, 2017) (citations omitted).

Whenever it reviews class certification, the court owes "undiluted, even heightened, attention" to certification requirements in the settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *see Berry v. Baca*, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (the parties cannot merely "agree to certify a class that clearly leaves any one requirement unfulfilled"). Preliminary certification is appropriate only if each Rule 23(a) certification prerequisite is satisfied. Rule 23 requires that the class contain enough members; the suit involves questions common to all class members; and plaintiff's claims are typical of the class members; and plaintiff and his counsel fairly and adequately protect the class interests. Fed. R. Civ. P. 23(a)(1)–(4). If Rule 23(a)'s threshold requirements are met, the proposed class must

satisfy Rule 23(b)(3)'s predominance and superiority requirements. Fed. R. Civ. P. 23(b)(3); *see Amchem*, 521 U.S. at 615.

### 2. Preliminary Settlement Approval

Rule 23 mandates that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotation marks omitted). When parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* Accordingly, the reviewing court analyzes such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946. "Judicial review must be exacting and thorough." Manual for Complex Litigation (Fourth) § 21.61 (2004).

## III. DISCUSSION

### A. Preliminary Certification of the Class Under Rule 23

Even at the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1). In his motion, plaintiff argues only in cursory fashion each of Rule 23(a) and (b)(3)'s requirements. Pl.'s Mem. at 17:18–19:7. This is striking in light of plaintiff's understanding of the Settlement Defendants' objections to certification, which they would raise but for the settlement the parties have reached. *Id.* at 12:10. Plaintiff does acknowledge the Settlement Defendants had "maintain[ed] that the claims are inappropriate for class treatment due to variations among the work duties and demands of the varied clients . . . [who] generally determined their own individual policies"; in other words, "that certifying a statewide class across thousands of companies with different business needs, supervisors, policies, practices, shift lengths, applicable Wage Orders, compensation schemes, and waivers,

would face insurmountable challenges." *Id.* at 12:10-21. In her amicus brief, Martin highlights the problems she sees with respect to commonality and predominance. *See* Amicus Curiae Br. in Opp'n to Mot. for Prelim. Approval of Class Action Settlement ("Amicus Br.") at 7:10–16, ECF No. 158. The court discusses those factors first below.

1. <u>Commonality Concerns</u>

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all questions of fact and law must be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Only "a single common question" is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). But the "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

"[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The court takes note of "'[d]issimilarities within the proposed class' that 'have the potential to impede the generation of common answers.'" *Dukes*, 564 U.S. at 350 (alterations in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

As noted, the Proposed Agreement defines the class for settlement purposes as "[a]ll current and former employees of Defendants who worked assignments during the period March 23, 2008 through December 31, 2017." Proposed Agreement § I.7. In arguing commonality, plaintiff highlights his allegations that the Settlement Defendants failed to authorize 30-minute off-duty meal periods for their employees and failed to pay any premiums for late, short, or missed meal periods; and for a time, the Settlement Defendants failed to provide the inclusive dates of the pay period on employees' wage statements. Pl.'s Mem. at 17:26–18:2.

"Plaintiff contends that prior to September 2012, Express . . . directed its employees . . . to 'comply with' the meal period policies of the company to which the associate was assigned." *Id.* at 3:17–20. Although Express later adopted "a facially compliant meal period policy," plaintiff argues the policy went unenforced. *Id.* at 3:23–26. It appears the putative class members here, as in *Dukes*, "held a multitude of different jobs, at different levels . . . , for variable lengths of time, in [many locations], . . . with a kaleidoscope of supervisors . . . , subject to a variety of regional policies that all differed." *Dukes*, 564 U.S. at 359–60 (quoting *Dukes*, 603 F.3d at 652 (Kozinski, C.J., dissenting)). Plaintiff has not adequately explained "the capacity of a classwide proceeding to generate common answers" in light of the many "[d]issimilarities within the proposed class [with] the potential to impede" that capacity. *Id.* at 350 (quoting Nagareda, *supra*, at 132).

In addition, plaintiff's allegation that Express failed to provide inclusive pay-range dates in wage statements identifies a time period that is not coextensive with the employment period for the putative class. *See* SAC ¶ 39(a)(v) ("All members of the Express Services Class who received one or more itemized wage statements that . . . did not include the inclusive dates of the period for which the employee is paid, *from and after March 13, 2009*." (emphasis added)). Although "[t]he Court may cure the defects of a proposed class definition where the class is overbroad," *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-cv-00701-AWI-JLT, 2013 WL 6844377, at *23 (E.D. Cal. Dec. 23, 2013) (collecting cases), the starting and ending dates here are contained within the Proposed Agreement the Settlement Parties have submitted. A proposed settlement must stand or fall in its entirety, and a court cannot "delete, modify or substitute certain provisions" that change the agreement. *Hanlon*, 150 F.3d at 1026 (internal quotation marks omitted).

2. Predominance Concerns

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although similar to Rule 23(a)'s commonality requirement, the predominance requirement is more demanding. *Id.* at 624; *Dukes*, 564 U.S. at 359. "When common questions present a

significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting Charles Alan Wright, et al., 7AA Federal Practice & Procedure § 1778 (2d ed. 1986)). But it is important to proceed with "caution when individual stakes are high and disparities among class members great." *Amchem*, 521 U.S. at 625. As explained above, this is such a case, and plaintiff has not shown sufficiently that common issues predominate. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 n.9 (9th Cir. 2009) ("The party seeking certification bears the burden of demonstrating that he has met the requirements of Rule 23(b).").

B. <u>The Proposed Agreement Is Not Fair, Reasonable, and Adequate</u>

Plaintiff contends the court need only determine the Proposed Agreement "appears to fall within the range of possible approval." Pl.'s Mem. at 10:11–12 (quoting *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980)). But as this court recently has clarified, it agrees with the observation of another California district court, that "the idea that district courts should conduct a more lax inquiry at the preliminary approval stage seems wrong" and lacks a compelling rationale. *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016). Rather, in light of the court's duty to absent class members, this court opts to "review class action settlements just as carefully at the initial stage as [it] do[es] at the final stage." *Cotter*, 193 F. Supp. 3d at 1037; *see Smothers v. Northstar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019).

Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. Although the court must weigh several factors to approve a settlement, additional factors may be relevant depending on the context of the case and the terms of the agreement. *See Bluetooth*, 654 F.3d at 946 ("The factors in a court's fairness assessment will naturally vary from case to case . . . .). Here, as explained below, the court is troubled by the extent of the release of liability, the lack of information concerning claim value, and provisions of the release of liability concerning PAGA.

1. Claim Form Release

As part of the settlement, the parties stipulate to an open-ended release clause, under which "Released Claims also include all such claims arising under the California Labor Code." Proposed Agreement § I.32.

Martin takes issue with this part of the release: "As seen from the above language, the [Settlement Parties] seek to have all 162,993 proposed class members release, not only the claims raised and litigated in the immediate lawsuit, but also 'all such claims arising under the California Labor Code' without limitation." Amicus Br. 11:19–21.

The terms of the release are broad and ambiguous. There are two ways to read the release. Martin's reading does not fully square with the inclusion of the word "such" in "all such claims arising under the California Labor Code." Proposed Agreement § I.32. Before the disputed sentence appears, the release discusses claims "arising from the facts and circumstances in the operative complaint or amendment thereto," and then specifies these claims "includ[e] without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, interest, attorneys' fees, litigation costs, restitution, equitable relief or other relief under Business & Professions Code § 17200, *et seq.*, *based on the following categories*." Proposed Agreement § I.32 (emphasis added). The release goes on to enumerate the kinds of claims raised in this lawsuit. Appearing after this enumerated list, the sentence with which Martin takes issue might simply modify the preceding list and provide further detail about the enumerated release. If the release had meant to cover all claims arising under the California Labor Code, regardless of their factual predicate, the parties would reasonably have released "all claims" rather than "all such claims."

That said, reading the release language in this way renders a great deal of other language in the release duplicative. The release already includes "any and all claims, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, alleged or which could have been alleged, arising from the facts and circumstances in the operative complaint or amendment thereto." *Id.* This includes claims based on the California Labor Code.

9

At the May 18th hearing, the parties argued their release language would not release Martin's class claims in the state court case. Tr. of Proceedings 9, ECF No. 167. They also argued Martin's state court case will continue even if the settlement here is approved. *Id.* The parties agreed it made sense for the court to wait until the state court hearing on the motion for class certification, which was then set to occur on June 25, 2018. *Id.* 10–11. However, the state court case was stayed pending resolution of another matter before the California Supreme Court. Def.'s Req. for Judicial Notice 1, ECF No. 168. Although it appears the stay in Martin's state court case has since been lifted, the case remains unresolved. Therefore, it would cause undue delay to again put off the resolution of this matter until the resolution of Martin's state court case. While the conflict here could be cured with a carve-out of Martin's state court class from the Settlement Agreement, defendants do not agree to such a carve-out, Tr. of Proceedings 6–7, and it is not within the court's discretion to impose one. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982) ("Neither the district court nor [the appellate] court is empowered to rewrite the settlement agreed upon by the parties. . . . Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must then be given or withheld.").

2.     Gross Settlement Amount

Martin also urges the court to consider "the fairness of the settlement amount relative to both the proportionate liability of the settling defendants and the approximate total recovery of the plaintiffs." Amicus Br. 15:13–16 (quoting *In re Heritage Bond Litigation*, 546 F.3d 667, 674 (9th Cir. 2008)). Plaintiff argues the $10 million settlement is roughly 40 percent of the Settlement Defendants' total exposure, Pl.'s Mem. at 14:21, but Martin argues this is based only on the value of the plaintiff's meal-period claim and, even then, assumes only one violation per worker per work week. Amicus Br. 16:1–4. Martin argues the recovery is too low, but also writes, "Plaintiff . . . fails to provide the Court with any calculation of estimated gross recovery on all claims, making any true determination of reasonability nigh impossible." *Id.* at 16 n.7.

The court in fact does not have enough information available to it to determine a reasonable valuation of the meal period claim, and plaintiff has not accounted for the value of his other claims. As such, the court cannot determine if the gross settlement amount is proportionate to the approximate value of recovery. *Cf. Cotter*, 176 F. Supp. 3d at 931 ("Most glaringly, counsel for the plaintiffs pegged the $12.25 million settlement figure primarily to the estimated value of the drivers' claim for mileage reimbursement. But the lawyers estimated the value of the reimbursement claim to be $64 million, when in fact, using their own methodology, it is worth more than $126 million.").

### 3. PAGA Problems

The proposed release of liability includes "any and all penalties pursuant to the Private Attorneys General Act ("PAGA") of 2004," Proposed Agreement § I.32, but Martin argues such a release is not possible here, Amicus Br. 13:14–17. Martin argues before a PAGA claim is pursued, a plaintiff must serve notice on the California Labor Workforce and Development Agency and the employer at issue, something plaintiff has not demonstrated was done in this case as to all released parties. Amicus Br. 13:14–17 (citing *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365 (2005)). At least one other district court has explicitly connected the notice requirement with the ability to settle a PAGA claim. *See McDaniel v. Reinalt-Thomas Corp.*, No. CV 12-01466-TJH (PJWx), 2014 WL 12639092, at *1 (C.D. Cal. Oct. 8, 2014) ("Plaintiff provided no evidence that the notice requirements of [PAGA] have been met. . . . Plaintiff must establish that he has the authority to settle PAGA claims . . . .").

Martin argues the court should also deny "the proposed settlement based on a finding that the [Settlement Parties]' PAGA allocation (only $50,000 of the total $10,000,000 or 0.5%) is impermissibly unproportioned to the ultimate recovery in violation of established law." Amicus Br. 14:5–8. As Martin argues, courts have denied settlements because of arbitrarily low PAGA penalties. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) ("[T]here is no rationale for allocating $1 million of the proposed settlement fund to the PAGA claim other than that this is a round number and a large figure in comparison to other PAGA settlements. The parties have failed to demonstrate how. . . coherent analysis justifies

settling the PAGA claim for such a relatively meager value." (citations and internal quotation marks omitted)); *Cotter*, 176 F. Supp. 3d at 932 ("[C]ounsel's treatment of the drivers' claim for penalties under [PAGA] was arbitrary, and may have shortchanged the State of California . . . ."); *McDaniel*, 2014 WL 12639092, at *1 ("Plaintiff must . . . justify the reasonableness of the $10,000.00 PAGA settlement.").

Plaintiff has not explained how the release of liability can include unnoticed PAGA claims against the Settlement Defendants' many client employers and has failed to justify the amount of the PAGA settlement. This omission as well stands in the way of approving preliminary settlement.

IV. CONCLUSION

The court is unable to preliminarily certify the class for settlement purposes because plaintiff has not demonstrated the putative class can be certified under Rule 23. Further, the Proposed Agreement is not fair, reasonable and adequate. Plaintiff's motion is DENIED.

IT IS SO ORDERED.

DATED: February 1, 2019.

_____
UNITED STATES DISTRICT JUDGE