GRAHAMHOLLIS APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
3555 Fifth Avenue
San Diego, CA 92103
Telephone:     (619) 692-0800
Facsimile:     (619) 692-0822

COHELAN KHOURY & SINGER
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Diana M. Khoury (SBN 128643)
dkhoury@ckslaw.com
Marta Manus (SBN 260132)
mmanus@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone:     (619) 595-3001
Facsimile:     (619) 595-3000

Attorneys for Plaintiff Michael Stoddart

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H. STODDART individually and on behalf of similarly situated and similarly aggrieved current and former employees of EXPRESS SERVICES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, PHILLIPS & ASSOCIATES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, WESTERN WINE SERVICES, INC., and Does 1 through 100, inclusive,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXPRESS SERVICES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, PHILLIPS & ASSOCIATES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, WESTERN WINE SERVICES, INC., and Does 1 through 100, inclusive,<br><br>                    Defendants. | Case No.:   2:12-cv-01054-KJM-CKD<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ISAM C. KHOURY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          January 17, 2020<br>Time:          10:00 a.m.<br>Courtroom:   3 (15th Floor)<br>Judge:         Hon. Kimberly J. Mueller<br><br>Action Filed:          March 13, 2012<br>Case Removed:        April 20, 2012<br>Trial Date:            None set |

I, Isam C, Khoury, declare as follows:

1.     I am a Partner with the law firm of Cohelan Khoury & Singer, co-counsel of record for Plaintiff and the Settlement Class. I submit this Declaration in Support of Plaintiffs' Renewed Motion for an Order Granting Preliminary Approval of Class Action Settlement. The following facts are within my personal knowledge and if called to testify I could and would competently testify to them.

2.     I am a 1973 Hastings School of Law graduate and was admitted to the California State Bar in 1974 and am admitted to practice in all state courts in California and in the all federal courts in California, as well as the First Circuit Court of the State of Hawaii and the United States Court of Appeals for Sixth Circuit.

3.     I have been selected as a Southern California/San Diego "Super Lawyer" for the years 2011 through 2017 by the Southern California Super Lawyers Magazine. I am AV rated by Martindale-Hubbell as are many attorneys in our firm.

4.     In 1981, Timothy D. Cohelan and I formed Cohelan & Khoury, a Partnership of Professional Law Corporations, and within a few years began to focus on class actions. In 2009, Cohelan & Khoury became Cohelan Khoury & Singer. Our firm represents plaintiffs in complex, class and representative action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest type class and representative actions. Attached as Exhibit 3 is a copy of my firm's Resume.

5.     Cohelan Khoury & Singer has been certified by the State Bar of California to provide the Mandatory Continuing Legal Education activity entitled "Litigating California Class Actions" and has conducted MCLE certified seminars on this topic. Senior Partner, Timothy D. Cohelan, is the author of Cohelan on California Class Actions (1997-2019), part of Thomson Reuters Expert Series updated annually. Managing Partner, Michael D. Singer, is a contributing author on the CEB publication California Wage and Hour Law: Compliance and Litigation (2010-2019, updated annually), in which he wrote the opening chapter overview on California Wage and Hour laws, including the public policy underpinnings for those laws, and the PAGA Claim chapter. Mr. Singer has served as a columnist for the California State Bar, Litigation Section on wage and hour litigation and has contributed articles on wage and hour and class action issues through the years to numerous California publications. Mr. Singer

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

typically lectures several times per year for continuing education courses on wage and hour and class action issues at events in San Diego, Orange County, Los Angeles, and San Francisco. Mr. Singer regularly contributes amicus curiae briefs on class action and employment issues in the California Supreme Court and Courts of Appeal. In his capacity as Amicus lesion for California Employment Lawyers Association, he coordinated, drafted or co-drafted amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions. He has been engaged in the practice of labor and employment law since 2000, handling well over 200 wage and hour class actions and several individual labor cases, and has litigated several types of employment actions, including complex ERISA employee welfare benefit plan cases, as well as wage and hour class actions before Federal and State Courts in California. In 2014, Mr. Singer and J. Jason Hill tried a wage and hour class action involving claims for illegally deducted wages and unreimbursed expenses in the matter of *Dilts v Penske Logistics LLC, Inc*. We successfully appealed the trial court ruling in *Dilts* finding state laws preempted by the FAAAA for truck drivers. Mr. Singer has participated in over 50 appellate cases and argued writs and appeals before several California District Courts of Appeal, arguing for plaintiffs on rehearing in *Brinker International Inc. v. Superior Court* before the Fourth District Court of Appeal, as well as federal appeals in the Second, Third, and Ninth Circuit Courts of Appeals. In addition, Mr. Singer has drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions. As co-Class Counsel in *Brinker Restaurant Corp. v. Superior Court* [formerly reported at (2008)165 Cal.App.4th 25], Mr. Singer argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the successful Petition for Review. My firm has successfully tried class cases, obtained appellate reversals of class certification denials *(Hicks v. Kaufman and Broad,* (2001) 89 Cal.App.4th 908), certified multiple wage and hour class.

6.    As a part of our overall firm philosophy lawyers perform community service and pro bono work. Firm volunteer work includes service through the Legal Aid at Work, San Diego Volunteer Lawyer Program, the San Diego County Bar Foundation and Consumer Attorneys of San Diego. For instance, Mr. Singer has served on the Legal Aid at Work Board of Directors since 2011. Mr. Cohelan

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

served as the Chair of the San Diego Volunteer Lawyers Program from 2015-2018, and currently sits on the Board as past Chair. He completed 24 years of volunteer judicial service as a Judge Pro Tem of the San Diego Superior Court, and Diana M. Khoury has served on the San Diego County Bar Foundation's (SDCBF) Board of Directors since 2013. SDCBF is the 501(c)(3) charitable arm of the San Diego County Bar Association.  Furthermore, since admission to the California State Bar, Partner Diana M. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, and American Association for Justice serving on numerous committees through the years for these organizations. For six years from 2010 through 2015, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego, serving as chair of numerous committees throughout the years. Our firm's recent pro bono victories include a settlement which prohibits the City of San Diego from targeting homeless people for illegal lodging tickets under Penal Code Section 467(j). (*Spencer v. City of San Diego*, USDC Case No 04CV-2314 BEN (WMC).) The *Spencer* settlement had the effect of increasing the number of available shelter beds in the City of San Diego.

7.     We consider ourselves experienced and qualified to evaluate Class claims and viability of the defenses. That experience and those qualifications allowed our firm to assist in achieving an efficient resolution of the claims in this matter.

8.     Plaintiff was employed as a non-exempt employee through Phillips & Associates, Inc., a staffing company and franchisee of Express at Western Wine Services, Inc.'s location in Vallejo, California, from April 2007 through May 2011.

9.     Express Services, Inc. is one of the nation's largest staffing services franchisors with more than 600 franchise locations nationwide. Express is listed as the Labor Code section 226(a) employer listed on Plaintiff's and the Class' wage statements and W2 forms.

10.     Phillips is an Express franchisee. As a franchisee, Phillips recruits, hires and assigns Express associates to work at client sites, such as Western Wine Services Inc. ("Western Wine"). The Phillips office is where Plaintiff and other Express associates who were hired through that franchisee, would interview, obtain employment training and materials, submit time sheets, and pick up paychecks.

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

11.     Western Wine is a wine logistics business near Napa, California, providing services related to the transport of wine. Western Wine had its own W2 employees in addition to those it hired through Express/Phillips; those direct employees are not Class Members. Western Wine and its direct W-2 employees are not included in this settlement.

12.     The Class is defined as: All current and former employees of Defendants who worked assignments during the period March 23, 2008 through December 31, 2017. SA §I.7. There are approximately 162,993 members of the Class. Express pays and provides Class Members with wage statements on a weekly basis.

13.     On July 20, 2011, asserting that Express Services, Inc. and Western Wine were joint employers, Plaintiff notified the California Labor and Workforce Development Agency (LWDA), of their alleged Labor Code violations regarding meal period violations, failure to pay wages and overtime, inaccurate wage statements and failure to pay all wages due at separation of employment because of failure to pay meal period premiums and overtime.

14.     On August 21, 2011, Western Wine contends it revised its on-duty meal period policy and discontinued its use of on-duty meal period agreements. Plaintiff believes this was in direct response to the LWDA letter. On February 3, 2012, Plaintiff filed a revised letter with the LWDA, adding Phillips & Associates, Inc. as another alleged joint employer. The LWDA declined to investigate the allegations made in either letter. The two notices to the LWDA, as well as the declination letter from the LWDA, are attached hereto as Exhibit 2.

15.     On March 13, 2012, Plaintiff filed the instant action, asserting the following wage and hour violations as a putative class action: (1) failure to provide mandated meal periods; (2) failure to timely pay all wages upon termination; (3) failure to provide accurate itemized wage statements; (4) failure to maintain accurate records; (5) violation of Business and Professions Code §§17200, *et seq.*; and (6) for penalties pursuant to PAGA. Express answered the complaint, and then removed the action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), on April 20, 2012.

16.     On September 18, 2012, Express published and disseminated a facially compliant meal period policy to its employees; however, Express contends that its policies and practices before this time were lawful as well. The Parties engaged in informal discovery and agreed to mediate this case with

David Rotman in March 2014. The Parties reached an agreement at mediation conditioned upon approval by Express Services, Inc.'s Board of Directors and signed an MOU and notified the Court of the pending Settlement; the Court set a date to file for preliminary approval. In August 2014, Express' Board rejected the settlement, and litigation continued.

17.     Plaintiff sought and was granted leave to file a First Amended Complaint ("FAC"), adding in claims for improper calculation of the overtime rate related to non-discretionary bonuses, and language clarifying the employer/employee relationship among the Defendants, as well as revised the non-compliant meal period allegations to specifically include on-duty meal periods and second meal periods, together with all related derivative claims.

18.     Express moved to dismiss and strike portions of the FAC. On September 16, 2015, the Court granted Express' motion to dismiss new PAGA allegations on the ground that Plaintiff failed to exhaust the notice requirements with respect to Plaintiff's newly alleged inclusive dates claim under Labor Code section 226, and the second meal period claim, and calculation of correct overtime rate. The Court also struck Plaintiff's request for injunctive relief and denied the rest of the relief requested. (Dkt. 91)

19.     Plaintiff filed his second amended complaint as directed, and Express moved to dismiss that complaint as well, on the grounds that the PAGA allegations were dismissed by the September 16, 2015 order. Plaintiff's opposition pointed out that the Court did not dismiss the stand-alone claim for failure to include inclusive dates in the September 16, 2015 Order, rather, only the PAGA allegations were dismissed, for failure to properly notify the LWDA and the employer(s) of the alleged Labor Code violations, and that the inclusive dates claim related back to the date of the original complaint.

20.     The Court denied Express' motion to dismiss in its entirety, preserving the section 226 inclusive dates claim, on June 21, 2016.  (Dkt. 109). The parties then resumed discovery in earnest.

21.     After Express' second motion to dismiss was determined in June, 2016, the parties began discovery immediately after the July, 2016 status conference, and issues arose regarding the scope of discovery Plaintiff was entitled to from Express.

22.     The parties met and conferred, and filed a motion to have Magistrate Delaney resolve the dispute. In December, 2016, Magistrate Delaney ruled that Plaintiff was entitled to Express' handbooks

1  and wage statements covering all California locations, as well as to the class list, which was delivered in
2  January, 2017. Plaintiff contacted thousands of class members after receiving the class list, in order to
3  prepare for class certification.

4        23.    During this time, the parties began exploring the possibility of another mediation to occur
5  prior to class certification. Discovery continued through the date of mediation in September, 2017, while
6  Plaintiff prepared to file a motion for class certification.  When the Court granted the parties' request to
7  continue certification proceedings pending the outcome of mediation, the parties mediated the case on
8  September 27, 2017 and reached an initial agreement.

9        24.    Plaintiff was deposed twice, and three Rule 30(b)(6) depositions were taken while
10  preparing for class certification. Class certification discovery was essentially complete when the case
11  was mediated the second time.

12        25.    After a failed mediation on March 5, 2014, the Parties agreed to a second mediation on
13  September 17, 2017, with mediator Jeffrey Ross, Esq. With Mr. Ross' assistance, after a contentious,
14  arm's-length process, Express, Phillips, and Plaintiff reached an agreement in principle. Western Wine
15  did not participate in the mediation and has not joined in or contributed to the Settlement.

16        26.    A true and correct copy of the Stipulation and Settlement of Class and Collective Action
17  and Representative Claims ("Agreement") is attached hereto and incorporated herein by this referenced
18  as Exhibit 1. Exhibit A to the Agreement are the Notice of Pendency of Class Action Settlement,
19  Change of Address Form, and pre-printed return envelope, collectively, "Notice Packet").  I summarize
20  the salient terms herein for the Court's convenience.

21        27.    The Parties have agreed that the Action may be settled and compromised for the non-
22  reversionary Gross Settlement Amount of $10,000,000 (GSA), which includes, subject to and contingent
23  upon the approval of this Court, (a) attorneys' fees of $2,500,000 (25% of the GSA) to compensate
24  Plaintiff's Counsel for work performed and all work remaining to be performed in documenting and
25  administrating the Settlement and securing final Court approval; (b) Plaintiff's Counsel's litigation
26  expenses of up to $70,000; (c) a Class Representative service payment to Plaintiff Michael Stoddart in
27  the sum of $10,000 in consideration of his initiation and prosecution of this action, serving as a
28  representative for the Class, work performed, and risks undertaken for the payment of costs in the event

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

the case had not concluded successfully, benefits conferred on the absent Class Members, and a general release of claims; (d) administration fees and expenses to Rust, Inc., in an amount not to exceed $365,066; and (e) the payment to the California Labor and Workplace Development Agency of $37,500 (75% of $50,000) allocated for the payment of all applicable civil penalties under PAGA. Express will bear the employer's share of taxes for the $10,000,000 amount separately from the GSA.

28.     Plaintiff signed a retainer agreement providing for attorneys' fees of 33.33% of any recovery, and specifically provides for the apportionment of fees as follows: Cohelan, Khoury & Singer: 50%, and Graham Hollis, APC: 50%.

29.     After all Court-approved deductions from the GSA, the remaining sum, the "Net Class Settlement Fund" or "NSF", estimated at $7,017,434, will be distributed entirely to approximately 162,993 Class Members who do not request to be excluded from Settlement as 10% wages and 90% interest and penalties. A claim form is not needed. Class Members will receive a share of the NSF based on the number of weeks worked during the period March 13, 2008 through December 31, 2017 (Class Period).

30.     Class Members will receive a pro rata share of $5,253,700.50 (75% of the NSF after deduction of the PAGA Payment to the members of the PAGA Group) based on the number of workweeks they worked an assignment during the period March 23, 2008 through December 31, 2017. Members of the Wage Statement Subclass will receive a pro rata share of $1,751,233.50 (25% of the NSF after deduction of the PAGA Payment to the members of the PAGA Group) based on the number of workweeks they worked an assignment during the period March 23, 2009 through December 31, 2017. The PAGA Group will receive a pro rata share of the $12,500 PAGA award based on the number of pay periods they worked an assignment during the period March 23, 2011 through December 31, 2017.

31.     The NSF, divided by the number of wage statements covered by the settlement, is currently estimated to be approximately $2.80 per workweek, based on a workweek count of 2.5 million spanning a class period of nearly ten years. Over just one year, a class member can receive up to $140 for 50 weeks of work and a Class Member who worked during the entire Class Period, which is approximately 504 workweeks, would receive $1,411.20.

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

32.     Class members' number of workweeks is readily available form Express' records, and the Claims Administrator can apply the formula in a fair and transparent manner. This method allocates the funds based on amount of time worked and represents the fairest method of distribution and does not grant preferential treatment to any Class Members.

33.     Following Final Approval and the Effective Date of Settlement, each Class member who did not request exclusion will be mailed their share of the NSA, without the need to submit a claim form.

34.     The Settlement is non-reversionary which assures the entire NSA will be distributed to Participating Class members. If a settlement check is not cashed after 180 days, the monies will be distributed *cy pres* to the Salvation Army's California programs for unemployed and under-employed workers, which serves such workers in gaining the employment skills and experience necessary to obtain employment and supports them during periods of unemployment.

35.     Following preliminary approval, the Claims Administrator selected by the Parties, Rust Consulting, Inc., will mail to each Class Member a Notice of Class Action Settlement ("Notice"), Change of Address form, and a pre-printed return envelope (collectively, "Notice Packet").

36.     The Notice advises the Class: (1) of their rights to participate in the Settlement; (2) that each will receive an Individual Settlement Payment without a claim form as long as a request for exclusion is not returned; (3) that a current address must be kept on file with the Administrator to receive an Individual Settlement Payment check; (4) how to object to the Settlement; (5) how to opt-out of the Settlement; (6) how to challenge the information upon which their Individual Settlement Payments will be based; and (7) the procedures and timing for doing each of these acts. The Notice also advises the Class of the formula for distribution, the estimated weekly payment rate, and the number of workweeks Defendants' records show the Class Members worked during the Class Period.

37.     The Notice specifically describes the release of claims to be given by Class Members who do not return a valid and timely request for exclusion, and provides the date, place and time set for the Final Fairness Hearing. The Notice also advises Class Members that because federal labor law claims are also being released pursuant to the Fair Labor Standards Act (FLSA), the back of their Individual Settlement Payment check will include release language and their signature will indicate their

intent to opt-in and be bound by that release. The inclusion of a release of claims under federal law was necessary, because claims of unpaid overtime based upon on-duty meal periods was brought to the attention of the LWDA in Plaintiff's initial PAGA letter, and therefore could have been alleged in each of the complaints, and the SAC alleges failure to pay overtime at the correct rate.

38.     The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced, well-respected mediator. Following agreement to a settlement in concept, the parties have worked diligently and in earnest to reach agreement on all terms of the proposed Settlement. Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature. Continued good faith, but occasionally contentious, negotiations were required to reach agreement on all terms set forth in the Agreement presented here for preliminary approval.

39.     Continued litigation would take substantial time, create risk of no recovery, and possibly confer no Class benefit. By contrast, the proposed Settlement will yield a prompt, certain, and substantial Class recovery, without additional time or judicial resources.

40.     In the face of these uncertainties, the Parties agreed to a compromise, non-reversionary Settlement of $10,000,000 to benefit the 162,993 member Class. The recovery is certain and substantial, with a payout to each Class member who does not opt-out. With approximately 2.5 million workweeks worked by the Class during the Class Period, the settlement results in an estimated $2.80 for each workweek (NSF of $7,004,934 divided by 2.5 million workweeks = $2.80). Based on this calculation, Plaintiff, who worked for approximately 165 workweeks in the Class Period, would receive approximately $462.00. A Class Member who worked during the entire Class Period, which is approximately 504 workweeks, would receive an estimated $1,411.20.

41.     The number of workweeks involved in this settlement is enormous, more than 2.5 million, which would lead to a gross potential damage exposure if Plaintiff could prove all of his claims and that all violations were occurring on a regular basis. Even if Plaintiff could obtain class certification, proof of the rate of meal period infractions would be problematic.  Much of the data is not electronic.

42.     For the first mediation, Express produced thousands of time sheets, which were filled out by hand. This required extensive time and effort to hand analyze each week's time records to determine whether a meal period was short, late, or missed. Further, many time cards had no place to indicate

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

whether or when a meal period was taken. Accordingly, it would not make sense to prepare a damage model assuming one meal period violation for each work week, because it could never be proved, especially during a ten-year class period, and employees who are transitory in nature, in that they are temporarily placed.

43.     By the time of the second mediation, formal discovery was largely completed. Plaintiff had obtained the class contact list and conducted interviews with nearly 1,000 putative class members, placed at various Express client locations throughout California.

44.     I believe this settlement represents a reasonable compromise and considered, among other risks, adverse class certification, decertification, or summary judgment rulings, loss or lesser outcome at trial, post-trial, and appeal, and other perils of litigation that affect the value of all claims, in reaching the proposed Settlement. The Settlement presents every class member with a wage component and penalty component for each week worked, without the necessity of having to remember, or prove, when meal periods were taken or if correct overtime was paid.

45.     Plaintiff's claims are primarily non-compliant meal period policies, failure to pay overtime at the correct rate, and during a portion of the time period, non-compliant wage statements under Labor Code section 226 for failure to provide the inclusive dates of the pay period. Plaintiff analyzed timekeeping and payroll documents for employees at nearly one-third of Express' client locations in California. Defendants confirmed approximately 2.5 million workweeks worked by Class members in the Class Period. Defendants also provided information regarding the amount of allegedly non-discretionary bonuses paid in weeks in which Class members worked overtime for purposes of analyzing the inaccurate overtime rate claim.

46.     Plaintiff's information indicated that even after Express issued its published meal policy in September 2012, Class Members were still not provided compliant meal periods and were not paid premiums for non-compliant meal periods. Express uniformly failed to pay any meal period premiums. Plaintiff attempted to contact approximately 10,000 Class Members to obtain information on their meal period experience, and interviewed nearly 1,000 Class Members, both before and after September 2012.

47.     For the first mediation, Express produced thousands of time sheets, which were filled out by hand by Class Members. This required extensive time and effort to analyze each week's time records

to determine whether a meal period was short, late, or missed. Further, many time cards had no place to indicate whether or when a meal period was taken. This Settlement represents a reasonable compromise and presents every Class Member with a wage component and penalty component for each week worked, without the necessity of having to remember, or prove, when meal periods were taken. However, for purposes of evaluating the reasonableness of the Settlement amount, if Plaintiff assumes one meal period violation for each work week for each Class Member with an hourly wage of $10, the estimated value of the claim totals approximately $25,314,230.

48.     While Plaintiff believes he had strong arguments on his meal period claim, Express' position was bolstered by the fact that it did implement a compliant written meal period policy, applicable to its non-exempt employees in California. Furthermore, the variances in job placement locations, job duties, and client policies could prove difficult to overcome at the certification stage. Based on these considerations, Plaintiff estimated the probability of prevailing on a class certification motion at 50% and the probability of prevailing at trial at 50%, for a 75% discount of realistic maximum exposure for settlement to $6,328,557.50.

49.     Plaintiff alleged that Defendants paid non-exempt employees various non-discretionary bonuses including referral and retention bonuses. Where a bonus payment is non-discretionary, it must be included in the regular rate of pay when computing overtime compensation, which Plaintiff alleged that Defendants failed to do. Based on the data provided by Defendants for mediation, Plaintiff estimated that Class members who received one or more non-discretionary bonuses and worked overtime in the same pay period were owed approximately $631,000 in underpaid overtime wages.

50.     While Plaintiff believes he had strong arguments on his unpaid overtime claim, Express changed its allegedly unlawful practice and stopped paying referral and retention bonuses during the Class Period. Furthermore, Plaintiff took into account the possibility that a court or trier of fact could determine that the bonus payments were discretionary in nature. Therefore, Plaintiff estimated the probability of prevailing at trial at 50% for a realistic maximum exposure for settlement of $315,500.

51.     Plaintiff's wage statement claim is based on Express' failure to include the inclusive dates of the pay period on the wage statements issued during a portion of the Class Period. Plaintiff believes the inclusive dates wage statement claim is intrinsically certifiable. The inclusive dates wage

statement claim is objective, is apparent on the face of the wage statement, is a state-wide practice, and is ascertainable from Express' records. However, Plaintiff is aware that Express may defend this claim on a number of grounds, including, but not limited to the knowing and willful, and injury requirements of Labor Code section 226, which compromise the apparent strength of this claim. Plaintiff estimated penalties for wage statement violations of $15,243,568. Plaintiff estimated the probability of prevailing on a certification motion at 50% and the probability of prevailing at trial at 50%, resulting in a 75% discount of realistic maximum exposure for purposes of settlement of $3,810,892.

52.     The Settlement provides that 25% of the NSF, or $1,751,233.50 will be distributed on a pro rata bases to members of the Wage Statement Subclass based on the number of workweeks worked during the period March 23, 2009 through December 31, 2017. In light of the above, the allocation to the Wage Statement Subclass reflects an excellent recovery for this claim.

53.     The penalty was estimated to be $51,274,802. For each of the former employees, Plaintiff has calculated waiting time penalties as 30 days multiplied by the daily pay (average hourly rate times the average number of hours worked. As with the wage statement claim, because of its derivative nature and the potential Defendants may establish a good faith defense, Plaintiff discounted the potential maximum exposure by 75% for purposes of settlement to $12,818,700.50.

54.     The settlement of the claim for penalties under the Labor Code's Private General Act of 2004, as amended (PAGA) for civil penalties in the sum of $50,000, 75% of which ($37,500) will be paid to the LWDA, reserving $12,500 to be paid to the PAGA Group through the NSF, is reasonable and appropriate under the circumstances. The $37,500 portion to be paid to the LWDA was not the result of self-interest at the expense of other Class Members.

55.     PAGA penalties are also subject to judicial discretion and are not mandatory. PAGA penalties are also to be restrained so that they are not punitive or confiscatory. Further, the trial methodology of PAGA cases continues to develop and is uncertain. Defendants' position is that should this action be tried as a PAGA representative action, it would be unmanageable and involve a multitude of thousands upon thousands of individual issues. PAGA penalties if awarded would require 75% of any award to be paid to the State of California. Fortunately, as a result of the mediated Settlement, a class action resolution was accomplished which will provide substantially more benefits to the Class.

1  Plaintiffs discounted the value of the PAGA penalties for settlement purposes.

2         56.    Class Counsels' attorneys' fees and litigation costs incurred pursuing the litigation of this

3  action will also be paid from the GSA. Class Counsel will file a motion requesting reimbursement of

4  their litigation expenses of up to $70,000 and an award of fees of up to $2,500,000 (25% of the GSA).

5  The motion for attorneys' fees and costs will detail the hours expended and the litigation expenses

6  advanced.

7         57.    Subject to the Court's approval at the time of the final fairness hearing, Class Counsel

8  will request on behalf of Plaintiff Michael Stoddart the sum of $10,000 for his time, effort, risks

9  undertaken for the payment of costs in the event this action had been unsuccessful, and stigma upon

10 future employment opportunities for having initiated this action against a former employer, and general

11 releases of all claims related to his employment.

12        58.    There are an estimated 162,993 putative Class Members.

13        59.    On the same date the instant motion is filed with the Court, it will be served upon

14 Defendant and provided to the Labor and Workforce Development Agency ("LWDA") electronically

15 through the LWDA's website, https://www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-

16 General-Act.html, using the appropriate intake form.

17        I declare under the penalty of perjury under the laws of the United States of America that the

18 foregoing is true and correct and that this declaration was executed on this 19th day of December, 2019

19 in San Diego, California.

20                                                          s/ Isam C. Khoury

21                                                          Isam C. Khoury

22

23                              **ECF SIGNATURE CERTIFICATION**

24        I certify that I obtained permission to sign on behalf of the above person(s) who authorized the

25 filing of this instrument.

26 Dated: December 19, 2019                      s/ Marta Manus
                                                  Marta Manus
27                                                Attorney for Plaintiff
                                                  MICHAEL H. STODDART
28

DECLARATION OF ISAM C. KHOURY ISO RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

# EXHIBIT 1

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RICHARD J. SIMMONS, Cal. Bar No. 72666
JASON W. KEARNAGHAN, Cal. Bar No. 207707
NORA K. STILESTEIN, Cal. Bar No. 280692
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

MORGAN P. FORSEY, Cal. Bar No. 241207
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone.  415.434.9100
Facsimile:   415.434.3947
Email:       mforsey@sheppardmullin.com

Attorneys for EXPRESS SERVICES, INC.
and PHILLIPS & ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H. STODDART individually and on behalf of similarly situated and similarly aggrieved current and former employees of EXPRESS SERVICES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, PHILLIPS & ASSOCIATES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, WESTERN WINE SERVICES, INC., and Does 1 through 100, inclusive,<br><br>          Plaintiffs,<br><br>   vs.<br><br>EXPRESS SERVICES, INC. d/b/a EXPRESS EMPLOYMENT PROFESSIONALS, PHILLIPS & ASSOCIATES, INC. d/b/a/ EXPRESS EMPLOYMENT PROFESSIONALS, WESTERN WINE SERVICES, INC., and Does through 100, inclusive,<br><br>          Defendants. | Case No. 2:12-cv-01054-KJM-CKD<br><br>[Assigned to the Hon. Kimberly J. Mueller]<br><br>**STIPULATION AND SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND REPRESENTATIVE CLAIMS**<br><br>Action Filed:        March 13, 2012 |

1    Subject to final approval by the Court, which counsel and the parties agree to

2 pursue and recommend in good faith, Plaintiff Michael Stoddart ("Named

3 Plaintiff"), individually and on behalf of all others similarly situated and alleged

4 aggrieved employees, on the one hand, and Defendants Express Services, Inc. and

5 Phillips & Associates, Inc. on the other (collectively "Defendants"), hereby agree to

6 the following binding Settlement of the class action designated <u>Michael Stoddart v.</u>

7 <u>Express Services, Inc., et. al</u>, U.S. District Court for the Eastern District of

8 California Case No. 2:12-cv-01054-KJM-CKD.

9               **I.      <u>DEFINED TERMS</u>**

10    As used herein, the following terms are defined as:

11    1.    "Action" or "Lawsuit" means <u>Michael Stoddart v. Express Services,</u>

12 <u>Inc., et. al</u>, U.S. District Court for the Eastern District of California Case No. 2:12-

13 cv-01054-KJM-CKD.

14    2.    "Agreement," "Settlement" or "Stipulation" means this Stipulation and

15 Settlement of collective action, representative and Class Action Claims.

16    3.    "Attorneys' Fees and Cost Award" means the amount authorized by the

17 Court to be paid to Class Counsel for the services they have rendered and expenses

18 they have incurred in prosecuting the Action.  Class Counsel shall request, and

19 Defendant will not oppose, an award of attorneys' fees of up to one-fourth (25%) of

20 the Gross Settlement Amount, or $2,500,000, as well as actual costs up to $70,000,

21 in addition to any award of attorneys' fees.  The Attorneys' Fees and Cost Award

22 shall be paid from the Qualified Settlement Fund.  Class Counsel will be issued an

23 IRS Form 1099 for the Fees and Costs Award.  The Attorneys' Fees and costs will

24 be divided pursuant to agreement between counsel and approved by the Class

25 Representative and will be provided to the Court in connection with the final

26 approval and fee hearings.

27

28

STIPULATION AND SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND REPRESENTATIVE
CLAIMS – CASE NO. 2:12-cv-01054-KJM-CKD
EXHIBIT 1, PAGE 2

1        4.     "Claims" means all claims which have been, will be (pursuant to

2  Paragraph III.2 *infra*), or could have been asserted in the Action based on the facts

3  alleged.

4        5.     "Claims Administrator" means Rust Consulting.

5        6.     "Claims Administration Costs" means all costs incurred in

6  administering the Settlement, $365,066.

7        7.     "Class" and "Class Members" mean and refer to:  All current and

8  former employees of Defendants who worked assignments during the period March

9  23, 2008 through December 31, 2017.

10        8.     "PAGA Group" means and refers to:  Class Members who worked

11  assignments during the period March 23, 2011 through December 31, 2017.

12        9.     "Wage Statement Subclass" means and refers to: Class Members who

13  worked assignments during the period March 23, 2009 through December 31, 2017.

14        10.    "Class Counsel" and "Named Plaintiff's Counsel" means Cohelan,

15  Khoury & Singer, and Graham Hollis, APC.

16        11.    "Class List and Data Report" means a list of the names, most current

17  mailing address and telephone number, social security number, and the number of

18  weekly wage statements received by each Class Member during the applicable Class

19  Period.  Defendant will diligently and in good faith compile the Class List and Data

20  Report from its records and provide it to the Claims Administrator and Class

21  Counsel within thirty (30) business days following Preliminary Approval of the

22  Settlement. The Class List and Data Report shall be provided in a ready to use

23  computer-readable format.

24        12.    "Class Period" means the period from March 13, 2008 through

25  December 31, 2017.

26        13.    "Court" means the U.S. District Court for the Eastern District of

27  California.

28

14.    "Defendants" means and refers to Express Services, Inc. and Phillips & Associates, Inc.

15.    "Defendants' Counsel" means Richard J. Simmons, Jason W. Kearnaghan, Morgan P. Forsey and Nora K. Stilestein of Sheppard, Mullin, Richter, and Hampton, LLP.

16.    "Effective Date" means the date on which the Settlement is finally approved and the Court's Final Judgment ("Final Judgment" or "Judgment") becomes final.  For purposes of this paragraph, the Court's Final Judgment "becomes final" upon the latter of:  (i) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from, or any other challenge to, the Court's Judgment; (ii) the date affirmance of an appeal of the Judgment becomes final under the Federal Rules of Civil Procedure; or (iii) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on review of any court of appeal decision relating to the Judgment.

17.    "Final Approval Hearing/Settlement Fairness Hearing" means the hearing at which the Court considers whether to approve the Settlement and to enter the Final Judgment.

18.    "Final Judgment" means the Court's Final Judgment.

19.    "General Release" means that Named Plaintiff, in his individual capacity and with respect to his individual claims only, releases the Released Parties from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract or for violation of any state or federal statute, rule or regulation arising out of, relating to or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof including a waiver of Civil Code §1542.

20.     "Gross Individual Settlement Payment" means the Settlement amount for each individual Class Member resulting from the calculations set forth herein.

21.     "Gross Settlement Amount" means the total amount available to be paid by Defendant pursuant to the Settlement and equals no more than $10,000,000. All payments associated with the Settlement shall be paid from the Gross Settlement Amount, including all payments to Participating Class Members, the Named Plaintiff, Class Counsel, the Labor and Workforce Development Agency, the Claims Administrator and employment taxes, including the employee FICA, FUTA and SDI contributions, on the wage portion of the Gross Individual Settlement Payment. Defendants' employer's share of taxes will be paid separately from the Gross Settlement Amount and will not be deducted from the Gross Settlement Amount.

22.     "Individual Settlement Payment" means the amount of each Participating Settlement Class Member's Gross Individual Settlement Payment, less employee portions of state and federal withholding taxes, including the employee FICA, FUTA and SDI contributions and any other applicable payroll deductions required by law as a result of the payment of the amount allocated to such Participating Settlement Class Member under the terms of the Settlement.

23.     "Named Plaintiff" means proposed settlement class representative Michael Stoddart.

24.     "Net Class Settlement Fund" refers to the funds available to be distributed to Participating Settlement Class Members under this Stipulation after payment of any Attorneys' Fees and Cost Award, Service Payment, Claims Administration Costs, and the California Private Attorneys General Act ("PAGA") payment.

25.     "Notice" means the Notice of Pendency of Class Action Settlement which describes the procedure and time period to opt-out of or object to the

1  Settlement, and the date set for the Final Approval Hearing (substantially in the

2  form annexed hereto as Exhibit A).

3       26.   "Notice Packet" means the packet that will be sent via regular mail to

4  all Class Members and shall include the Notice, Change of Address Form, and

5  Preprinted Return Envelope.

6       27.   "Notice Response Deadline" means the date forty-five (45) calendar

7  days after all Notice Packets are initially mailed to Class Members by the Claims

8  Administrator and is synonymous with Opt-Out/Objection Deadline Date, as defined

9  immediately below.

10      28.   "Opt-Out/Objection Deadline Date" means the date, no later than forty-

11 five (45) calendar days after the date the Notice Packets are initially mailed to the

12 class, to postmark a valid and timely opt-out or objection.

13      29.   "Opt-Out" means a timely postcard or letter submitted by a Class

14 Member indicating a request to be excluded from the Settlement. The Request for

15 Exclusion must: (a) set forth the name, address, and telephone number of the Class

16 Member requesting exclusion; (b) clearly state that the Class Member does not wish

17 to be included in the Settlement; (c) be signed by the Class Member; (d) be returned

18 by mail, addressed to the Claims Administrator at the specified address indicated in

19 the Notice Packet; and (e) be postmarked on or before the Opt-Out/Objection

20 Deadline Date.  The date of the postmark shall be the exclusive means to determine

21 whether a Request for Exclusion has been timely submitted.  A Class Member who

22 does not request exclusion from the Settlement shall be deemed a Class Member and

23 will be bound by all terms of the Settlement if the Settlement is granted final

24 approval by the Court, except that only those Class Members endorse a settlement

25 payment check shall be deemed to have opted-in for the purposes of the release of

26 claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

27

28

30.    "PAGA Payment" means Defendants' payment of $50,000, with 25%, or $12,500, to PAGA Group, and 75%, or $37,500, to the California Labor and Workforce Development Agency, all to be paid from the Gross Settlement Amount. This PAGA Payment is made pursuant to California Labor Code section 2699(i). Plaintiff will provide notice of this settlement to the LWDA upon the Court ordering preliminary approval of this settlement.

31.    "Participating Class Member" means a Class Member who has not opted out of the Settlement.

32.    "Parties" means Defendants, the Named Plaintiff, and the Class Members.

33.    "Preliminary Approval Order" means the Order issued by the Court preliminarily approving the terms of the Settlement set forth in this Stipulation.

34.    "Qualified Settlement Fund" shall be the fund established by the Claims Administrator pursuant to Internal Revenue Code Section 1.468B-1 and funded by Defendant within thirty (30) calendar days after the Effective Date. This amount shall be no more than $10,000,000 and includes all funds available for Settlement payments, costs, attorneys' fees, claims administration costs, PAGA payments and service payment, and employee owed taxes on the wage portion of the Settlement.

35.    "Released Claims" is defined as follows:  The Class Members shall fully and finally release and discharge the Released Parties of all wage and hour claims, rights, demands, liabilities and causes of action of any nature or description, whether known or unknown, arising during the period March 13, 2008 through December 31, 2017, including all claims, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, alleged or which could have been alleged, arising from the facts and circumstances in the operative complaint or amendment thereto, including statutory, constitutional, contractual or

1  common law claims for wages, damages, unpaid costs, penalties, liquidated

2  damages, interest, attorneys' fees, litigation costs, restitution, equitable relief or

3  other relief under Business & Professions Code § 17200, *et seq*., based on the

4  following categories:  (a) claims arising under California or federal law alleging

5  failure to pay overtime wages based on failure to include bonuses, vacation award,

6  other incentive pay, or compensation of any kind in the "regular rate" of pay; (b)

7  claims alleging failure to provide first and second meal periods in compliance with

8  California law, to pay premiums for missed, late, short or interrupted meal periods,

9  or improper on-duty meal periods, or to pay such premiums at the regular rate of

10  compensation required by Labor Code § 226.7; (c) claims alleging failure to keep

11  accurate records; (d) claims alleging failure to issue proper wage statements to

12  employees, including any claim that Defendants' wage statements do not comply

13  with Labor Code § 226 during the period March 13, 2009 through December 31,

14  2017; (e) claims alleging failure to timely pay wages, any claim that Defendants

15  violated Labor Code §§ 201 or 202, and any claim for waiting time penalties under

16  Labor Code § 203; (f) claims for unfair business practices in violation of Business

17  and Professions Code sections 17200, *et seq.;* and (g) and, solely as to Express

18  Services Inc., Phillips & Associates Inc., and Western Wine Services, Inc., all

19  penalties pursuant to the Private Attorneys General Act ("PAGA") of 2004 for the

20  period March 13, 2011 to December 31, 2017 based on the alleged violations of the

21  California Labor Code as set forth in the Complaint and amended complaints and

22  Plaintiff's notice to the California Labor and Workforce Development Agency dated

23  July 20, 2011 and as amended on February 3, 2012 (PAGA penalties based on

24  claims alleging violations of Labor Code §§ 201, 201.3, 202, 203, 204, 226, 226.7,

25  256, 510, 512, 558, 1174, 1194, 1198, and Sections 3, 7 and 11 of the IWC Wage

26  Orders).  Claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* shall

27  only be released by class members who cash their settlement check. Participating

28

Class Members who endorse their Gross Individual Settlement Payment expressly waive and release any Fair Labor Standards Act ("FLSA") claims, whether known or unknown, arising during the Class Period and based on the facts, claims, and allegations in Named Plaintiff's lawsuit.  If a Settlement Class Member does not opt-out of the Settlement, they are bound by this release.

The Released Claims  do not include claims arising from employment where the Class Member is not working on an assignment through Express Services, Inc., Phillips & Associates, Inc., or any California franchisee of Express Services, Inc., or where Express Services, Inc., Phillips & Associates, Inc., or any California franchisee of Express Services, Inc., is not an alleged joint employer under Labor Code section 2810.3, or otherwise an alleged statutory employer or joint employer (under any legal theory of joint employment).

36.   "Released Parties" means Defendants Express Services, Inc., Phillips & Associates, Inc., and their past, present and future parents, subsidiaries and affiliated corporations, including without limitation, their officers, directors, employees, partners, franchisees, franchise owners, franchisor, related corporations and/or partnerships, divisions, insurers, consultants, joint venturers, shareholders and agents, affiliated organizations, employee benefit plans and fiduciaries thereof, any entities deemed a client employer of Express Services, Inc. or Phillips & Associates, Inc. under California Labor Code section 2810.3, indemnitors and indemnitees, or legal representatives, any entity deemed a statutory employer or joint employer (under any legal theory of joint employment), entities deemed "client employers," and any other predecessors, successors or assignees, and any and all of them.

37.   "Service Payment" means the amount that the Court authorizes to be paid to the Named Plaintiff over and above his Individual Settlement Payment, in recognition of his efforts in assisting with the prosecution of the Action on behalf of the Class Members and in return for executing a General Release of all Claims

against Defendant.  Named Plaintiff will request a Service Payment up to $10,000. Named Plaintiff will be issued an IRS Form 1099 in connection with his Service Payment.   This Service Payment shall be in addition to the Individual Settlement Payment he is entitled to receive.

## II.    RECITALS

This Stipulation is made by Named Plaintiff on behalf of himself and each Class Member, on the one hand, and Defendants, on the other hand, and is subject to the approval of the Court.

## INVESTIGATION IN THE CLASS ACTION

The Parties have conducted significant investigation of the facts and law during the prosecution of the Action.  Such discovery and investigation included: the exchange of information, including confirming discovery regarding Defendants' policies, practices, proposed class data, and samples of time records and payroll records relevant to Plaintiff's claims and the analysis by the Parties of the class-wide information to investigate the merits of Named Plaintiff's claims and potential liability.  Furthermore, counsel have investigated the facts and law relating to the claims alleged and that could have been alleged based on the facts and claims alleged in the action, including the initial Complaint and all subsequent Amended Complaints and potential defenses thereto, and the potential damages claimed by Named Plaintiff.

Counsel for the Parties engaged in extensive discussions about the strengths and weaknesses of the claims and defenses.  The Parties attended a full-day mediation on September 27, 2017, before an experienced and well-regarded mediator, Jeffery Ross, Esq., that resulted in a mediator's proposal that was accepted by the Parties.

## BENEFITS OF SETTLEMENT TO CLASS MEMBERS

Named Plaintiff and Class Counsel recognize the expense and length of continued proceedings necessary to litigate the disputes through trial and through any possible appeals.  Named Plaintiff has also considered the uncertainty and risk of the outcome of further litigation, the uncertain merits of the claims, and the difficulties and delays inherent in such litigation.  Named Plaintiff and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendants' defenses thereto. Named Plaintiff and Class Counsel have also considered the extensive Settlement negotiations conducted and Defendants' agreement to enter into a Settlement that confers substantial benefits and relief upon the Class Members. Based on the foregoing, Named Plaintiff and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate and a reasonable Settlement, and is in the best interests of the Class.

## DEFENDANTS' REASONS FOR SETTLEMENT

Defendants have concluded that any further defense of this litigation would be protracted and expensive for all Parties.  Substantial amounts of time, energy and resources of Defendants have been spent and, unless this Settlement is made, will continue to be devoted to the defense of the Claims asserted by the Named Plaintiff. Defendants have also considered the risks and uncertainties associated with further litigation in reaching its decision to enter into this Settlement. Defendants have, therefore, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the Claims in the Action.

As to the Released Claims, Defendants deny and continue to deny each of those claims.  Defendants have repeatedly asserted and continue to assert defenses thereto and have expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.

1       This Agreement is a compromise of disputed claims. Nothing contained in

2   this Agreement and no documents referred to herein and no action taken to carry out

3   this Agreement may be construed or used as an admission by Defendants or against

4   Named Plaintiff or Class Counsel as to the merits or lack thereof of the Claims

5   asserted.

6   ### III.  <u>STIPULATION AND AGREEMENT</u>

7   ***NOW, THEREFORE, IT IS HEREBY STIPULATED***, by and among the

8   Named Plaintiff on behalf of the Class Members on the one hand, and Defendants

9   on the other hand, and subject to the approval of the Court, that the Action is hereby

10  being compromised and settled pursuant to the terms and conditions set forth in this

11  Agreement, and subject to the following terms and conditions:

12      1.   <u>Full Investigation</u>.  Named Plaintiff and Plaintiff's Counsel have fully

13  investigated the factual and legal bases for the causes of action asserted in the

14  Action.

15      2.   <u>Release as to All Class Members</u>.  As of the Effective Date, the Class

16  Members who do not return a valid and timely request to opt-out, including the

17  Named Plaintiff, release the Released Parties from the Released Claims.

18      3.   <u>General Release by Named Plaintiff Specifically</u>.  In addition to the

19  releases made by the Class Members as set forth herein, Plaintiff, in his individual

20  capacity and with respect to his individual claims only, as of the date the settlement

21  is finally approved by the Court, Plaintiff fully and finally release the Released

22  Parties from any and all claims, known and unknown, under federal, state and/or

23  local law, statute, ordinance, regulation, common law, or other source of law,

24  including but not limited to claims arising from or related to their employment or

25  separation therefrom with Defendants and their compensation while an employee of

26  Defendants ("Plaintiff's Released Claims").  Plaintiff's Released Claims include,

27  but are not limited to, all claims arising from or related to the Action.  Plaintiff's

28

Released Claims include all claims for unpaid wages, including, but not limited to, failure to pay minimum wage, straight time compensation, overtime compensation, reporting time pay, vacation pay, and interest; reimbursement for all necessary business expenses; payment for all hours worked, including off-the-clock work; wage statements; failure to provide meal and/or rest breaks, and/or failure to properly calculate or pay premiums for meal and/or rest breaks that were not provided; failure to pay all wages owed at the time of termination; failure to keep accurate records; unfair business practices; penalties, including, but not limited to, recordkeeping penalties, wage statement penalties, minimum-wage penalties, and waiting-time penalties; and attorneys' fees and costs.  Plaintiffs' Released Claims include all claims arising under the California Labor Code (including, but not limited to, sections 201, 202, 203, 204, 210, 218.6, 221, 225.5, 226, 226.7, 227.3, 510, 511, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1197.2, 1198, 2698, *et seq.,* and 2802); the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, *et seq.*; the California common law of contract; the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; federal common law; and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*  Plaintiff's Released Claims also include all claims for lost wages and benefits, emotional distress, retaliation, punitive damages, and attorneys' fees and costs arising under federal, state, or local laws for discrimination, harassment, retaliation and wrongful termination, such as, by way of example only, (as amended) 42 U.S.C. section 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the California Fair Employment and Housing Act; and any claims under the law of contract and tort. This release excludes the release of claims not permitted by law.

The General Release includes any unknown Claims that Named Plaintiff does not know or suspect to exist in his favor at the time of the General Release, which, if

known by him, might have affected his Settlement with, and release of, the Released

Parties or might have affected his decision not to object to this Settlement or the

General Release.

With respect to the General Release, Named Plaintiff stipulates and agrees

that, upon the execution of this Agreement, Named Plaintiff shall be deemed to

have, and by operation of the Final Judgment shall have, expressly waived and

relinquished, to the fullest extent permitted by law, the provisions, rights and

benefits of Section 1542 of the California Civil Code, or any other similar provision

under federal or state law as to the generally released claims, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Named Plaintiff may hereafter discover facts in addition to or different from

those he now knows or believes to be true with respect to the subject matter of the

General Release, but Named Plaintiff upon the Effective Date, shall be deemed to

have, and by operation of the Final Judgment shall have, fully, finally, and forever

settled and released any and all of the claims released pursuant to the General

Release whether known or unknown, suspected or unsuspected, contingent or non-

contingent, which now exist, or heretofore have existed upon any theory of law or

equity now existing or coming into existence in the future, including, but not limited

to, conduct that is negligent, intentional, with or without malice, or a breach of any

duty, law or rule, without regard to the subsequent discovery or existence of such

different or additional facts.

4.      <u>Service Payment</u>.  Subject to Court approval, in exchange for the release of all Released Claims, and general release of all claims, and for his time and effort in bringing and prosecuting this matter, Named Plaintiff shall be paid up to a total of $10,000, subject to Court approval. This payment is expressly made in return for a General Release of all Claims of Named Plaintiff against Defendant. This time-and-effort payment shall be paid to the Named Plaintiff by the Claims Administrator no later than ten (10) calendar days after Defendants deliver the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund. The service payment shall be made solely from the Qualified Settlement Fund. The Parties agree that a decision by the Court to award Named Plaintiff an amount less than the amount stated above shall not be a basis for Class Counsel to void this Stipulation. The Claims Administrator shall issue a Form 1099 – MISC, Box 3 for the service payment. Any amount awarded for a service payment to the Named Plaintiff less than $10,000 will result in the non-awarded funds being part of the Net Class Settlement Fund available for distribution to the Class Members. The Named Plaintiff shall be solely and legally responsible to pay any, and all applicable taxes on this payment. This time-and-effort and general release payment shall be in addition to the Named Plaintiff's share of the Net Class Settlement Fund as a Participating Settlement Class Member.

5.      <u>Tax Liability</u>.  Defendants make no representations as to the tax treatment or legal effect of the payments called for herein, and Named Plaintiff is not relying on any statement or representation by Defendant in this regard and shall hold Defendants harmless from any claim or liability for taxes, penalties or interest arising as a result of the payment. Named Plaintiff understands and agrees that Named Plaintiff will be solely responsible for the payment of any taxes and penalties assessed on the payments described herein.

6.  <u>CIRCULAR 230 DISCLAIMER</u>.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY

1  TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY

2  THIS AGREEMENT.

3      7.    Creation of the Qualified Settlement Fund and Administration of the

4  Settlement.  Within thirty (30) calendar days after the Effective Date, Defendants

5  shall deliver the Gross Settlement Amount as required by this Stipulation, into the

6  Qualified Settlement Fund created by the Claims Administrator.  In addition to the

7  Gross Settlement Amount, Defendants shall transmit the employer's share of payroll

8  taxes as calculated by the Administrator and communicated to Defendants.  All

9  payments that Defendants are required to make pursuant to the Settlement

10  Agreement, including but not limited to, FICA, FUTA and SDI contributions and

11  the employee's portion of all payroll taxes, shall be made from this Fund.  Payments

12  from the Qualified Settlement Fund shall be made for the Court approved:

13  (1) Service Payment to the Named Plaintiff; (2) Attorneys' Fees and Cost Award;

14  (3) the Claims Administration Costs; and (4) the amount allocated to PAGA

15  penalties.  The balance remaining shall constitute the Net Class Settlement Fund

16  from which Gross Individual Settlement Payments are available to be made to the

17  Participating Settlement Class Members, less applicable taxes.

18      8.    Attorneys' Fees and Cost Award.  Defendant agrees not to oppose or

19  impede any application or motion by Class Counsel for attorneys' fees not in excess

20  of 25 percent (25%), or $2,500,000, of the Gross Settlement Amount, as well as an

21  additional amount for actual litigation costs, not to exceed $70,000. The Attorneys'

22  Fees and Cost Award shall be split between Class Counsel, pursuant to an

23  agreement between counsel and approved by the Class Representative and will be

24  provided to the Court in connection with the final approval and fee hearings.

25  Named Plaintiff expressly consents to this distribution of the Attorneys' Fees and

26  Cost Award.  Any amount awarded for attorneys' fees to Class Counsel less than

27  $2,500,000 will result in the non-awarded amounts to be part of the Net Settlement

28

1   Fund, available for distribution to Participating Class Members.  So long as there are

2   no objections, Class Counsel shall be paid any Court-approved fees and costs no

3   later than ten (10) calendar days after Defendant delivers the Gross Settlement

4   Amount to the Claims Administrator for deposit into the Qualified Settlement Fund.

5   Class Counsel shall be solely and legally responsible to pay all applicable taxes on

6   the payment made pursuant to this Paragraph.  A Form 1099 – MISC, Box 14 shall

7   be provided to Class Counsel for the payment made pursuant to this Paragraph.

8       9.   Claims Administrator.  The Claims Administrator shall be paid for the

9   costs of administration of the Settlement from the Gross Settlement Amount.  The

10  estimate of such costs of administration for the disbursement of the Gross

11  Settlement Amount is $365,066. Any amount awarded for costs of administration to

12  the Claims Administrator less than $365,066 will result in the non-awarded amount

13  being made part of the Net Settlement Fund, available for distribution to

14  Participating Class Members. This estimate includes the required tax reporting on

15  the settlement amounts/payments, including the issuing of W-2 and 1099 Forms (if

16  any), as well as calculation of employee withholding taxes and the employer payroll

17  taxes for Defendants to be remitted to the tax authorities.

18      10.   Preliminary Approval Hearing.  As part of this Settlement, the Parties

19  agree to the following procedures for obtaining preliminary Court approval of the

20  Settlement, notifying Class Members, obtaining final Court approval of the

21  Settlement and processing the Individual Settlement Payments:

22          a.   Named Plaintiff shall file a renewed Motion for Preliminary

23  Approval by December 19, 2019.

24          b.   Named Plaintiff shall request a hearing before the Court to request

25  preliminary approval of the Settlement and to request the entry of the Preliminary

26  Approval Order.  Plaintiff shall request, and Defendants will not oppose, that the

27  Motion for Preliminary Approval be heard on shortened time and that the hearing

28

1  take place in January 2020, and in the alternative, request that the Motion be heard

2  on the earliest date the Court is available.

3          c.  Named Plaintiff will request the Court to enter the Preliminary

4  Approval Order, preliminarily approving and conditionally certifying the class for

5  Settlement purposes only, the proposed Settlement and setting a date for a Final

6  Approval Hearing.

7          d.  In conjunction with this hearing, Named Plaintiff will submit this

8  Stipulation and Settlement of Class Action Agreement, which sets forth the terms of

9  this Settlement Agreement, and will include proposed form of the Notice and other

10  documents as attached hereto necessary to implement the Settlement.  The Order

11  shall provide for Notice of the settlement and related matters to be sent to Class

12  Members as specified herein.

13        11.  <u>Settlement Administration/Management</u>.  The Individual Settlement

14  Payments shall be managed and administered as follows:

15          a.  Defendants shall have no obligation to segregate the funds to be

16  used for the Gross Settlement Amount from other assets.  Defendants will retain

17  exclusive authority over, and responsibility for, the funds comprising the Gross

18  Settlement Amount and the employer's share of payroll taxes until such time as

19  payment is due.

20          b.  Rust Consulting shall be retained to serve as Claims Administrator.

21  The Parties represent that they do not have any financial interest in the Claims

22  Administrator or otherwise have a relationship with the Claims Administrator that

23  could create a conflict of interest.

24          c.  No payments are due to the Claims Administrator until the Qualified

25  Settlement Fund is funded.

26

27

28

1           d.   Defendants shall provide the Claims Administrator and Class

2 Counsel with the Class List and Data Report within thirty (30) business days of

3 Preliminary Approval of the Settlement.

4           e.   Within twenty (20) calendar days of receipt of the Class List and

5 Data Report, the Claims Administrator shall mail the Notice Packet to each Class

6 Member in accordance with Paragraph III 14 *infra*. The Claims Administrator will,

7 among other items, identify in the Notice Packet each individual Class Member's

8 estimated individual Settlement award.

9           f.   All Class Members who do not opt out of the Settlement shall be

10 Participating Settlement Class Members.

11           g.   With the motion for final approval of this settlement, the Claims

12 Administrator shall provide Defendant's Counsel and Class Counsel a report

13 showing: (i) the names and number of Class Members who have objected to the

14 Settlement; (ii) the names and number of Class Members opting out of the

15 Settlement; and (iii) the amount owed to each Participating Settlement Class

16 Member.

17           h.   The Parties agree to cooperate in the Settlement administration

18 process and to make all reasonable efforts to control and minimize the costs and

19 expenses incurred in administration of the Settlement.

20           i.   The Claims Administrator shall be responsible for: calculating the

21 class member's share of the Net Settlement Amount,  printing and mailing the

22 Notices to Class Members as directed by the Court; receiving and reporting the opt-

23 outs and objections submitted by Class Members; mailing Individual Settlement

24 Payments to Participating Settlement Class Members; creating and issuing W-2s and

25 Form 1099 – MISCs to Settlement Class Members; and other tasks as the Parties

26 mutually agree or the Court orders the Claims Administrator to perform. The Claims

27

28

1  Administrator shall keep Defendant's Counsel and Plaintiff's Counsel timely

2  apprised of the performance of all Claims Administrator responsibilities.

3          j.     The Claims Administrator, on Defendants' behalf, shall have the

4  authority and obligation to make payments, credits and disbursements, including

5  payments and credits in the manner set forth herein, to Participating Settlement

6  Class Members calculated in accordance with the methodology set out in this

7  Agreement and orders of the Court.

8          k.     Any tax return filing required by this Agreement shall be made by

9  the Claims Administrator. Any expenses incurred in connection with such filing

10  shall be a cost of administration of the Settlement.

11          l.     No person shall have any claim against Defendants or Defendants'

12  Counsel, the Named Plaintiff, Class Members, the Class, Class Counsel or the

13  Claims Administrator based on distributions and payments made in accordance with

14  this Agreement.

15      12.  <u>Calculation of Individual Settlement Payment</u>.  To determine the Gross

16  Individual Settlement Payment for each Participating Class Member:

17          a.     The Net Class Settlement Fund shall be divided among all Class

18  Members based on the number of workweeks each Class Member was affected by

19  the alleged practices as follows:

20          b.     Class Members:  Class Members will receive a pro rata share of

21  $5,253,700.50 of the Net Class Settlement Fund based on the number of workweeks

22  they worked an assignment during the period March 23, 2008 through December 31,

23  2017.

24          c.     Wage Statement Subclass:  Wage Statement Subclass will receive a

25  pro rata share of $1,751,233.50 of the Net Class Settlement Fund based on the

26  number of workweeks they worked an assignment during the period March 23, 2009

27  through December 31, 2017.

28

STIPULATION AND SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND REPRESENTATIVE
CLAIMS – CASE NO. 2:12-cv-01054-KJM-CKD

d.   PAGA Group:  The PAGA Group will receive a pro rata share of the $12,500 PAGA award based on the number of pay periods they worked an assignment during the period March 23, 2011 through December 31, 2017.

e.   The Gross Individual Settlement Payment to each Participating Settlement Class Member shall be allocated as follows:  90% shall be attributed to penalties and interest, to be reported on a 1099 Form; and 10% shall be attributed to wages ("Wage Component"), to be reported on a W-2 Form.

f.   The Claims Administrator shall determine the eligibility for, and the amounts of, any Individual Settlement Payments under the terms of this Settlement Agreement.  Any disputes not resolved by the Claims Administrator concerning the administration of the Settlement will be resolved by the Court, venued in Sacramento California, under the laws of the State of California.  Prior to any such involvement of the Court, counsel for the Parties will confer in good faith to resolve the dispute without the necessity of involving the Court.

g.   Ten percent (10%) of the Gross Individual Settlement Payments will be reduced by any required legal deductions for each Class Member.  All standard employer and employee payroll deductions will be made for state and federal withholding taxes, as well as any other applicable payroll deductions owed by the Participating Class Members.  The Claims Administrator will issue a check and W-2 Form to each Class member for this portion of the Wage Component.

h.   No withholding shall be made on the interest and penalty portion of the Gross Individual Settlement Payment (ninety percent of the payment amount). The Claims Administrator will issue a second check and IRS Form 1099 for the remaining interest and penalty component, to the extent required by law.

i.   For each Class Member whose settlement check is not redeemed or cashed by 180 days, the monies will be distributed *cy pres* to the Salvation Army's California programs for unemployed and underemployment workers, which serves

1   such workers in gaining the employment skills and experience necessary to obtain

2   employment and supports them during periods of unemployment.

3           j.      For any Class Member who opts out of the Settlement, that amount

4   will inure to the Net Settlement Fund, increasing the per-workweek amount

5   available to be distributed to the Class.

6           k.      The Claims Administrator shall be responsible for issuing the

7   payments and calculating and withholding all required state and federal taxes.

8       13.     Notice to Class Members.  Notice of the Settlement shall be provided to

9   all Class Members using the following procedures:

10          a.      Notice by First-Class Mail.  Within twenty (20) calendar days after

11  receipt of the Class List and Data, the Claims Administrator shall mail the Notice

12  Packet to the Class Members via first-class regular U.S. mail.  Prior to mailing, the

13  Claims Administrator will perform a pre-mailing skip trace using Accurint (or

14  substantially similar in-depth skip trace) search, as well as a National Change of

15  Address Database search to update and correct for any known or identifiable address

16  changes.  If a new address is obtained by way of a returned Notice Packet, then the

17  Claims Administrator shall promptly forward the original Notice Packet to the

18  updated address via first-class regular U.S. mail indicating on the original Notice

19  Packet the date of such re-mailing.

20          b.      Opt-Out/Objection Deadline Date:  Class Members will have forty-

21  five (45) calendar days from the mailing of the Notice Packet to opt out of or object

22  to the Settlement.

23          c.      Procedure for Undeliverable Notices.  Any Notices returned to the

24  Claims Administrator as non-delivered on or before the Opt-Out/Objection Deadline

25  Date shall be sent to the forwarding address affixed thereto within five (5) business

26  days.  If no forwarding address is provided, then the Claims Administrator shall

27  promptly attempt to determine a correct address using a single skip-trace, computer

28

1  or other search using the name, address and/or Social Security number of the

2  individual involved and shall then perform a single re-mailing within five (5)

3  business days.  In the event the procedures in this paragraph are followed and the

4  intended recipient of a Notice still does not receive the Notice, the intended recipient

5  shall be considered a Participating Class Member and shall be bound by all terms of

6  the Settlement and any Final Judgment entered by the Court if the Settlement is

7  approved by the Court, and his or her Individual Settlement Payment shall be

8  distributed *cy pres* to the Salvation Army's California programs for unemployed and

9  underemployment workers, which serves such workers in gaining the employment

10  skills and experience necessary to obtain employment and supports them during

11  periods of unemployment.

12          d.   Class Member shall be bound by all terms of the Settlement and any

13  Final Judgment entered by the Court if the Settlement is approved by the Court.

14          14.   Procedure for Objecting to or Opting Out of the Class Action

15  Settlement.  The Class Members shall submit objections to the Settlement and opt-

16  out of the Settlement, using the following procedures:

17          a.   Procedure for Objecting.  The Notice shall provide that those Class

18  Members who wish to object to the Settlement must mail a written statement of

19  objection ("Notice of Objection") to the Claims Administrator no later than the Opt-

20  Out/Objection Deadline Date.  The postmark date of the mailing shall be deemed the

21  exclusive means for determining that a Notice of Objection is timely.  The Notice of

22  Objection must identify the Class Member, contain a statement of the Class

23  Member's objections to this Settlement, a statement advising whether the objecting

24  Class Member plans to address the Court at the Settlement Fairness Hearing and any

25  legal briefs, papers or memoranda the objecting Class Member proposes to submit

26  to the Court.  Class Members who fail to make objections in the manner specified

27  above shall be deemed to have waived any objections and shall be foreclosed from

28

1  making any objection (whether by appeal or otherwise) to the Settlement

2  Agreement.  No later than five (5) calendar days before the Settlement Fairness

3  Hearing, the Claims Administrator shall provide counsel for the Parties with

4  complete copies of all objections received, including the postmark dates for each

5  objection.  Class Members who submit a timely Notice of Objection, as specified

6  above, will have a right to appear at the Settlement Fairness Hearing in order to have

7  their objections heard by the Court.

8         b.  <u>Procedure for Opting Out</u>.  The Notice shall provide that those Class

9  Members who wish to opt out of the Settlement must mail a written signed

10  statement expressing his or her desire to opt-out from the Settlement, and any such

11  statement shall include the name (and former names, if any), current address,

12  telephone number and the last four (4) digits of Social Security number of the Class

13  Member and state that "I wish to opt out from the *Stoddart v. Express Services, Inc*.

14  settlement."  Any Class Member who wishes to opt out of the Settlement must

15  submit a request to be excluded from the Settlement to the Claims Administrator

16  postmarked no later than the Opt-Out/Objection Deadline Date.  Any Class Member

17  who submits a valid and timely opt-out request shall no longer be a member of the

18  Class, shall be barred from participating in this Settlement, shall be barred from

19  objecting to this Settlement and shall receive no benefit from this Settlement.  Any

20  Class Member who does not Opt-Out by submitting a request for exclusion as

21  described herein, will be bound by the terms of this settlement.

22         c.  <u>No Solicitation of Settlement Objections or Opt-Outs</u>.  The Parties

23  agree to use their best efforts to carry out the terms of this Settlement.  At no time

24  shall any of the Parties or their counsel seek to solicit or otherwise encourage or

25  influence Class Members to submit written objections to the Settlement, to opt-out

26  of the Settlement or to appeal from the Order and Final Judgment.

27

28

1           d.   <u>No Opt-Outs or Subsequent Lawsuits By Any Parties Represented</u>

2  <u>by Class Counsel</u>.  Class Counsel agrees that all individuals that they currently

3  represent with regard to wage/hour claims, specifically including but not limited to

4  Michael Stoddart, shall waive any right to opt-out of or object to this Settlement.

5  This Agreement shall become null and void if any individual represented by Class

6  Counsel opts out or objects to the Settlement.

7         15.   <u>Procedure for Payment of Individual Settlement Payments</u>.  The

8  procedure for payment to Class Members of Individual Settlement Payments is as

9  follows:

10          a.   All Class Members who do not opt-out of the Settlement will

11  receive an Individual Settlement Payment from Defendant, distributed through the

12  Claims Administrator.

13          b.   Individual Settlement Payments for Class Members shall be paid

14  pursuant to the Settlement formula set forth herein and shall be mailed within ten

15  (10) calendar days after Defendant delivers the Gross Settlement Amount to the

16  Claims Administrator for deposit into the Qualified Settlement Fund.

17          c.   Should any question arise regarding the determination of eligibility

18  for, or the amounts of, any Individual Settlement Payment under the terms of this

19  Agreement, Class Counsel and Defendants' Counsel shall meet and confer in an

20  attempt to reach agreement.  If they cannot agree, the Claims Administrator shall

21  make the final determination, and that determination shall be conclusive, final and

22  binding on all Parties, including all Class Members.

23         16.   <u>Certification By Claims Administrator</u>.  Upon completion of

24  administration of the distributions, the Claims Administrator shall provide written

25  certification of such completion to the Court and counsel for all Parties.

26         17.   <u>Final Settlement Approval Hearing and Entry of Final Judgment</u>.  Upon

27  expiration of the Opt-Out/Objection Deadline Date, with the Court's permission, a

28

1   hearing ("Final Fairness Hearing") shall be conducted to determine final approval of

2   the Settlement along with the amount properly payable for: (i) reasonable attorneys'

3   fees and costs, (ii) any Service Payment, and (iii) cost of administration.  The Final

4   Fairness Hearing shall not be held earlier than thirty (30) calendar days from the

5   Opt-Out/Objection Deadline Date.  Upon final approval of the Settlement by the

6   Court, the Parties shall present the Final Judgment to the Court for its approval.

7   After entry of the Final Judgment, the Court shall have continuing jurisdiction solely

8   for purposes of addressing: (i) the interpretation and enforcement of the terms of the

9   Settlement, (ii) Settlement administration matters, and (iii) such post-Final

10  Judgment matters as may be appropriate under court rules or as set forth in this

11  Agreement.

12       18.   Defendants' Option to Nullify the Agreement.  In the event that 5% or

13  more of the Class Members opt-out of the Settlement, Defendants, in their sole

14  discretion, shall have the option of nullifying the Agreement.  To exercise this

15  option, Defendants must notify Class Counsel in writing within ten (10) business

16  days of learning from the Administrator that the number of opt-outs equals 5% or

17  more.

18       19.   Nullification of Settlement Agreement.  In the event:  (i) the Court does

19  not enter the Order specified herein; (ii) the Court does not finally approve the

20  Settlement as provided herein; (iii) the Court does not enter a Final Judgment as

21  provided herein, which becomes final as a result of the occurrence of the Effective

22  Date; (iv) the LWDA does not approve the settlement; (v) Defendant exercises its

23  option to nullify the Agreement based on an excessive number of opt-outs, as

24  describe in the above paragraph; or (vi) the Settlement does not become final for any

25  other reason, this Settlement Agreement shall be null and void.  Any order or

26  judgment entered by the Court in furtherance of this Settlement shall be treated as

27  void from the beginning, and the Stipulations and Recitals contained herein shall be

28

1 of no force or effect and shall not be treated as an admission by the Parties or their

2 Counsel. In such a case, the Parties and any funds to be awarded under this

3 Settlement shall be returned to their respective statuses as of the date and time

4 immediately prior to the execution of this Agreement, and the Parties shall proceed

5 in all respects as if this Settlement Agreement had not been executed, except that

6 any fees already incurred by the Claims Administrator shall be paid in equal parts by

7 Named Plaintiff and Defendants, but entirely by Defendants if they seek to nullify

8 the agreement pursuant to paragraph 18 above.

9       20.   <u>Publicity/Non-Disclosure</u>. Neither the Named Plaintiff nor Plaintiff's

10 Counsel shall make any statements regarding the Settlement, whether oral, written

11 or otherwise, to any person or entity other than the Court, the Claims Administrator,

12 or Defendants' Counsel, except as set forth below. The Named Plaintiff and

13 Plaintiff's Counsel agree that, prior to preliminary approval of the Settlement, they

14 will keep the terms of this Settlement confidential except for purposes of

15 communicating with the Named Plaintiff only. The Named Plaintiff shall be

16 informed that the Settlement is confidential and shall be advised to keep the

17 Settlement confidential. After preliminary approval of the Settlement, the Class

18 Members (including the Named Plaintiff and Class Counsel) may: (1) as required by

19 law; (2) as required under the terms of the Settlement; or (3) as required under

20 counsel's duties and responsibilities as Class Counsel, comment regarding the

21 specific terms of the Settlement. In all other cases, Named Plaintiff and Class

22 Counsel agree to limit their statements regarding the specific terms of the

23 Settlement, whether oral, written or electronic, to say the "Class Action has been

24 resolved." Neither Named Plaintiff nor Class Counsel shall mention, in relation to

25 the Settlement, Released Parties, Sheppard, Mullin, Richter & Hampton, LLP, or

26 any counsel in this Lawsuit by name on any source, including Class Counsels'

27

28

1 personal or firm website(s) or future communications with or about Defendant or its

2 counsel.

3      21.   <u>Dispute Resolution</u>.  Except as otherwise set forth herein, all disputes

4 concerning the interpretation, calculation or payment of Settlement claims, or other

5 disputes regarding compliance with this Agreement shall be resolved as follows:

6           a.  If the Named Plaintiff, or Class Counsel, on behalf of the Named

7 Plaintiff or any Settlement Class Member, or Defendants' Counsel, on behalf of

8 Defendants, at any time believes that the other Party has breached or acted contrary

9 to the Agreement, that Party shall notify the other Party in writing of the alleged

10 violation.

11          b.  Upon receiving notice of the alleged violation or dispute, the

12 responding Party shall have ten (10) calendar days to correct the alleged violation

13 and/or respond to the initiating Party with the reasons why the party disputes all or

14 part of the allegation.

15          c.  If the response does not address the alleged violation to the initiating

16 Party's satisfaction, the Parties shall negotiate in good faith for up to ten (10)

17 calendar days to resolve their differences.

18          d.  If Class Counsel and Defendants' Counsel are unable to resolve

19 their differences after twenty (20) calendar days, either Party may file an appropriate

20 motion for enforcement with the Court. The briefing of such motion should be in

21 letter brief form and shall not exceed five (5) single-spaced pages (excluding

22 exhibits).

23          e.  Reasonable attorneys' fees and costs for work done in resolving a

24 dispute under this Section may be recovered by any party that prevails under the

25 standards set forth within the meaning of applicable law.

26      22.   <u>No Retaliation</u>.  Defendants shall not take any adverse action against

27 any Class Member because of the Action or because of the existence of, and/or

28

1  participation in, the Settlement, or because they choose to benefit from the

2  Settlement or to object to the Settlement. Defendants shall not take action to

3  discourage Class Members from participating in the Settlement.

4       23.   Exhibits and Headings.  The terms of this Agreement include the terms

5  set forth in any attached exhibits, which are incorporated by this reference as though

6  fully set forth herein.  Any exhibits to this Agreement are an integral part of the

7  Settlement.  The descriptive headings of any paragraphs or sections of this

8  Agreement are inserted for convenience of reference only and do not constitute a

9  part of this Agreement.

10       24.   Interim Stay of Proceedings.  The Parties agree to the Court staying and

11  holding all proceedings in the Action, except such proceedings necessary to

12  implement and complete the Settlement, in abeyance pending the Settlement

13  Hearing to be conducted by the Court.

14       25.   Amendment or Modification.  This Agreement may be amended or

15  modified only by a written instrument signed by counsel for all Parties or their

16  successors-in-interest.

17       26.   Entire Agreement.  This Agreement and any attached exhibits

18  constitute the entire agreement among these Parties, and no oral or written

19  representations, warranties or inducements have been made to any Party concerning

20  this Agreement or its exhibits other than the representations, warranties and

21  covenants contained and memorialized in such documents.

22       27.   Authorization to Enter into Settlement Agreement.  Counsel for all

23  Parties warrant and represent that they are expressly authorized by the Parties whom

24  they represent to negotiate this Agreement and to take all appropriate action required

25  or permitted to be taken by such Parties pursuant to this Agreement to effectuate its

26  terms, and to execute any other documents required to effectuate the terms of this

27  Agreement.  The Parties and their counsel will cooperate with each other and use

28

1  their best efforts to effect the implementation of the Settlement.  In the event the

2  Parties are unable to reach agreement on the form or content of any document

3  needed to implement the Settlement, or on any supplemental provisions that may

4  become necessary to effectuate the terms of this Settlement, the Parties may seek the

5  assistance of the Court to resolve such disagreement.  The person(s) signing this

6  Agreement on behalf of Defendant represent and warrant that he/she/they are

7  authorized to sign this Agreement on Defendant's behalf.

8        28.   <u>Binding on Successors and Assigns</u>.  This Agreement shall be binding

9  upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as

10  previously defined.

11        29.   <u>California Law Governs</u>.  All terms of this Agreement and the exhibits

12  hereto shall be governed by and interpreted according to the laws of the State of

13  California.

14        30.   <u>Counterparts</u>.  This Agreement may be executed in one or more

15  counterparts.  All executed counterparts and each of them shall be deemed to be one

16  and the same instrument, provided that counsel for the Parties to this Agreement

17  shall exchange among themselves original signed counterparts.

18        31.   <u>This Settlement Is Fair, Adequate and Reasonable</u>.  The Parties believe

19  this Settlement is a fair, adequate and reasonable Settlement of this Action and have

20  arrived at this Settlement after extensive arms-length negotiations, taking into

21  account all relevant factors, present and potential.

22        32.   <u>Jurisdiction of the Court</u>.  The Court shall retain jurisdiction with

23  respect to the interpretation, implementation and enforcement of the terms of this

24  Agreement and all orders and judgments entered in connection therewith, and the

25  Parties and their counsel hereto submit to the jurisdiction of the Court for purposes

26  of interpreting, implementing and enforcing the Settlement embodied in this

27  Agreement and all orders and judgments entered in connection therewith.

28

- 30 -

STIPULATION AND SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND REPRESENTATIVE
CLAIMS – CASE NO. 2:12-cv-01054-KJM-CKD
EXHIBIT 1, PAGE 31

33.   <u>Cooperation and Drafting</u>.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction made to this Agreement, the same shall not be construed against any of the Parties.

34.   <u>Invalidity of Any Provision</u>.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

35.   <u>Named Plaintiff's Waiver of Right to be Excluded and Object</u>.  The Named Plaintiff agrees to sign this Agreement, and by signing this Agreement is bound by the terms herein stated, and further agrees not to opt out of the Agreement or to object to any of the terms of this Agreement.  Non-compliance by the Named Plaintiff with this paragraph shall be void and of no force or effect. Any such objection shall therefore be void and of no force or effect.


**PLAINTIFF**

12/9/2019

Dated: December __, 2019          By _____

MICHAEL STODDART

**REPRESENTED BY:**

COHELAN KHOURY & SINGER

Dated:  December <u>10</u>, 2019          By: _____

MICHAEL SINGER
Attorney for Plaintiff MICHAEL H.
STODDART

1

2

3   Dated:  December 10, 2019

4

5

6

7

8

9   Dated: December __, 2019

10

11

12

13

14   Dated: December __, 2019

15

16

17

18

19

20

21   Dated:  December __, 2019

22

23

24

25

26

27

28

GRAHAM HOLLIS APC

By:_____
        GRAHAM HOLLIS
Attorney for Plaintiff MICHAEL H.
STODDART

**DEFENDANTS**

EXPRESS SERVICES, INC.

By:_____
        [NAME]
Its:_____

PHILLIPS & ASSOCIATES, INC.

By:_____
        [NAME]
Its:_____

**REPRESENTED BY:**

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

By: _____
        RICHARD J. SIMMONS
        JASON W. KEARNAGHAN
        MORGAN P. FORSEY
        NORA K. STILES
Attorney for EXPRESS SERVICES, INC.
and PHILLIPS & ASSOCIATES, INC.

- 32 -

1

2

3    Dated:  December __, 2019

4

5

6

7

8

9

10   Dated: December __, 2019

11

12

13

14   Dated: December 9, 2019

15

16

17

18

19

20

21   Dated:  December __, 2019

22

23

24

25

26

27

28

GRAHAM HOLLIS APC


By:_____
        GRAHAM HOLLIS
Attorney for Plaintiff MICHAEL H.
STODDART


**DEFENDANTS**

EXPRESS SERVICES, INC.


By:_____
        D. Keith McFall
Executive Vice President, General Counsel


PHILLIPS & ASSOCIATES, INC.


By:_____
        Rosa M. Phillips
        Franchise Owner


**REPRESENTED BY:**

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP


By: _____
        RICHARD J. SIMMONS
        JASON W. KEARNAGHAN
        MORGAN P. FORSEY
        NORA K. STILES
Attorney for EXPRESS SERVICES, INC.
and PHILLIPS & ASSOCIATES, INC.

STIPULATION AND SETTLEMENT OF CLASS AND COLLECTIVE ACTION AND REPRESENTATIVE
CLAIMS – CASE NO. 2:12-cv-01054-KJM-CKD

GRAHAM HOLLIS APC

Dated:  December __, 2019          By:_____
                                          GRAHAM HOLLIS
                                   Attorney for Plaintiff MICHAEL H.
                                   STODDART

**DEFENDANTS**

EXPRESS SERVICES, INC.

Dated: December <u>13</u>, 2019          By:_____
                                          D. Keith McFall
                                   Executive Vice President, General Counsel

PHILLIPS & ASSOCIATES, INC.

Dated: December __, 2019          By:_____
                                          Rosa M. Phillips
                                          Franchise Owner

**REPRESENTED BY:**

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

Dated:  December <u>13</u>, 2019          By: _____
                                          RICHARD J. SIMMONS
                                          JASON W. KEARNAGHAN
                                          MORGAN P. FORSEY
                                          NORA K. STILES
                                   Attorney for EXPRESS SERVICES, INC.
                                   and PHILLIPS & ASSOCIATES, INC.

# EXHIBIT A-1

United States District Court, Eastern District of California
*Stoddart vs. Express Services, Inc., et al.*
Case No. 12-CV-01054-KJM (CKD)

*A federal court authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights are affected whether you act or don't act.*

## <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

To:  All current and former California employees of Express Services, Inc. ("Express"), and Phillips & Associates, Inc. ("Phillips") (collectively "Defendants") who worked assignments during the period from March 23, 2008 through December 31, 2017 (the "Class" or "Class Members").

**If you are a Class Member, as described above, you are eligible for a payment from the Class Action Settlement described in this Notice *without the need to return a claim form*.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | To receive your Individual Settlement Payment, you do not need to do anything. Your payment will be mailed to you, automatically, after the Court grants final approval to the Settlement.   [*You must, however, keep a current address on file with the Administrator to ensure receipt of your check.*] |
| **CHANGE CONTACT AND ADDRESS INFORMATION** | Update your address with the Administrator to ensure your check is sent to the correct address.  (*A Change of Address Form and return envelope are enclosed with this Notice for your convenience.*) |
| **EXCLUDE YOURSELF** | If you do not wish to participate in the Settlement, you may exclude yourself (opt-out) of the Settlement.  If you opt-out, you will not receive any payment under the Settlement. This is the only option that allows you to pursue your own claims (in your own lawsuit) against Defendants about the legal claims asserted in this case. |
| **OBJECT** | Write to the Court and Parties if you think the Settlement is not fair. |
| **GO TO A HEARING** | Ask to speak in Court about why you think the Settlement is not fair. |

- **YOUR RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

- **EXPRESS AND PHILLIPS SUPPORT THE SETTLEMENT AND WILL NOT RETALIATE IN ANY WAY AGAINST ANY CLASS MEMBER WHO STAYS IN THE CLASS AND RECEIVES AN INDIVIDUAL SETTLEMENT PAYMENT CHECK.**

## WHAT THIS NOTICE CONTAINS

### BASIC INFORMATION

1. Why did I get this Notice? ............................................................................ Page 3
2. What is this lawsuit about? ............................................................................ Page 3
3. What is a class action? ................................................................................... Page 3
4. Why is there a Settlement? ............................................................................ Page 4
5. Who are the Parties in this Lawsuit? .............................................................. Page 4
6. Who are the Attorneys for the Parties?........................................................... Page 4

### THE TERMS OF THE SETTLEMENT

7. What is the Settlement Amount?.................................................................... Page 4
8. How will the Individual Settlement Payments be calculated? ....................... Page 5
9. How much will my Individual Settlement Payment be?................................. Page 5

### HOW TO GET A PAYMENT

10. How can I get my Individual Settlement Payment? ...................................... Page 6
11. What if my number of Work Weeks is Wrong?............................................. Page 6
12. When can I expect to receive my Individual Settlement Payment? .............. Page 6
13. What am I giving up to get an Individual Settlement Payment?.................... Page 6

### EXCLUDING YOURSELF FROM THE SETTLEMENT

14. How do I get out of the Settlement and this Lawsuit? .................................. Page 8
15. If I don't exclude myself, can I sue Defendants for the same thing later?...... Page 8
16. If I exclude myself, can I get money from this Settlement?........................... Page 8

### OBJECTING TO THE SETTLEMENT

17. How do I tell the Court that I don't like the Settlement? ............................... Page 9
18. What's the difference between objecting and opting out of the Lawsuit?...... Page 9

### THE COURT'S FINAL FAIRNESS HEARING

19. When and where will the Court decide whether to approve the Settlement?.. Page 9
20. Do I have to come to the hearing?................................................................. Page 10
21. May I speak at the hearing?.......................................................................... Page 10

### GETTING MORE INFORMATION

22. Who may I contact if I have questions about the Settlement? ...................... Page 10

### ADDITIONAL IMPORTANT INFORMATION .................................................... Page 10

### CHANGE OF ADDRESS FORM................................................................... Page 12

**BASIC INFORMATION**

1.     <u>**Why did I get this Notice**</u>?

Defendants' records reflect that you were employed by Defendants in California and worked assignments sometime during the period from March 23, 2008 through December 31, 2017.

A Court authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve it. This notice explains the lawsuit, the Settlement, your legal rights, the benefits that are available, who is eligible to receive them, and how to get them.

Honorable Kimberly J. Mueller of the United States District Court for the Eastern District of California, ("Court") is overseeing this Lawsuit. The case is known as <u>Michael Stoddart v. Express Services, Inc., et. al</u>, U.S. District Court for the Eastern District of California Case No. 2:12-cv-01054-KJM-CKD ("Action" or "Lawsuit").

There was a hearing held on *[insert date]*, and the Court preliminarily approved the proposed Settlement and the Settlement Class and directed you to receive this Notice. The Court will hold a Final Approval hearing on *[insert date],* 2020 at 10:00 a.m., in Courtroom 3, 15th Floor, of the Court located at 501 "I" Street, Sacramento, California 95814. The Final Approval Hearing may be continued to another date without further notice.

2.     <u>**What is this Lawsuit about?**</u>

The Lawsuit claims Defendants failed to pay the correct amount of overtime wages, failed to provide compliant first and second meal periods or premium pay in lieu of those meal periods, failed to provide accurate itemized wage statements, failed to pay all wages due at the termination of employment, and violated the California Unfair Business Practices Act and Private Attorneys General Act ("PAGA") of 2004.

Defendants deny all allegations in the Lawsuit and contend it complied with the California Labor Code and applicable Industrial Welfare Commission Wage Orders. The Settlement is not an admission of any wrongdoing by Defendants or an indication any law was violated. In September 2017, the Parties reached a Settlement subject to Court approval (the "Agreement").

3.     <u>**What is a class action?**</u>

In a class action, one or more people called, "Class Representative(s)" or "Named Plaintiff(s)" (in this case, Michael Stoddart), sue on behalf of themselves and other people who they believe have similar claims. The group of people with similar claims is called a "Class." Each person covered by the class definition is a "Class Member." One court resolves the issues for all Class Members, except for those who opt out of the Settlement by requesting exclusion. United States District Court Judge Kimberly J. Mueller is presiding over this class action.

**4.**      <u>**Why is there a Settlement?**</u>

The Court did not decide in favor of Plaintiff Michael Stoddart or Defendants, Express Services, Inc. and Phillips & Associates, Inc. There was no trial. Instead, both sides agreed to a settlement of the Lawsuit ("Settlement").

**5.**      <u>**Who are the Parties in this Lawsuit?**</u>

Plaintiff Michael Stoddart was employed by Defendants from April 2007 through May 2011, and performed work while on assignment at Western Wine Services, Inc.

Express Services, Inc., and Phillips & Associates, Inc. are the Defendants in the Lawsuit.

Western Wine Services, Inc., is a named defendant in this Action, however, employees directly hired by it and not included in the Settlement.

**6.**      <u>**Who are the Attorneys for the Parties?**</u>

Counsel for Plaintiff and the Class

COHELAN KHOURY & SINGER
Isam C. Khoury / Diana M. Khoury / Marta Manus
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone: 619-595-3001

GRAHAMHOLLIS A.P.C.
Graham S.P. Hollis
3555 Fifth Avenue, Suite 200
San Diego, CA 92103
Telephone: 619-692-0800

Counsel for Defendants

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Richard J. Simmons/ Nora K. Stilestein
333 South Hope Street, Forty-Third Floor
Los Angeles, CA 90071

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Morgan P. Forsey
Four Embarcadero Center 17th Floor
San Francisco, CA 94111

If you have questions about the Settlement, contact Counsel for Plaintiff and the Class or the Administrator.  Do not contact Defendants' managers or attorneys to discuss the Settlement.

| THE TERMS OF THE SETTLEMENT |
|:---:|

**7.**      <u>**What is the Settlement Amount?**</u>

The proposed Settlement provides for a maximum payment of $10,000,000 (referred to as the "Gross Settlement Amount" or "GSA"). Class Counsel will apply to the Court for attorneys' fees of up to 25% of the GSA, $2,500,000, and litigation costs estimated at $70,000; Named Plaintiff service payment of $10,000 to Mr. Stoddart, as compensation for his work and effort in prosecuting this case, for undertaking the risks of payment of costs in the event of an unsuccessful outcome of this Lawsuit, and a general release of all claims; administration expenses to Rust Consulting, not to exceed $365,066; and a payment to the California Labor Workforce and Development Agency, under California Labor Code's Private Attorneys General Act of 2004 ("PAGA") in the sum of $37,500

(75% of $50,000) to cover the government's share of all applicable civil penalties implicated or raised by the allegations of the Action.  The exact amount of attorneys' fees, litigation costs, Name Plaintiff service payment, and administration expenses will be determined by the Court at the Final Approval hearing.  The remaining portion of the GSA, the "Net Class Settlement Fund" or "NCSF," is estimated to be $7,017,434.

Any portion of the NCSF associated with a Class Member who chooses to opt out of the Settlement will remain with the NCSF for distribution to those participating members of the Class.  In other words, the entire amount of the NCSF will be paid to those Class Members who remain in the Class, ("Participating Class Members").

## 8.      How will the Individual Settlement Payments be calculated?

Participating Class Members will receive a proportional share of the Net Class Settlement Fund based on the number of weeks worked for Defendants in California at any time during the period from March 23, 2008 through December 31, 2017 ("Class Period").  Class Members affected by certain practices will also receive a proportionate share of the subpart (a) and (b) below, as follows:

   a.   Wage Statement Subclass:  The Wage Statement Subclass will receive a proportionate share of $1,751,233.50 (25% of the NCSF) based on the number of workweeks they worked an assignment during the period March 23, 2009 through December 31, 2017.

   b.   PAGA Group:  The PAGA Group will receive a proportionate share of the $12,500 PAGA award based on the number of pay periods they worked an assignment during the period March 23, 2011 through December 31, 2017.

   c.   All Class Members:  All Class Members will receive a proportionate share of $5,253,700.50 (75% of the NCSF) based on the number of workweeks they worked an assignment during the period March 23, 2008 through December 31, 2017.

The gross Individual Settlement Payment shall be allocated as follows:  90% to penalties and interest for which IRS Forms 1099 will be issued, and 10% to wages for which an IRS W-2 Form will be issued. Only the sum calculated for subpart (c) above will be subject to the 10% wage allocation. Participating Class Members are responsible for paying taxes due, if any, on their Individual Settlement Payment.

## 9.      How much will my Individual Settlement Payment be?

Defendants' records show that during the period between March 23, 2008 through December 31, 2017, you worked an aggregate ___ weeks. Based on this information, your Individual Settlement Payment check estimated to be $__, less payroll taxes, will be issued and mailed to you at the address on file with the Administrator. The actual amount you receive may be slightly more or less than the estimated amount shown in this paragraph. If your mailing address needs to be updated, see Paragraph 10, below.

**HOW TO GET A PAYMENT**

**10.     How can I get my Individual Settlement Payment?**

If you do nothing, your Individual Settlement Payment check will be mailed to you at the address on file with the Administrator once the Court approves the Settlement at a Final Approval Hearing.

You must notify the Administrator of any change in your name, mailing address and/or telephone number to ensure receipt of your Settlement Payment check.  If the address to which this Notice was mailed is not correct or you move after receiving this Notice, please return the enclosed Change of Address form to the Administrator, either by fax, toll-free: _____ or by mail.  A pre-printed return envelope has been enclosed for your convenience.  It is **strongly recommended** you keep a copy of the Change of Address form until you receive your Individual Settlement Payment. Individual Settlement Payment checks should be deposited soon after receipt.

**11.     What if my number of Work Weeks is wrong?**

If you believe the number of work weeks shown in Paragraph 9 is wrong, you may send a letter to the Administrator indicating what you believe to be the correct number of work weeks.  Your letter must be postmarked or returned by fax, toll-free to 800-_____on or before _____, 2020. [*45 days of mailing of Notice Packet.]* You should include any documents or other information which supports what you believe to be the correct dates number of weeks worked during the Class Period. The Administrator will resolve any dispute regarding the number of weeks you worked during the Class Period based on Defendants' records and any information you provide. The weeks worked supplied by Defendants will be presumed correct unless you supply records showing a different number of workweeks.

**12.     When can I expect to receive my Individual Settlement Payment?**

If you do not exclude yourself from the Settlement, your Individual Settlement Payment check will be mailed to you approximately 45 days after the Court grants final approval of the Settlement. ***Again, your check will be mailed to the address on file for you.***  To update your mailing address, see Paragraph 10 above.

**13.     What am I giving up to get an Individual Settlement Payment?**

Unless you exclude yourself, you are staying in the Class, and that means you can't sue, continue to sue, or be part of any other lawsuit against Defendants about the legal issues in this Lawsuit. Specifically, you will be giving up or "releasing" the claims described below:

   **Release of Claims**:  After the Court has approved the Settlement, each Settlement Class member who has not submitted a timely and valid request to opt out of the Settlement will be bound by the approval and judgment and will fully release and discharge Defendants Express Services, Inc., Phillips & Associates, Inc., and their past, present and future parents, subsidiaries and affiliated corporations, including without limitation, their officers, directors, employees, partners, franchisees, franchise owners, franchisor, related corporations and/or partnerships, divisions, insurers, consultants, joint venturers, shareholders and agents, affiliated organizations, employee benefit plans and

fiduciaries thereof, any entities deemed a client employer of Express Services, Inc. or Phillips & Associates, Inc. under California Labor Code section 2810.3, indemnitors and indemnitees, or legal representatives, any entity deemed a statutory employer or joint employer (under any legal theory of joint employment), entities deemed "client employers," and any other predecessors, successors or assignees, and any and all of them, ("Released Parties".)  Class Members shall fully and finally release and discharge the Released Parties of all wage and hour claims, rights, demands, liabilities and causes of action of any nature or description, whether known or unknown, arising during the period March 13, 2008 through December 31, 2017, including all claims, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, alleged or which could have been alleged, arising from the facts and circumstances in the operative complaint or amendment thereto, including statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, interest, attorneys' fees, litigation costs, restitution, equitable relief or other relief under Business & Professions Code § 17200, *et seq*., based on the following categories:  (a) claims arising under California or federal law alleging failure to pay overtime wages based on failure to include bonuses, vacation award, other incentive pay, or compensation of any kind in the "regular rate" of pay; (b) claims alleging failure to provide first and second meal periods in compliance with California law, to pay premiums for missed, late, short or interrupted meal periods, or improper on-duty meal periods, or to pay such premiums at the regular rate of compensation required by Labor Code § 226.7; (c) claims alleging failure to keep accurate records; (d) claims alleging failure to issue proper wage statements to employees, including any claim that Defendants' wage statements do not comply with Labor Code § 226 during the period March 13, 2009 through December 31, 2017; (e) claims alleging failure to timely pay wages, any claim that Defendants violated Labor Code §§ 201 or 202, and any claim for waiting time penalties under Labor Code § 203; (f) claims for unfair business practices in violation of Business and Professions Code sections 17200, *et seq.;* and (g) and, solely as to Express Services Inc., Phillips & Associates Inc., and Western Wine Services, Inc., all penalties pursuant to the Private Attorneys General Act ("PAGA") of 2004 for the period March 13, 2011 to December 31, 2017 based on the alleged violations of the California Labor Code as set forth in the Complaint and amended complaints and Plaintiff's notice to the California Labor and Workforce Development Agency dated July 20, 2011 and as amended on February 3, 2012 (PAGA penalties based on claims alleging violations of Labor Code §§ 201, 201.3, 202, 203, 204, 226, 226.7, 256, 510, 512, 558, 1174, 1194, 1198, and Sections 3, 7 and 11 of the IWC Wage Orders).

Claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* shall only be released by class members who cash their settlement check. Participating Class Members who endorse their Gross Individual Settlement Payment expressly waive and release any Fair Labor Standards Act ("FLSA") claims, whether known or unknown, arising during the Class Period and based on the facts, claims, and allegations in Named Plaintiff's Lawsuit.  If a Settlement Class Member does not opt-out of the Settlement, they are bound by this release.

The Released Claims  do not include claims arising from employment where the Class Member is not working on an assignment through Express Services, Inc., Phillips & Associates, Inc., or any California franchisee of Express Services, Inc., or where Express Services, Inc., Phillips & Associates, Inc., or any California franchisee of Express Services, Inc., is not an alleged joint employer under Labor Code section 2810.3, or otherwise an alleged statutory employer or joint employer (under any legal theory of joint employment).

| EXCLUDING YOURSELF FROM THE SETTLEMENT |
|---|

**14.     How do I get out of the Settlement and this Lawsuit?**

If you wish to pursue a separate lawsuit, with a separate attorney at your own expense, or do not want to participate in the Settlement for other reasons, you should exclude yourself from this Lawsuit (that is, "opt out" of the Settlement). To opt out and exclude yourself from the Lawsuit, you must provide a signed and dated letter to the Administrator requesting to be excluded. The letter must state in substance:

"I wish to opt out of the class action Lawsuit and Settlement entitled *Stoddart vs. Express Services, Inc., et al.,* Case No. 12-CV-01054 KJM (CKD) filed in the United States District Court for the Eastern District of California. I understand that by requesting to be excluded from the Settlement, I will receive no money from the Settlement described in this Notice."

The opt out request letter must include the case name, case number, full name, current address, telephone number and last four digits of your social security number, signed by you, and must be postmarked and mailed to the Administrator at the following address (or in the enclosed envelope) on or before _____, 2020. [45 *calendar days within mailing of Notice Packet.]* Opt-out requests postmarked after this date may be disregarded.

> *Stoddart vs. Express Services, Inc., et al.* Class Action
> c/o Rust Consulting
> P. O. Box _____
> _____, _____

If you exclude yourself from the Settlement, you also give up any right to appeal the terms of the Settlement because the Settlement no longer affects you.

**15.     If I don't exclude myself, can I sue Defendants for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this Settlement resolves. ***If you have a claim or lawsuit already against Defendants, you must speak to your lawyer in that case immediately***. You may need to exclude yourself from the Settlement and this Lawsuit to continue your own lawsuit. Remember, the deadline to postmark a request to exclude yourself (to "opt out") of this Lawsuit is _____, 2020. [*45 calendar days within mailing of Notice Packet.]*

**16.     If I exclude myself, can I get money from this Settlement?**

No. If you exclude yourself, you will not receive an Individual Settlement Payment. The Individual Settlement Payment that you would have been entitled to receive will be redistributed to Participating Class Members. No portion of the Settlement monies will go back to Defendants as a result of a request to be excluded.

## OBJECTING TO THE SETTLEMENT

**17.**      <u>**How do I tell the Court that I don't like the Settlement?**</u>

If you don't think the Settlement is fair, you can object to the Settlement and tell the Court and the Parties you don't agree with the Settlement or some part of it. The Court will consider your views. To object, you must send a "Notice of Objection" letter saying that you object to *Stoddart vs. Express Services, Inc., et al.,* Case No. 12-CV-01054 KJM (CKD) proposed Settlement. The letter must include your full name, address, your signature, and the specific reasons you object to the terms of the Settlement. Mail the objection to the addresses listed below postmarked on or before _____, 2020. [45 calendar *days of mailing of Notice Packet.]*

CLERK OF THE COURT              *Stoddart vs. Express Services, Inc., et al.*
United States District Court         Class Action
Sacramento Division                  c/o Rust Consulting
501 I Street, Suite 4-200          P. O. Box _____
Sacramento, CA 95814           _____, _____

If you wish to speak at the Final Approval hearing about an objection, please provide a "Notice of Intention to Appear" together with your Notice of Objection - See Paragraph 21, below.

**18.**      <u>**What's the difference between objecting and opting out of the Lawsuit?**</u>

Objecting is simply telling the Court and the Parties you don't like something about the Settlement. You may object only if you stay in the Class. Requesting to be excluded (or opting out) of the Lawsuit is telling the Court that you don't want to be part of the Class and the Settlement. If you opt out of the Lawsuit, you have no basis to object because the case no longer affects you.

If you object to any of the terms of the Settlement, the Court will consider your objections when deciding whether to grant Final Approval to the Settlement.

## THE COURT'S FINAL APPROVAL HEARING

**19.**      <u>**When and where will the Court decide whether to approve the Settlement?**</u>

The Court will hold a Final Approval hearing in Courtroom 3, 15th Floor, of the United States District Court for the Eastern District of California located at 501 "I" Street, Sacramento, California 95814 on xxxx, 2020 at 10:00 a.m. At this hearing the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve Class Counsel's request for attorneys' fees and litigation costs, the Named Plaintiff service payment, and the Administrator's fees and expenses.

The Court may reschedule the Final Approval hearing without further notice to Class Members. However, any Class Member who has filed a Notice of Objection and Intention to Appear at the Final Fairness hearing will be notified by Class Counsel of any rescheduling of the date and time of the Final Fairness hearing.

**20.      Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But you are welcome to come at your own expense. If you mailed a Notice of Objection Letter to the Court and to the Administrator, you don't have to come to Court to talk about it. As long as you mailed your written objection to those shown in Paragraph 17, the Court will consider it.  You may also hire and pay your own lawyer to attend if you desire.

**21.      May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval hearing. To do so, you should send a letter saying it is your "Notice of Intention to Appear" in the *Stoddart vs. Express Services, Inc., et al.,* Case No. 12-CV-01054 KJM (CKD) matter. Be sure to include your name, address, and signature. Your Notice of Intention to Appear should be postmarked on or before _____, 2020. *[45 calendar days within mailing notice packets]* and be sent to the Clerk of the Court, and to the Administrator at the addresses shown in Paragraph 17, above.  However, you may appear at the Final Approval hearing without prior notice.

## GETTING MORE INFORMATION

**22.      Who may I contact if I have questions about the Settlement?**

You may contact Counsel for Plaintiff and the Class at the contact information listed above in Paragraph 6 if you have any questions about the Settlement. You may also contact the court-appointed Administrator by calling toll free 1-_____, or you may write to the administrator at the address shown above in paragraph 17.

If you would like to review relevant documents, including the settlement agreement and court-filed documents, please visit the website provided by Rust Consulting to see these documents at no charge: *[website name]*

**PLEASE DO NOT CONTACT THE JUDGE OR CLERK OF THE COURT TO DISCUSS THE CASE OR SETTLEMENT OR TO DEFENDANTS' MANAGERS OR ATTORNEYS**.

## ADDITIONAL IMPORTANT INFORMATION

A.      **Defendants** support the Settlement and will not retaliate in any way against any Class Member who stays in the Class and receives an Individual Settlement Payment, or requests to be excluded from the Lawsuit and Settlement.

B.      **It is your responsibility to ensure the Administrator** has your current mailing address and telephone number on file, as this will be the address to which your Individual Settlement Payment will be mailed.

C.      **Settlement Payment checks <u>must be cashed</u> soon after receipt**.   Any money from checks which remain uncashed after 180 days of the date of issuance will be donated to the Salvation Army's California programs to benefit the unemployed and underemployed workers, which serves such workers in gaining the employment skills and experience necessary to obtain employment and support them during periods of unemployment. If your check is lost or misplaced, you should immediately contact the Administrator to request a replacement.

***Stoddart vs. Express Services, Inc., et al.***
United States District Court, Eastern District of California
Case No. 12-CV-01054-KJM (CKD)

## <u>CHANGE OF ADDRESS FORM</u>

I wish to change my name and/or mailing address information to the following:

Name:_____

Former Name (if applicable):_____

Street and Apt. No., if any:_____

City, State and Zip Code:_____

Telephone(s): (Home):_____; (Cell):_____

Email:_____

I understand that all future correspondence in this Action, including but not necessarily limited to important notices or Settlement Payments, will be sent to the address listed above and not to the address previously used.  I hereby request and consent to the use of the address listed above for these purposes.

Submitted by:

DATED: _____, 2020          Print Name:  _____

Signature:      _____

**PLEASE RETURN THIS FORM IN THE ENVELOPE PROVIDED
OR VIA UNITED STATES FIRST-CLASS MAIL TO:**

*Stoddart vs. Express Services, Inc., et al.*
Class Action
c/o Rust Consulting
P. O. Box _____
_____, _____

EXHIBIT 1, PAGE 48



PLACE
CORRECT
POSTAGE
HERE

STODDART vs. EXPRESS SERVICES, INC. ET AL. CLASS ACTION
SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING, INC.
PO BOX xxxx
FARIBAULT MN xxxxx-xxxx

EXHIBIT 1, PAGE 49

# EXHIBIT 2



Attorneys at Law
A Limited Liability
Partnership Including
Professional Corporations

3555 Fifth Avenue
San Diego, CA 92103
619.692.0800 voice
619.692.0822 fax

www.gracehollis.com

Marta Manus
mmanus@gracehollis.com
619.546.4373 direct

July 20, 2011

**CERTIFIED MAIL (RETURN RECEIPT)**

California Labor and Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Express Services, Inc. *dba* Express Employment Professionals
8516 NW Express Way
Oklahoma City, OK 73162

Western Wine Services, Inc.
875 Hanna Drive
Vallejo, CA 94503-9606

Re:     **Wage/Hour Claims of Michael Haskell Stoddart against Express
        Services, Inc. d/b/a Express Employment Professionals and
        Western Wine Services, Inc.**

Dear Labor and Workforce Development Agency, Express Services, Inc. and Western
Wine Services, Inc.:

    Please be advised that Michael H. Stoddart has retained our firm to represent
him for claims against his former employers Express Services, Inc. dba Express
Employment Professionals (hereinafter referred to as "Express") and Western Wine
Services, Inc. (hereinafter referred to as "Western Wine").

    Pursuant to Labor Code §§ 2699(h), 2699.3(a)(1) and 2699.5(a), this letter shall
serve as Mr. Stoddart's wage/hour and penalties claim letter against Express and
Western Wine.  Mr. Stoddart wishes to file a civil action to enforce his rights under the
Labor Code and seek unpaid compensation.  Additionally, pursuant to Labor Code §
2699(a) and (f), Mr. Stoddart reserves the right to bring a wage and hour/penalty claim
on behalf of all current and former similarly aggrieved California employees of Express
and Western Wine.

**FACTUAL BACKGROUND**

    Express is a company providing staffing services and human resource solutions
to medium-sized business around the world. Western Wine is a wine transportation and
storage company located in the county of Napa, California.



GRACEHOLLIS
LLP

Mr. Stoddart began his employment with Express and Western Wine in approximately April 2007 and was employed until May 31, 2011. He worked as a forklift driver and was classified as an hourly non-exempt employee, paid an hourly rate of approximately $13.00 per hour at the time of his termination.

Express and Western Wine were the joint employers of Mr. Stoddart. While working at Express and Western Wine, Mr. Stoddart was not provided with legally compliant, uninterrupted and off-duty meal periods. Mr. Stoddart and other non-exempt employees were required to stay on-site during lunch breaks due to fear of theft of Western Wine products and not because the nature of Mr. Stoddart's work prevented him from being relieved of all duties during meal periods. Express and Western Wine prevented Mr. Stoddart and other non-exempt employees from taking off-duty, uninterrupted meal periods and failed to pay one additional hour of pay at the employee's regular rate for non-compliant meal periods.

Furthermore, Express and Western Wine did not provide Mr. Stoddart with accurate itemized wage statements because he was not paid properly for all hours worked, including overtime and hours worked during meal periods. Additionally, Express and Western Wine failed to keep accurate records showing the actual number of hours worked. Lastly, Express and Western Wine failed to pay Mr. Stoddart all wages due upon his resignation from employment with Express Services and Western Wine. Mr. Stoddart's potential claims are set forth below.

### FAILURE TO PROVIDE MEAL PERIODS
(Labor Code §§ 226.7, 512 , Cal. Admin Code Title 8, §11040,
and "Meal Period" Section of IWC Wage Order 9-2001)

Pursuant to the "Meal Period" Section of the applicable IWC Wage Order, no employer shall employ any person for a work period of more than five (5) hours without a meal period of less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. If an employer fails to provide an employee a meal period in accordance with the applicable provision of the order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

Labor Code § 512(a) states in pertinent part: "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes…" Labor Code § 226.7(a) states that "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

Express and Western Wine do and did not provide Mr. Stoddart with legally compliant meal periods because Mr. Stoddart was unable to take off-duty and uninterrupted meal even though the nature of his work did not prevent him from being relieved of all duties. His employer required Mr. Stoddart to remain on the premises due to fear of theft of the employer's product. If the employer requires the employee to remain at the work site or facility during the meal period, the meal period must be paid. This is true even where the employee is relieved of all work duties during the meal period. *Bono Enterprises, In. v. Bradshaw* (1995) 32 Cal.App.4th 968.



Pursuant to Labor Code § 226.7(b) if an employer fails to provide an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided. Consequently, Express and Western Wine must pay one hour of wages for each day a proper meal period was not provided. This applies to Mr. Stoddart and all other current and former similarly aggrieved employees who were not provided with legally compliant meal periods. Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

## FAILURE TO PAY OVERTIME WAGES
### (Labor Code §§ 204, 510, 1194,1198 and Section 3 and 11 of IWC Wage Order 9-2001)

Pursuant to Labor Code §510 and Section 3 of the IWC Wage Order, non- exempt employees are entitled to one and one-half times their hourly pay for any and all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday, for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek, and for any work in excess of forty (40) hours in any one workweek. Non-exempt employees are entitled to double time for any hours worked beyond 12 hours in a workday and in excess of 8 hours on the 7th consecutive day of a workweek.

Mr. Stoddart and other similarly aggrieved employees were precluded from leaving Western Wine's facilities during their 30 minute lunch breaks. Pursuant to Section 11 of IWC Wage Order 9-2001 unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an `on duty' meal period and counted as time worked. Since Mr. Stoddart was scheduled to work 8 hour shifts, he was entitled to 30 minute of overtime for each day he was required to remain on Western Wine's premises and was subject to the control of his employer. Consequently, Mr. Stoddart was not compensated for overtime hours worked. Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
### (Labor Code § 226)

Express and Western Wine are required under Labor Code § 226(a) to furnish each of their employees an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages earned, (5) the inclusive dates of the period for which the employee is paid, (6) the name of the employee and his or her last four digit of the social security number or an employee identification number, (7) the name and address of the legal entity that is the employer, (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Express and Western Wine do not provide Mr. Stoddart and other similarly aggrieved employees with accurate itemized wage statements complying with the requirements of § 226(a) including, but not limited to, providing the total hours worked by the employee and gross wages earned because Express and Western Wine fail to record all hours worked by Mr. Stoddart and other similarly aggrieved employees. As a result, Mr. Stoddart and other similarly aggrieved employees have been deprived from knowing the true amount due and owing to them.

Labor Code § 226.3 imposes a civil penalty of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each



GRACEHOLLIS
LLP

subsequent violation of Labor Code section 226(a).  Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

## FAILURE TO PAY TIMELY WAGES
### (Violation of Labor Code §§ 204, 510 and 1198, IWC Wage Order 9-2001)

IWC Wage Order 9 § 2 defines "hours worked" as: "[T]he time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  This policy requires compensation for all time the employee spends performing services which inure to the benefit of the employer.  Pursuant to Labor Code § 204, wages are due and payable twice during each calendar month on regular paydays designated by the employer.  Mr. Stoddart did not receive all wages for overtime hours worked, nor did he receive meal period premiums for being deprived of off-duty meal periods.  These wages were due at regular paydays and were never provided by Express and Western Wine.

Consequently, pursuant to Labor Code § 2699, a civil penalty of $100.00 per pay period for the initial violation and $200.00 per pay period for each subsequent violation would apply for the violations of Labor Code § 204.  Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

## DUTIES OF EMPLOYER
### (Labor Code §§ 226, 1174, 1174.5 and 2698 *et seq.*)

Labor Code §§ 226 and 1174 describe certain duties of every employer in this state.  Subsection (d) of this Labor Code § 1174 requires that payroll records show the hours worked daily by employees and the corresponding wages to be paid for the hours worked.  Express and Western Wine violated this requirement by their failure to accurately record the hours worked.  Labor Code § 1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records.  Furthermore, Mr. Stoddart is entitled to collect penalties imposed pursuant to Labor Code § 2698 *et seq.*

By engaging in such tactics,  Express and Western Wine also gained an unfair competitive advantage over its competitors in violation of Business and Professions Code section 17200.

## WAITING TIME PENALTY
### (Labor Code §§201, 202, 203, 256 and 2698 *et seq.*)

Express and Western Wine failed to pay Mr. Stoddart all wages that were due and owed to him immediately upon his separation.  These wages include, but are not limited to, all regular wages, overtime wages and meal period premiums.  Therefore, by failing to pay final wages when required, Express and Western Wine intentionally and illegally withheld the wages lawfully earned.  As a penalty for violating Labor Code §§ 201 and 203, Mr. Stoddart is entitled to 30 days of wages at their average daily rate for a period of 30 days as a "waiting time penalty."

As a consequence of violating Labor Code § 203, pursuant to Section 256 the Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days of pay as a waiting time penalty pursuant to Labor Code § 203.  As a further consequence of violating each of Labor Code §§ 201 and 203, Labor Code § 2698 *et seq.* imposes a civil penalty of $100 per pay period, per aggrieved

July 20, 2011
Page 5



GRACE·HOLLIS
LLP

employee and for each subsequent violation, $200 per pay period, per aggrieved employee.  Also pursuant to Labor Code §2698 *et seq.*, Mr. Stoddart is entitled to collect penalties

### ATTORNEYS' FEES, INTERESTS
#### (Labor Code §§ 2699(a), 2699(g)(1), 2699.5)

Labor Code § 2699(a) gives employees the right to recover in a civil action the penalties that could otherwise be recovered by the Labor and Workforce Development Agency or any of its departments or divisions for violation of the Labor Code.  Under Labor Code § 2699(g), the aggrieved employee who recovers penalties on behalf of the state shall receive a portion of the penalties recovered and shall be entitled to an award of reasonable attorney's fees and costs.  Accordingly, Express and Western Wine are liable for the attorneys' fees and costs that Mr. Stoddart has already incurred and will continue to incur in seeking to recover the penalties under Labor Code § 226.7(a)(b), § 512, § 2698 *et seq.*, and Cal. Admin Code Title 8, §11040.

### CONCLUSION

Based on the foregoing, Express and Western Wine are liable for wages and penalties related to the foregoing claims and remedies.  Mr. Stoddart intends to pursue his claims against his former employers in a civil action.  If through discovery, Mr. Stoddart becomes aware of any additional claims for Labor Code violations related to his employment and/or other Express and Western Wine employees, he reserves the right to add any new claims by either amending this claim letter or by adding applicable causes of action in his complaint for damages.

Should you have any questions related to the above, please do not hesitate to contact the undersigned.  In the meantime, I look forward to your response.

Sincerely,

Marta Manus

18406118487

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- ☑ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Express Services, Inc.
8516 NW Express Way
Oklahoma City, OK
            73162

**COMPLETE THIS SECTION ON DELIVERY**

A. EXPRESS SERVICES INC.   ☐ Agent
                                        ☐ Addressee
X
DISTRIBUTION
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

[postmark: OKLAHOMA CITY, OK  JUL 25 2011  GENERAL STA  USPS]

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered      ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7002 3150 0001 4620 9437

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540





EXHIBIT 2, PAGE 7

1017 11 17



**STATE OF CALIFORNIA**
**Labor & Workforce Development Agency**

GOVERNOR Edmund G. Brown Jr.  •  SECRETARY Marty Morgenstern

Agricultural Labor Relations Board  •  California Unemployment Insurance Appeals Board
California Workforce Investment Board  •  Department of Industrial Relations
Economic Strategy Panel  •  Employment Development Department  •  Employment Training Panel

October 12, 2011                                                   **CERTIFIED MAIL**

Grace Hollis LLP
3555 Fifth Avenue
San Diego, CA 92103

RE: Employer:     Express Services, Inc.; Western Wine Services, Inc.
RE: Employee(s): Michael Stoddart
RE: LWDA No:     8722

This is to inform you that the Labor and Workforce Development Agency
(LWDA) received your notice of alleged Labor Code violations pursuant to
Labor Code Section 2699, postmarked July 20, 2011, and after review, does
not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides
that "...civil penalties recovered by aggrieved employees shall be distributed
as follows: 75 percent to the LWDA for enforcement of labor laws and
education of employers and employees about their rights and responsibilities
under this code." Labor Code Section 2699(l) specifies "[T]he superior court
shall review and approve any penalties sought as part of a proposed
settlement agreement pursuant to this part."

Consequently, you must advise us of the results of the litigation, and forward
a copy of the court judgment or the court-approved settlement agreement.
Please be certain to reference the above LWDA assigned Case Number in
any future correspondence.

Sincerely,

*Doug Hoffner*

Doug Hoffner
Undersecretary

Cc:   Express Services, Inc.; Western Wine Services, Inc.
       875 Hanna Drive

801 K Street, Suite 2101  •  Sacramento, California 95814  •  TEL (916) 327.9064  •  FAX (916) 327.9158  •  www.labor.ca.gov

EXHIBIT 2, PAGE 8


GRAHAM·HOLLIS
APC

February 3, 2012

Attorneys at Law

3555 Fifth Avenue
San Diego, California 92103
619.692.0800 voice
619.692.0822 fax

www.grahamhollis.com

Marta Manus
mmanus@grahamhollis.com
619.546.4373 direct

**<u>CERTIFIED MAIL (RETURN RECEIPT)</u>**

California Labor and Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Phillips & Associates, Inc. *dba* Express Employment Professionals
5030 Business Center Drive, #140
Fairfield, CA 94534

Express Services, Inc. *dba* Express Employment Professionals
8516 NW Express Way
Oklahoma City, OK 73162

Western Wine Services, Inc.
875 Hanna Drive
Vallejo, CA 94503-9606

Re:  **<u>Wage/Hour Claims of Michael Haskell Stoddart against Phillips
& Associates, Inc. d/b/a Express Employment Professionals,
Express Services, Inc. d/b/a Express Employment Professionals,
and Western Wine Services, Inc.</u>**

Dear Labor and Workforce Development Agency, Phillips & Associates, Inc., Express
Services, Inc. and Western Wine Services, Inc.:

Please allow this correspondence to supplement Michael H. Stoddart's prior
notification letter to you dated July 20, 2011 (attached hereto) regarding his claims
against his former employers Express Services, Inc. d/b/a Express Employment
Professionals and Western Wine Services, Inc. (hereinafter referred to as "Western
Wine"). On October 12, 2011, the LWDA sent notification informing Mr. Stoddart of
their intent not to investigate the allegations (attached hereto).

Investigation has revealed that Mr. Stoddart was also employed by Phillips &
Associates, Inc. d/b/a Express Employment Professionals. As such, Mr. Stoddart wishes
to pursue claims against Phillips & Associates in addition to his two other former
employers, Express Services, Inc. and Western Wine.

Pursuant to Labor Code §§ 2699(h), 2699.3(a)(1) and 2699.5(a), this letter shall
serve as Mr. Stoddart's wage/hour and penalties claim letter against his former

Graham S.P. Hollis

Diane E. Richard

Brian R. Short

Marta Manus

Vilmarie Cordero

EXHIBIT 2, PAGE 9

February 3, 2012
Page 2



employers.  Mr. Stoddart wishes to file a civil action to enforce his rights under the Labor Code and seek unpaid compensation.  Additionally, pursuant to Labor Code § 2699(a) and (f), Mr. Stoddart reserves the right to bring a wage and hour/penalty claim on behalf of all current and former similarly aggrieved California employees of Phillips & Associates, Inc., Express Services, Inc., and Western Wine.

The factual allegations and potential claims against Phillips & Associates are identical to the facts and claims in Mr. Stoddart's July 20, 2011 correspondence.  Mr. Stoddart requests that the LWDA amend the claim number for his claims to include his allegations and potential claims against Phillips & Associates, Inc.  Express Services, Inc. is a franchisor and company providing staffing services and human resource solutions to medium-sized business around the world.  Phillips & Associates is a franchisee of Express Services, Inc. Express Services, Inc. and Phillips & Associates, Inc. both do business as Express Employment Professionals.  Western Wine is a wine transportation and storage company located in the county of Napa, California.  Mr. Stoddart began his employment at the Western Wine facility in approximately April 2007 and was employed until May 31, 2011.

Mr. Stoddart intends to pursue his claims against his former employers in a civil action.  If through discovery, Mr. Stoddart becomes aware of any additional claims for Labor Code violations related to his employment and/or other Phillips & Associates, Inc., Express Services, Inc. and Western Wine employees, he reserves the right to add any new claims by either amending this claim letter or by adding applicable causes of action in his complaint for damages.

Should you have any questions related to the above, please do not hesitate to contact the undersigned.

Very truly yours,

Marta Manus

MM/daj

**GRACE·IOLLIS**
LLP

July 20, 2011

Attorneys at Law
A Limited Liability
Partnership Including
Professional Corporations

3555 Fifth Avenue
San Diego, CA 92103
619.692.0800 voice
619.692.0822 fax

www.gracehollis.com

Marta Manus
mmanus@gracehollis.com
619.546.4373 direct

**CERTIFIED MAIL (RETURN RECEIPT)**

California Labor and Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Express Services, Inc. *dba* Express Employment Professionals
8516 NW Express Way
Oklahoma City, OK 73162

Western Wine Services, Inc.
875 Hanna Drive
Vallejo, CA 94503-9606

Re:     <u>Wage/Hour Claims of Michael Haskell Stoddart against Express
        Services, Inc. d/b/a Express Employment Professionals and
        Western Wine Services, Inc.</u>

Dear Labor and Workforce Development Agency, Express Services, Inc. and Western
Wine Services, Inc.:

Please be advised that Michael H. Stoddart has retained our firm to represent
him for claims against his former employers Express Services, Inc. dba Express
Employment Professionals (hereinafter referred to as "Express") and Western Wine
Services, Inc. (hereinafter referred to as "Western Wine").

Pursuant to Labor Code §§ 2699(h), 2699.3(a)(1) and 2699.5(a), this letter shall
serve as Mr. Stoddart's wage/hour and penalties claim letter against Express and
Western Wine. Mr. Stoddart wishes to file a civil action to enforce his rights under the
Labor Code and seek unpaid compensation. Additionally, pursuant to Labor Code §
2699(a) and (f), Mr. Stoddart reserves the right to bring a wage and hour/penalty claim
on behalf of all current and former similarly aggrieved California employees of Express
and Western Wine.

### FACTUAL BACKGROUND

Express is a company providing staffing services and human resource solutions
to medium-sized business around the world. Western Wine is a wine transportation and
storage company located in the county of Napa, California.



GRACEHOLLIS
LLP

Mr. Stoddart began his employment with Express and Western Wine in approximately April 2007 and was employed until May 31, 2011. He worked as a forklift driver and was classified as an hourly non-exempt employee, paid an hourly rate of approximately $13.00 per hour at the time of his termination.

Express and Western Wine were the joint employers of Mr. Stoddart. While working at Express and Western Wine, Mr. Stoddart was not provided with legally compliant, uninterrupted and off-duty meal periods. Mr. Stoddart and other non-exempt employees were required to stay on-site during lunch breaks due to fear of theft of Western Wine products and not because the nature of Mr. Stoddart's work prevented him from being relieved of all duties during meal periods. Express and Western Wine prevented Mr. Stoddart and other non-exempt employees from taking off-duty, uninterrupted meal periods and failed to pay one additional hour of pay at the employee's regular rate for non-compliant meal periods.

Furthermore, Express and Western Wine did not provide Mr. Stoddart with accurate itemized wage statements because he was not paid properly for all hours worked, including overtime and hours worked during meal periods. Additionally, Express and Western Wine failed to keep accurate records showing the actual number of hours worked. Lastly, Express and Western Wine failed to pay Mr. Stoddart all wages due upon his resignation from employment with Express Services and Western Wine. Mr. Stoddart's potential claims are set forth below.

### FAILURE TO PROVIDE MEAL PERIODS
(Labor Code §§ 226.7, 512 , Cal. Admin Code Title 8, §11040,
and "Meal Period" Section of IWC Wage Order 9-2001)

Pursuant to the "Meal Period" Section of the applicable IWC Wage Order, no employer shall employ any person for a work period of more than five (5) hours without a meal period of less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. If an employer fails to provide an employee a meal period in accordance with the applicable provision of the order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

Labor Code § 512(a) states in pertinent part: "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes..." Labor Code § 226.7(a) states that "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

Express and Western Wine do and did not provide Mr. Stoddart with legally compliant meal periods because Mr. Stoddart was unable to take off-duty and uninterrupted meal even though the nature of his work did not prevent him from being relieved of all duties. His employer required Mr. Stoddart to remain on the premises due to fear of theft of the employer's product. If the employer requires the employee to remain at the work site or facility during the meal period, the meal period must be paid. This is true even where the employee is relieved of all work duties during the meal period. *Bono Enterprises, In. v. Bradshaw* (1995) 32 Cal.App.4th 968.



Pursuant to Labor Code § 226.7(b) if an employer fails to provide an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided. Consequently, Express and Western Wine must pay one hour of wages for each day a proper meal period was not provided. This applies to Mr. Stoddart and all other current and former similarly aggrieved employees who were not provided with legally compliant meal periods. Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

### FAILURE TO PAY OVERTIME WAGES
(Labor Code §§ 204, 510, 1194,1198 and Section 3 and 11 of IWC Wage Order 9-2001)

Pursuant to Labor Code §510 and Section 3 of the IWC Wage Order, non- exempt employees are entitled to one and one-half times their hourly pay for any and all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday, for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek, and for any work in excess of forty (40) hours in any one workweek. Non-exempt employees are entitled to double time for any hours worked beyond 12 hours in a workday and in excess of 8 hours on the 7th consecutive day of a workweek.

Mr. Stoddart and other similarly aggrieved employees were precluded from leaving Western Wine's facilities during their 30 minute lunch breaks. Pursuant to Section 11 of IWC Wage Order 9-2001 unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. Since Mr. Stoddart was scheduled to work 8 hour shifts, he was entitled to 30 minute of overtime for each day he was required to remain on Western Wine's premises and was subject to the control of his employer. Consequently, Mr. Stoddart was not compensated for overtime hours worked. Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
(Labor Code § 226)

Express and Western Wine are required under Labor Code § 226(a) to furnish each of their employees an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages earned, (5) the inclusive dates of the period for which the employee is paid, (6) the name of the employee and his or her last four digit of the social security number or an employee identification number, (7) the name and address of the legal entity that is the employer, (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Express and Western Wine do not provide Mr. Stoddart and other similarly aggrieved employees with accurate itemized wage statements complying with the requirements of § 226(a) including, but not limited to, providing the total hours worked by the employee and gross wages earned because Express and Western Wine fail to record all hours worked by Mr. Stoddart and other similarly aggrieved employees. As a result, Mr. Stoddart and other similarly aggrieved employees have been deprived from knowing the true amount due and owing to them.

Labor Code § 226.3 imposes a civil penalty of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each

July 20, 2011
Page 4


GRACE·IOLLIS
LLP

subsequent violation of Labor Code section 226(a). Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

### FAILURE TO PAY TIMELY WAGES
(Violation of Labor Code §§ 204, 510 and 1198, IWC Wage Order 9-2001)

IWC Wage Order 9 § 2 defines "hours worked" as: "[T]he time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." This policy requires compensation for all time the employee spends performing services which inure to the benefit of the employer. Pursuant to Labor Code § 204, wages are due and payable twice during each calendar month on regular paydays designated by the employer. Mr. Stoddart did not receive all wages for overtime hours worked, nor did he receive meal period premiums for being deprived of off-duty meal periods. These wages were due at regular paydays and were never provided by Express and Western Wine.

Consequently, pursuant to Labor Code § 2699, a civil penalty of $100.00 per pay period for the initial violation and $200.00 per pay period for each subsequent violation would apply for the violations of Labor Code § 204. Mr. Stoddart seeks to pursue remedies pursuant to the PAGA for these violations.

### DUTIES OF EMPLOYER
(Labor Code §§ 226, 1174, 1174.5 and 2698 *et seq.*)

Labor Code §§ 226 and 1174 describe certain duties of every employer in this state. Subsection (d) of this Labor Code § 1174 requires that payroll records show the hours worked daily by employees and the corresponding wages to be paid for the hours worked. Express and Western Wine violated this requirement by their failure to accurately record the hours worked. Labor Code § 1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records. Furthermore, Mr. Stoddart is entitled to collect penalties imposed pursuant to Labor Code § 2698 *et seq.*

By engaging in such tactics, Express and Western Wine also gained an unfair competitive advantage over its competitors in violation of Business and Professions Code section 17200.

### WAITING TIME PENALTY
(Labor Code §§ 201, 202, 203, 256 and 2698 *et seq.*)

Express and Western Wine failed to pay Mr. Stoddart all wages that were due and owed to him immediately upon his separation. These wages include, but are not limited to, all regular wages, overtime wages and meal period premiums. Therefore, by failing to pay final wages when required, Express and Western Wine intentionally and illegally withheld the wages lawfully earned. As a penalty for violating Labor Code §§ 201 and 203, Mr. Stoddart is entitled to 30 days of wages at their average daily rate for a period of 30 days as a "waiting time penalty."

As a consequence of violating Labor Code § 203, pursuant to Section 256 the Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days of pay as a waiting time penalty pursuant to Labor Code § 203. As a further consequence of violating each of Labor Code §§ 201 and 203, Labor Code § 2698 *et seq.* imposes a civil penalty of $100 per pay period, per aggrieved

July 20, 2011
Page 5



employee and for each subsequent violation, $200 per pay period, per aggrieved employee.  Also pursuant
to Labor Code §2698 *et seq.*, Mr. Stoddart is entitled to collect penalties

### ATTORNEYS' FEES, INTERESTS
(Labor Code §§ 2699(a), 2699(g)(1), 2699.5)

Labor Code § 2699(a) gives employees the right to recover in a civil action the penalties that
could otherwise be recovered by the Labor and Workforce Development Agency or any of its
departments or divisions for violation of the Labor Code.  Under Labor Code § 2699(g), the aggrieved
employee who recovers penalties on behalf of the state shall receive a portion of the penalties recovered
and shall be entitled to an award of reasonable attorney's fees and costs.  Accordingly, Express and
Western Wine are liable for the attorneys' fees and costs that Mr. Stoddart has already incurred and will
continue to incur in seeking to recover the penalties under Labor Code § 226.7(a)(b), § 512, § 2698 *et
seq.*, and Cal. Admin Code Title 8, §11040.

### CONCLUSION

Based on the foregoing, Express and Western Wine are liable for wages and penalties related to
the foregoing claims and remedies.  Mr. Stoddart intends to pursue his claims against his former
employers in a civil action.  If through discovery, Mr. Stoddart becomes aware of any additional claims
for Labor Code violations related to his employment and/or other Express and Western Wine employees,
he reserves the right to add any new claims by either amending this claim letter or by adding applicable
causes of action in his complaint for damages.

Should you have any questions related to the above, please do not hesitate to contact the
undersigned.  In the meantime, I look forward to your response.

Sincerely,

Marta Manus



STATE OF CALIFORNIA
# Labor & Workforce Development Agency

GOVERNOR Edmund G. Brown Jr. • SECRETARY Marty Morgenstern

Agricultural Labor Relations Board • California Unemployment Insurance Appeals Board
California Workforce Investment Board • Department of Industrial Relations
Economic Strategy Panel • Employment Development Department • Employment Training Panel

October 12, 2011                                          **CERTIFIED MAIL**

Grace Hollis LLP
3555 Fifth Avenue
San Diego, CA 92103

RE: Employer:     Express Services, Inc.; Western Wine Services, Inc.
RE: Employee(s): Michael Stoddart
RE: LWDA No:    8722

This is to inform you that the Labor and Workforce Development Agency
(LWDA) received your notice of alleged Labor Code violations pursuant to
Labor Code Section 2699, postmarked July 20, 2011, and after review, does
not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides
that "...civil penalties recovered by aggrieved employees shall be distributed
as follows: 75 percent to the LWDA for enforcement of labor laws and
education of employers and employees about their rights and responsibilities
under this code." Labor Code Section 2699(l) specifies "[T]he superior court
shall review and approve any penalties sought as part of a proposed
settlement agreement pursuant to this part."

Consequently, you must advise us of the results of the litigation, and forward
a copy of the court judgment or the court-approved settlement agreement.
Please be certain to reference the above LWDA assigned Case Number in
any future correspondence.

Sincerely,

Doug Hoffner
Undersecretary

Cc:   Express Services, Inc.; Western Wine Services, Inc.
      875 Hanna Drive

801 K Street, Suite 2101 • Sacramento, California 95814 • TEL (916) 327.9064 • FAX (916) 327.9158 • www.labor.ca.gov

EXHIBIT 2, PAGE 16

# EXHIBIT 3

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, * APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, •APLC

(*Also admitted in the District of Columbia)
(•Also admitted in Colorado)

ATTORNEYS AT LAW

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
**www.ckslaw.com**

JEFF GERACI ∆
J. JASON HILL†
MARTA MANUS
KRISTINA DE LA ROSA

(† Also admitted in Illinois)
(∆ Of Counsel)

**TIMOTHY D. COHELAN** and **ISAM C. KHOURY** are the founding partners of **COHELAN KHOURY & SINGER**, a civil litigation firm established in 1981. Since 1987, Cohelan Khoury & Singer has specialized in class action cases and has been certified as class counsel and lead counsel in numerous state and federal court cases throughout the United States. The firm has successfully prosecuted well over 150 class action cases representing diverse groups of victims, including urban homeless entitled to emergency shelter; victims of a national health insurance fraud scheme; retirees entitled to pension benefits; defrauded investors; consumers; and workers entitled to back wages. Cohelan Khoury & Singer's diverse practice currently includes representation of, among others, employees contesting wage and hour violations as well as consumers battling unfair business practices.

Cohelan Khoury & Singer has a broad array of experience in prosecuting class action cases. The firm has successfully achieved a landmark California Supreme Court reversal of a court of appeal reversal of a trial court grant of certification affecting over 100,000 workers in *Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004, as well as a groundbreaking reversal of a class certification denial in *Hicks v. Kaufman and Broad* (2001) 89 Cal.App.4th 908. Cohelan Khoury & Singer has also achieved statewide recognition for pro bono public interest work including successful cases prosecuted on behalf of homeless persons in *Hoffmaster v. City of San Diego* (1997) 55 Cal.App.4th 1098.

Cohelan Khoury & Singer's public interest work has been recognized in numerous cases including that of United States District Court Judge Milton Pollack, a Senior United States District Court Judge for the Southern District of New York, who has publicly stated that he had "seen no similar indication of a public service rendered by any group of lawyers in all the years I have practiced law myself, which is for 38, or the 27 years that I have been on the bench." Judge Pollack's comments came in connection with a class action case brought on behalf of thousands of victims of health insurance fraud across the nation.

The firm has substantial trial experience in class action, representative, and complex litigation, as well as individual matters. Cohelan Khoury & Singer is one of a handful of firms to have tried class action wage and hour cases, including an independent contractor misclassification action on behalf of newspaper carriers against the Orange County Register and an action for unpaid wages, wage deductions, and expense

reimbursements on behalf of a certified class of truckers and appliance installation helpers. The firm also tried to judgment a certified case against the State of Hawaii Child Support Enforcement Agency for wrongful retention of child support monies. The agency was ordered to conduct an accounting and pay the funds to the custodial parents. The firm has also represented large numbers of individuals collectively for construction defect claims and major investment frauds, recovering monies related to cracked slab foundations and defrauded investors of Ponzi schemes.

Cohelan Khoury & Singer has certified classes in heavily contested hearings against the following entities:

1. Atlantic Richfield Corporation, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco, Inc., Tosco Corporation, Ultramar Corporation, and Unocal Corporation
2. Empire Blue Cross/Blue Shield
3. Pioneer Mortgage
4. Liebert Corporation
5. PaineWebber, Inc.
6. Dayton Hudson Corp.
7. Chartwell Financial
8. Cal Fed, Inc.
9. Jones, American Thrift
10. Service Technicians, Inc.
11. Kaufman & Broad
12. Washington Mutual Bank
13. Albertson's, Inc.
14. Wells Fargo Home Mortgage, Inc.
15. Brinker Restaurant Corporation
16. FedEx Ground Package System
17. Ethan Allen, Inc.
18. State of Hawaii Child Support Enforcement Agency
19. Victoria Apartments
20. AT&T Wireless Services, Inc.
21. Farmers Insurance Company
22. City of San Diego
23. Lewis Homes of California
24. Freedom Communications, Inc. d/b/a The Orange County Register
25. California Pizza Kitchen
26. Raytheon Company
27. Les Schwab Tire Centers of California, Inc.
28. Catholic Healthcare West
29. Kaiser Foundation Hospitals
30. Penske Logistics and Penske Truck Leasing
31. Conair
32. Container Connection of Southern California
33. Ashley Furniture/Stoneledge Furniture
34. Save Mart Supermarkets
35. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS
36. Certified Class Counsel well over 100 settlement classes

Cohelan Khoury & Singer has obtained numerous verdicts, judgments, or settlements since September 1993. Listed below are examples of cases the firm has played a central role in the resolution of and which have received final approval by the Court:

- *Bennett v. Countrywide*, San Diego Superior Court, Case No. GIC840981 [expense reimbursement claim by commission employees];
- *Evans v. Washington Mutual Bank*, Orange County Superior Court Case No. 02CC15415 [expense reimbursement and wage deduction claim by commission employees];
- *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register*, Orange County Superior Court Case No. 03CC08756 [home delivery carriers misclassified as "independent contractors"];
- *Aravena v. Cisco Systems, Inc.*, Orange County Superior Court Case No. 07CC01367 [OT misclassification claim by IT employees];
- *Venturini v. Genentech, Inc.*, San Francisco Superior Court Case No. CGC-09-492494 [OT misclassification claim by IT employees];
- *Durrani v. Western Digital Corporation, et al.*, Orange County Superior Court Case No. 30-2009-00268212 [OT misclassification claim by IT Employees];
- *Watson v. Raytheon Company*, United States District Court, Southern District of California Case No. 10CV0634 [Ot misclassification claim by IT employees];
- *Bills v. Sutter Health*, Alameda Superior Court Case No. RG09465894 [Ot misclassification claim by IT employees];
- *Smith v. California Pizza Kitchen*, San Diego Superior Court Case No. 37-2008-00083992 [OT misclassification claims by managers and assistant managers];
- *Dunn v. The Kroger Company, et al.*, Los Angeles Superior Court Case No. Case No. BC323252 [meal and rest break claims];
- *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court Case No. 04CC00571 [OT claims by nurses];
- *Hohnbaum, et al. v. Brinker Restaurant Corp.*, San Diego Superior Court Case No. GIC834348 [meal and rest break claims];
- *Liberty Mutual Overtime Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4234 [OT misclassification of Insurance Claims Handlers];
- *Leisinger-Reed, et al. v. Equinox Holdings, Inc., et al*., Los Angeles Superior Court Case No. BC481860 [unpaid wages, and meal and rest break claims by massage therapists, estheticians, and nail technicians];
- *Rite Aid Wage and Hour Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4583 [OT, Meal and Rest Period Claims by Pharmacists]
- *Djukich v. Carwell, LLC*, Unites States District Court, Central District of California Case No. 13CV4455 BRO [unpaid wages claims by automotive technicians];

- *Laureano, Jr. et al. v. The Art of Shaving-FL, LLC*, Los Angeles Superior Court Case No. BC550093 [meal and rest break and overtime claims by non-exempt employees];
- *Martinez v. Alameda Health System*, Alameda Superior Court Case No. RG14719205 [unpaid wages by non-exempt employees];
- *Freeman v. Coast to Coast Manpower, LLC*, Los Angeles Superior Court Case No. BC543709 [unpaid wages, meal and rest break, and vacation pay claims by truck drivers];
- *Morales v. The Los Angeles Country Club*, Los Angeles Superior Court Case No. BC566493 [unpaid wages, meal and rest break, reporting and split shift pay, expense reimbursement and improper wage deductions claims by non-exempt employees];
- *Bradley v. Safe Haven Security Services, Inc.*, San Diego Superior Court Case No. 37-2015-00019576-CU-OE-CTL [expense reimbursement and wage statement claims by Sales Representatives]; and
- *Czuchaj, et al. v. Conair Corporation,* United States District Court, Southern District of California Case No. 13CV1901 BEN (RBB) [implied warranty of merchantability of certain models of hair dryers], among others.

**TIMOTHY D. COHELAN**, Founding Partner, author of *Cohelan on California Class Actions* (Thomson Reuters, 1997-2019, updated annually), is the son of the late Jeffery Cohelan, former California Congressman. He is a 1974 graduate of California Western School of Law, where he was a law review editor. Mr. Cohelan served as an Officer in the U.S. Navy from 1968 to 1971 and received a B.A. from the University of Arizona in 1967. Mr. Cohelan was admitted to the State Bar of California in 1974, and was admitted to the Bar in the District of Columbia in 1996. He also served as the Chairman of the San Diego Coast Regional Commission from 1978 to 1981. From 1982 to 2006, Mr. Cohelan served the San Diego Superior Court as a Judge Pro Tem, hearing and ruling on hundreds of matters during his service.

Timothy Cohelan was named a "California Lawyer of the Year" by California Lawyer Magazine (Clay Award) in 1996. Mr. Cohelan's memberships include former member of the Board of Governors of the Association of Business Trial Lawyers for San Diego County, member of the American Bar Association and the Consumer Attorneys of California and San Diego County Bar Association. His main areas of practice include class action, civil, wage and hour and antitrust cases.

Mr. Cohelan served as the Chair of San Diego Volunteer Lawyer Program, a non-profit successor of Legal Aid, from 2015 through 2018 and currently sits on the Board as past Chair. As an advocate for the homeless, Mr. Cohelan received San Diego County Bar Association honors for community service in connection with his work on behalf of SDVLP on an important class action case impacting homeless shelter locations.

**ISAM C. KHOURY,** Founding Partner, is a 1970 graduate of the University of California at San Diego and received a law degree from Hastings School of Law in 1973. Mr. Khoury is a member of the State Bar of California, admitted in 1974, the San Diego County Bar Association, Consumer Attorneys of San Diego and Consumer Attorneys of California. He has successfully litigated numerous complex civil matters to verdict, jury and non-jury. His main areas of practice include civil tort litigation, personal injury, business torts, antitrust and class action cases.

In recent years, Mr. Khoury has emphasized wage and hour class action matters having assisted in the litigation to judgement or settlement of over 150 wage and hour class actions. The Southern California Super Lawyers Magazine has selected Mr. Khoury as a southern California/San Diego Super lawyer for the years 2011 through 2017. He has been approved as a CLE lecturer and has participated in seminars on class action wage and hour issues, the complexities of mediation, and the procedural requirements involved in class action settlements. He has argued appeals and been co-counsel in several matters of major import including California Supreme Court decisions including the *Brinker* decision clarifying California meal and rest break requirements and *Harris v Liberty Mutual* which defined parameters for the use of the administrative exemption.

**MICHAEL D. SINGER**, Managing Partner, is a 1984 graduate of U.C. Hastings Law School. He graduated magna cum laude from San Francisco State University in 1980 with a B.A. in English. He was admitted to the State Bar of California in 1984 and the State Bar of Colorado in 2001. For over thirteen years, he served as co-chair and liaison to the California Employment Lawyers Association (CELA). He is a member of the San Diego County Bar Association. He is the author of the opening chapter overview on California wage and hour law and PAGA Claim chapter in *California Wage and Hour Law: Compliance and Litigation* (CEB 2010-2019). He was named to the Daily Journal 2012, 2013 and 2018 list of the Top California Labor and Employment Attorneys. Mr. Singer serves on the Legal Aid at Work Board of Directors. His main areas of practice include employment wage and hour, consumer, and unfair competition class actions and appellate practice.

Mr. Singer regularly contributes amicus curiae briefs on class action and employment issues in the California Supreme Court and Courts of Appeal. In his capacity as Amicus lesion for CELA, he coordinated, drafted or co-drafted amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions in the following cases since January 1, 2008: *Chindarah v. Pick up Stix*, 171 Cal. App. 4th 796 (2009), California Superior Court Case No. S171864 [regarding propriety under Labor Code section 206.5 and California Rules of Court of settling with absent class members without court supervision prior to class certification] (Supporting Petition for Review; Review Denied); *Lu v Hawaiian Gardens Casino*, California Supreme Court Case No. S171442 [whether a private cause of action exists under the Labor Code for tip pooling

violations](Review Granted); *Brinkley v Public Storage*, 198 P.3d 1087 (2009), California Supreme Court Case No. S168806 [denying class certification of rest and meal period claims](Review Granted); *Estrada v. Fedex Ground Package System*, 154 Cal. App. 4th 1 (2007), California Supreme Court Case No. S156595 [judgment finding drivers entitled to expense reimbursement] (supporting opposition to Review; Review denied); *Group Brewer v Premier Golf*, 168 Cal. App. 4th 1243 (2008), California Supreme Court Case No. 169666 [holding punitive damages unavailable in connection with wage claims] (supporting Petition for Review; Review Denied); *Christler v. Express Messenger*, California Supreme Court Case No. S171439 [jury verdict finding employees independent contractors] (supporting Petition for Review; Review Denied); *Watkins v. Wachovia*, 172 Cal. App. 4th 1576 (2009), California Court of Appeal Case No. B199982 [affirming dismissal of appeal following denial of class certification based on employee severance agreement resolving claims] (depublication request pending); *Ghazaryan v. Diva Limousine*, 169 Cal. App. 4th 1524 (2008), California Court of Appeal Case No. B201509 [reversing class certification denial] (publication request granted); *Bufil v Dollar Financial Group*, 162 Cal. App. 4th 1193 (2008), California Court of Appeal Case No. A118143 [reversing certification denial of meal period claims applying collateral estoppels] (publication request granted); *Kurian v. U.S. Mortgage Capital*, California Court of Appeal Case No. B201013 [regarding propriety of wage compromises under Labor Code section 206.5] (publication request denied); *BCBG Overtime Cases*, 163 Cal. App. 4th 1293 (2008), California Supreme Court Case No. S165348 [propriety of defendant bringing preemptive motion to deny class certification] (depublication request denied); *Kenny v Supercuts*, 252 F.R.D. 641 (2008), United State District Court Case No. C 06-07521 CRB; *Salazar v Avis*, 251 F.R.D. 529 (2008), United State District Court Case No. 07-CV-0064-IEG-WMC [denying certification of rest and meal period claims] (request that 9th Circuit Court of Appeals certify question to the California Supreme Court denied); and *Methodist Hospital v Superior Court*, California Court of Appeal Case No. B208295 [ruling a private right of action exists for rest and meal period claims under Labor Code section 226.7] (supporting opposition to Petition for Writ; Writ denied), among many others.

Mr. Singer is a contributor to the Los Angeles Daily Journal, having authored articles on the California Court of Appeal decision in *Parris v. Superior Court* regarding communications with absent class members (May, 2003), SB 796 (Dunn, D-Garden Grove), California's Private Attorneys General Law providing employees a private right of action against employers for civil penalties under the Labor Code (October 2003), the California Court of Appeal decision in *Bell v. Farmers Ins. Exch*. and its guidance for the use of statistical sampling and extrapolation to prove aggregate class-wide damages (February 2004), and the then-pending Supreme Court decision regarding Sav-On and Overtime Class Suits.

He is an MCLE lecturer on class action procedure and wage and hour issues and has argued appeals in the Second, Third, and Ninth Federal Circuit Courts of Appeals, as

well as the Second and Fourth California District Courts of Appeal. Published decisions include *Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908 (reversing the denial of certification of a class of home buyers for construction defects); *Hicks v. Superior Court* (2004) 115 Cal.App.4th 77 (challenging implied construction warranty disclaimers); *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856 (defending challenge to attorney disqualification); and *Save Our NTC, Inc. v. City of San Diego* (2003) 105 Cal.App.4th 285 (challenging private development of former naval training center). He also contributed to the briefing of *Aguilar v. Atlantic Richfield, et al.* (2001) 25 Cal.4th 826 (summary judgment of antitrust claim of certified class of 20 million California drivers). He is one of the very few attorneys in the State of California to have tried a wage and hour class action involving contested procedures regarding the use of sampled and statistical evidence.

**DIANA M. KHOURY,** Partner, received a law degree from Western State University in 1986 and is a graduate of San Diego State University, where she received her Bachelors of Science degree in 1975. She is a member of the State Bar of California, admitted in 1987. Since admission to the bar, Ms. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, American Bar Association and the American Association of Justice. From 2010 through 2016, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego. Since 2013, Ms. Khoury has served on the Board of Directors for the San Diego County Bar Foundation, ("SDCBF"), the 501(c) (3) charitable arm of the San Diego County Bar Association. Ms. Khoury has been selected by her peers based on ethics, experience and reputation as a "Super Lawyer" in Civil Litigation from 2010 through the present by the Southern California Super Lawyers Magazine, and is also AV-Preeminent rated by Martindale –Hubbell, the highest possible rating for a lawyer.

Upon being admitted to the State Bar of California, a major focus of Ms. Khoury's practice has been on consumer rights litigation, and has included civil tort litigation, personal injury, and business torts. Throughout her career, she has taken numerous jury trials to verdict. She has been a lecturer for Mandatory Continuing Legal Education regarding class actions. Ms. Khoury currently represents employees in wage and hour class actions, where her recognized specialty is class action resolution.

**JEFF GERACI,** Partner, is a 1982 graduate of Pitzer College with a degree in Sociology. He is a 1990 graduate of the University of San Diego School of Law, and has practiced employment law for over seventeen years. He has handled matters in California state and federal trial and appellate courts, and before many administrative agencies, including the California Division of Labor Standards Enforcement, the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, the California State Personnel Board, the California Board of Psychology, and the California State Commission for Teacher Credentialing.

Mr. Geraci has provided counseling and representation in all areas of employment law, including wrongful termination, employment discrimination, sexual harassment, and wage and hour laws. His practice is now focused on class actions, including wage and hour class action litigation and consumer actions.

Mr. Geraci's published decisions include *McAlindin v. County of San Diego* (1999) 192 F.3d 1226 [reversing summary judgment in a disability discrimination case] and *Araiza v. National Steel and Shipbuilding* (S.D. Cal. 1997) 973 F. Supp.  963 [denying mandatory arbitration of employment claims under a collective arbitration agreement].

Mr. Geraci is a member of the Labor and Employment Law sections of the California and San Diego County Bar Associations, and has served as Editor of the Employment Law column for the Consumer Attorneys of San Diego monthly publication, *Trial Bar News*. He is a past recipient of the Wiley W. Manuel Award for Pro Bono Service.

**J. JASON HILL**, Partner, is a 1992 graduate of the University of Illinois at Urbana-Champaign and holds a B.A. in Philosophy, Political Science and Communications. In 1995, he received his J.D. degree from California Western School of Law, where he was a member of the Law Review an International Law Journal, as well as editor of the Telecommunications Law Forum. Currently, Mr. Hill is admitted to the bar in both California and Illinois, and is a broker licensed by the California Department of Real Estate. He maintains memberships not only with the San Diego County Bar Association, but also the National Association of Realtors, the California Association of Realtors and the San Diego Association of Realtors.

Prior to joining Cohelan Khoury & Singer, Hill represented large institutional clients in a variety of civil litigation settings, including insurance coverage, employment law, health care law, general and professional liability, as well as, premises and product liability claims. He has particular emphasis on all aspects of professional liability claims in a healthcare setting, as well as claims brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) and the Elder Abuse and Dependent Adult Civil Protections Act (EADACPA). Mr. Hill is also an accomplished appellate practitioner and has briefed and/or argued over 40 matters in both state and federal courts of appeal, yielding several published decisions on a range of legal issues.

**MARTA MANUS**, Attorney, is a 2008 graduate of California Western School of Law. She graduated with honors and received a Bachelor of Arts in Psychology from California State University Northridge. Ms. Manus has been a member of the State Bar of California since her admission in December 2008. She has practiced before all District Courts in the state of California as well as the Fourth District Court of Appeal and the U.S. Court of Appeals for the Ninth Circuit.

Ms. Manus has been successfully litigating employment law cases for nearly a decade, representing employees in all aspects of labor and employment law matters, including employment discrimination, wrongful termination, retaliation, and wage and hour class action lawsuits. Her practice focuses primarily on employee-side wage and hour class actions. Ms. Manus is a member of the Labor and Employment Law sections of the California and San Diego Bar Associations as well as the Federal Bar Association. Ms. Manus was recognized by San Diego Super Lawyers as a Rising Star in 2015, 2016, and 2017.

**KRISTINA DE LA ROSA**, Attorney, was born and raised in San Diego. She graduated from UC San Diego in 2006 with a B.A. in Psychology, where she was also a 4- year member of the Women's NCAA intercollegiate soccer team. She received her law degree from Santa Clara Law School in 2011 and was admitted to the California State Bar in the same year.

During law school, she interned for Equal Rights Advocates, the ACLU of Southern California, and externed for the Hon. John F. Herlihy (Ret.). She volunteered for the Katherine and George Alexander Community Law Center Workers' Rights workshops and earned the Witkin Award for Excellence and the Richard S. Rosenberg Prize for Excellence in Labor Law. Immediately after passing the bar, she began representing employees in class action wage and hour litigation. She also volunteered for the California Rural Legal Assistance, Inc., assisting farm workers with filing wage and worker's compensation claims. Ms. De La Rosa remains committed to protecting employee rights and represents employees and consumers in class and collective actions across California, helping them recover millions of dollars in unpaid wages, restitution and penalties. Ms. De La Rosa is a member of CELA.