1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL H. STODDART, et al.,                No.  2:12-cv-01054-KJM-CKD

12                  Plaintiffs,

13        v.                                       ORDER

14   EXPRESS SERVICES, et al.,

15                  Defendants.

16

17

18            Plaintiff Michael Stoddart ("Plaintiff") brings this putative class action against

19   defendants Express Services, Inc. ("Express"), Phillips & Associates, Inc. ("Phillips"), and

20   Western Wine Services, Inc. ("Western Wine"), alleging several California Labor Code

21   violations.  *See generally* Second Am. Compl. ("SAC"), ECF No. 94.  On March 9, 2018,

22   plaintiff first moved for preliminary approval of class action settlement.  Prelim. Approval of

23   Class Action Settlement Mem. P. & A. ("Pl.'s Mem. I"), ECF No. 156.  The motion was

24   unopposed, but Elaine Martin ("Martin"), a named plaintiff in a related wage and hour class

25   action pending in Solano County Superior Court, requested leave to file an amicus brief in

26   opposition to plaintiff's motion.  Ex Parte Appl., ECF No. 158.  On May 18, 2018, the court held

27   a hearing regarding both the settlement approval and ex parte application and granted Martin's

28

1

1    request for leave to file her brief.  Hr'g Minutes, ECF No. 164.  For the reasons discussed below,

2    the court GRANTS plaintiff's second motion for preliminary approval of class action settlement.

3    I.      BACKGROUND

4            A.      Factual and Procedural Background

5                    To review, Express provides staffing, job placement, human resource, consulting

6    and related services to businesses worldwide.  SAC ¶ 2.  Phillips is a California corporation and

7    franchisee of Express.  *Id.* ¶ 3.  Defendant Western Wine contracts with Express for temporary

8    service employees.  *Id.* ¶ 4.

9                    Express formerly employed plaintiff in Vallejo, California, and assigned him to

10   work for Western Wine.  *Id.* ¶ 5.  Plaintiff alleges Express and Phillips systematically violated

11   employment laws by not providing legally mandated off-duty meal periods, failing to pay

12   overtime at the correct rate, issuing inaccurate and non-compliant wage statements, failing to pay

13   meal period premiums and failing to provide all wages due upon separation of employment.  *Id.*

14   ¶¶ 11, 33, 70, 77, 88, 95, 102.  In early 2012, plaintiff brought a putative class action in state court

15   for damages and injunctive relief.  Compl., ECF No. 1-1, at 4.  A month later, Express removed

16   the case to this court.  Not. of Removal, ECF No. 1.  The parties thereafter attended mediation

17   and in 2014 reached a tentative class-wide settlement, but Express's Board of Directors rejected

18   it.  Not. Re: Status of Settlement, ECF No. 42, at 2.  As the docket reflects, the case proceeded in

19   this court with significant motion practice, including discovery motion practice.  *See* ECF Nos.

20   44-148.

21                   On February 1, 2019, the court denied plaintiff's motion for preliminary approval

22   of the class action settlement, finding plaintiff had not demonstrated the putative class can be

23   certified under Rule 23 and the proposed agreement was fair, reasonable and adequate.  Order,

24   ECF No. 174.  On August 2, 2019, the parties filed a joint status report advising the court they

25   were in the process of revising the Settlement Agreement and requesting the deadline for filing a

26   renewed motion for preliminary approval be December 19, 2019.  Joint Status Report, ECF No.

27   176, at 2.  The December date reflected that *Calbee North America Wage and Hour Cases*,

28   Solano County Superior Court Coordinated Case No. FCS044527, was set for mediation on

1    November 20, 2019, and plaintiff believed the outcome of the *Calbee* mediation might impact the

2    revised Agreement as well as the contents of plaintiff's renewed Motion for Preliminary

3    Approval.  *Id.*  The court granted this request and plaintiff filed a renewed motion for preliminary

4    approval of class action settlement on December 19, 2019.  Prelim. Approval of Class Action

5    Settlement Mem. P. & A. ("Pl.'s Mem. II"); ECF No. 178.  On February 7, 2020, the court held a

6    hearing on the renewed motion for preliminary approval of the class action settlement.

7          B.      Proposed Settlement Agreement

8                 After a contentious eight years, the parties returned to the mediation in 2017 and

9    reached a settlement agreement.  Decl. of Graham S.P. Hollis ("Hollis Decl.") ¶ 6, ECF No. 178-

10   3; Stip. & Settlement ("Proposed Agreement"), ECF No. 178-2, at 16.  That agreement is

11   reviewed below.

12                1.      Gross Settlement Amount

13                Under the Proposed Agreement, Settlement Defendants Express and Phillips

14   would make a $10 million gross payment to the claims administrator, Rust Consulting, Inc.

15   Proposed Agreement §§ I.21, III.7.  The administrator would allocate the gross settlement as

16   follows:

17      (1) An amount not to exceed $2,500,000, one-fourth of the gross settlement, for class counsel

18          as attorneys' fees.  *Id.* § III.8.

19      (2) An amount not to exceed $70,000 for class counsel in litigation costs.  *Id.* § III.8.

20      (3) An amount up to $10,000 for plaintiff in consideration of his work as the named plaintiff.

21          *Id.* § III.4.

22      (4) An amount currently estimated at $365,066 to the claims administrator, Rust Consulting.

23          *Id.* § III.9.

24      (5) A $50,000 California Private Attorneys General Act of 2004 ("PAGA") penalty, with 75

25          percent ($37,500) paid to the California Labor and Workforce Development Agency and

26          25 percent ($12,500) to the PAGA group.  *Id.* §§ I.30, I.8 (PAGA group includes those

27          "class members who worked assignments during the period March 23, 2011 through

28          December 31, 2017").

3

1    (6) Any applicable tax withholding would be applied as required, not to include the

2        employer's share of FICA, FUTA and SDI contributions on the portion of the settlement

3        payments attributed to wages. *Id.* § I.22.

4          2.    Net Settlement Amount

5        Accounting for all proposed distributions described above, plaintiff estimates a net

6    settlement amount of $7,017,434.  Decl. of Isam C. Khoury ("Khoury Decl.") ¶ 29, ECF No.

7    178-2.  The Settlement Parties propose distribution of the net settlement in payments to class

8    members who do not request exclusion from the settlement based on the number of weeks worked

9    during the period of March 13, 2008 through December 31, 2017, as 10 percent wages and

10    90 percent interest and penalties.  Proposed Agreement § III.12.  The range of expected payments

11    is referenced below.

12          3.    Changes Since Court's Prior Order

13        As plaintiff noted in the renewed motion for preliminary approval, the court

14    previously addressed the concerns of Ms. Martin, the objector to the settlement, in its order

15    denying plaintiff's first motion for preliminary approval.  Pl.'s Mem. II at 8 n.1.  The parties

16    represent they have resolved Ms. Martin's concerns in November 2019 and have apprised her of

17    the intervening events.  *Id.*  She has not filed anything further with the court.  The parties have

18    also limited the release of the PAGA claims in the agreement to only those clients plaintiff named

19    in plaintiff's letters to the Labor and Workforce Development Agency.  *Id.* (citing Proposed

20    Agreement § III at ¶ 3).

21    II.    LEGAL STANDARDS

22        A.    Preliminary Class Certification and Approval of Settlement under Rule 23

23          1.    Preliminary Class Certification

24        Although Rule 23 of the Federal Rules of Civil Procedure does not expressly

25    provide for preliminary class certification, district courts often certify settlement classes on a

26    preliminary basis for settlement purposes, deferring final class certification until the court holds a

27    final fairness hearing.  *See, e.g., Aguilar v. Wawona Frozen Foods*, No. 1:15-CV-00093-DAD-

28    EPG, 2017 WL 117789, at *7 n.9 (E.D. Cal. Jan. 11, 2017) (citations omitted).

1         Whenever it reviews class certification, the court owes "undiluted, even

2    heightened, attention" to certification requirements in the settlement context.  *Amchem Products,*

3    *Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003),

4    *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *see*

5    *Berry v. Baca*, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (the

6    parties cannot merely "agree to certify a class that clearly leaves any one requirement

7    unfulfilled").  Preliminary certification is appropriate only if each Rule 23(a) certification

8    prerequisite is satisfied.  Rule 23 requires that the class contain enough members; the suit

9    involves questions common to all class members; plaintiff's claims are typical of the class

10   members; and plaintiff and his counsel fairly and adequately protect the class interests.  Fed. R.

11   Civ. P. 23(a)(1)–(4).  If Rule 23(a)'s threshold requirements are met, the proposed class must

12   satisfy Rule 23(b)(3)'s predominance and superiority requirements.  Fed. R. Civ. P. 23(b)(3); *see*

13   *Amchem*, 521 U.S. at 615.

14           2.      <u>Preliminary Settlement Approval</u>

15        Rule 23 mandates that "[t]he claims, issues, or defenses of a certified class . . . may

16   be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ.

17   P. 23(e).  "Courts have long recognized that settlement class actions present unique due process

18   concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

19   946 (9th Cir. 2011) (citation and internal quotation marks omitted).  When parties seek approval

20   of a settlement agreement negotiated prior to formal class certification, "there is an even greater

21   potential for a breach of fiduciary duty owed the class during settlement."  *Id.*  Accordingly, the

22   reviewing court analyzes such agreements with "a more probing inquiry" for evidence of

23   collusion or other conflicts of interest than normally required under the Federal Rules.  *Hanlon v.*

24   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*

25   *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Bluetooth*, 654 F.3d at 946. "Judicial review

26   must be exacting and thorough."  Manual for Complex Litigation (Fourth) § 21.61 (2004).

27        There is a "strong judicial policy" favoring settlement of class actions.  *Class*

28   *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, to protect absent

class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits the claims of a certified class to be "settled . . . only with the court's approval" and "only after a hearing and only on a finding [that the agreement is] fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e). To determine whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including: (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (noting, at preliminary approval stage, courts consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . . .") (citations omitted).

These factors substantively track those effected through 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

6

1    (D) the proposal treats class members equitably relative to each other.

2    Fed. R. Civ. P. 23(e)(2)(A)−(D).  The Rule 23(e)(2) factors took effect on December 1, 2018 and,

3    as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own

4    vocabulary for expressing [] concerns" regarding whether a proposed settlement is fair,

5    reasonable and adequate.  Fed. R. Civ. P. 23(e)(2) advisory committee's note.  Accordingly, the

6    newly codified factors are not intended "to displace any factor, but rather to focus the court and

7    the lawyers on the core concerns of procedure and substance that should guide the decision

8    whether to approve the proposal."  *Id.*; *see also* 4 Newberg on Class Actions § 13:14 (5th ed.

9    2011) (noting Rule 23(e) "essentially codified [federal courts'] prior practice").  Moreover, the

10   Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the

11   court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Fed. R.

12   Civ. P. 23(e)(2) advisory committee's note.  Accordingly, the court draws on the Ninth Circuit's

13   longstanding guidance and the Rule 23(e)(2) factors as relevant to resolve this motion.

14   III.    DISCUSSION

15       A.    Preliminary Certification of the Class Under Rule 23

16           At the preliminary stage, "[a] court that is not satisfied that the requirements of

17   Rule 23 have been met should refuse certification until they have been met."  Advisory

18   Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).  The court noted in its previous order plaintiff

19   argued then "only in cursory fashion each of Rule 23(a) and (b)(3)'s requirements."  Order at 5

20   (citing Pl.'s Mem. I at 17–19).  The court focused on the problems Ms. Martin highlighted in her

21   amicus brief with respect to commonality and predominance.  Order at 6; *see also* Amicus Curiae

22   Br. in Opp'n to Mot. for Prelim. Approval of Class Action Settlement ("Amicus Br."), ECF No.

23   158 at 7.

24           As noted, the court previously found plaintiff did not adequately explain

25   commonality at the time of his initial motion.  And defendants still "contend Plaintiff could not

26   prevail on certification because the variances in job placement locations and job positions would

27   create individual issues."  Pl.'s Mem. II at 10.  The court probed the commonality requirement of

28   Rule 23 at hearing, following which plaintiff, as directed, provided supplemental briefing on the

1    commonality requirement.  Suppl. Br., ECF No. 185.  The court considers the authority presented

2    in plaintiff's supplemental briefing, below.

3                          1.      Rule 23(a)(1)–Numerosity

4            The class must be "so numerous that joinder of all members is impracticable."

5    Fed. R. Civ. P. 23(a)(1).  Here, there are 162,993 putative class members.  Pl.'s Mem. II at 28.

6    Joinder of individual suits for each putative member would not only be impracticable, but

7    essentially impossible.  The numerosity requirement is satisfied.

8                          2.      Rule 23(a)(2)– Commonality

9            To satisfy the commonality requirement, there must be "questions of law or fact

10   common to the class."  Fed. R. Civ. P. 23(a)(2).  Not all questions of fact and law must be

11   common to satisfy the rule.  *Hanlon*, 150 F.3d at 1019.  Only "a single common question" is

12   required.  *Dukes*, 564 U.S. at 359.  But the "claims must depend upon a common contention . . .

13   of such a nature that it is capable of classwide resolution—which means that determination of its

14   truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

15   stroke."  *Id.* at 350.

16           "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-

17   wide practice or policy that affects all of the putative class members.'"  *Franco v. Ruiz Food*

18   *Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012)

19   (internal quotation marks, citation omitted).  Here, the court considers below any

20   "'[d]issimilarities within the proposed class' that 'have the potential to impede the generation of

21   common answers.'"  *Dukes*, 564 U.S. at 350 (alterations in original) (quoting Richard A.

22   Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

23           As noted, the proposed agreement defines the class for settlement purposes as

24   "[a]ll current and former employees of Defendants who worked assignments during the period

25   March 23, 2008 through December 31, 2017."  Proposed Agreement § I.17.  Previously, the

26   court noted plaintiff's allegation, that Express failed to provide inclusive pay-range dates in wage

27   statements, identifies a time period that is not coextensive with the employment period for the

28   putative class.  *See* Order at 7 (citing SAC ¶ 39(a)(v) ("All members of the Express Services

8

1    Class who received one or more itemized wage statements that . . . did not include the inclusive

2    dates of the period for which the employee is paid, *from and after March 13, 2009*." (emphasis

3    added))).  Although "[t]he Court may cure the defects of a proposed class definition where the

4    class is overbroad," *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-cv-00701-AWI-JLT,

5    2013 WL 6844377, at *23 (E.D. Cal. Dec. 23, 2013) (collecting cases), the starting and ending

6    dates here are contained within the Proposed Agreement the Settlement Parties have submitted.

7    In reviewing that agreement, the court notes the dates have been corrected and the wage statement

8    subclass will receive a pro rata share of the net class settlement fund "based on the number of

9    workweeks they worked an assignment during the period March 23, 2009 through December 31,

10   2017."  Proposed Agreement § III.12.

11          With that correction, there are essentially three separate sets of claims in this case,

12   some of which apply to the entire class and some of which apply to only a portion of the class.

13   First, the entire class of employees who worked between March 23, 2008 and December 31, 2017

14   have potential claims revolving around non-compliant meal period policies and failure to pay

15   employees who did not receive a meal period at the correct rate.  Pl.'s Mem. II at 14; Supp. Br. at

16   3.  Second, the employees who worked between March 23, 2008 and December 31, 2017 have

17   potential claims related to (1) Express's failure to calculate overtime rate of pay when employees

18   received a non-discretionary bonus, (2) whether retention and referral bonuses were non-

19   discretionary and warrant inclusion in the regular rate of pay, and (3) a derivative claim for

20   waiting time penalties.  Pl.'s Mem. II at 14.  Finally, the wage-statement sub-class involves

21   claims that Express issued non-compliant wage statements.  *Id.*  The PAGA claims are irrelevant

22   for class certification purposes.  *See Baumann v. Chase Inc. Services Corp.*, 747 F.3d 1117,

23   1122–24 (9th Cir. 2014) ("[U]nlike Rule 23(a), PAGA contains no requirements of numerosity,

24   commonality, or typicality […] Rule 23 and PAGA are more dissimilar than alike.")

25          The court's previous order denying preliminary approval raised doubts about the

26   commonality of the class.  Now, plaintiff alleges the same common questions: "whether

27   Defendants' failure to provide a written meal period policy is unlawful; whether Defendants

28   practice of not including allegedly non-discretionary bonus payments into employees' regular rate

9

1    of pay and failing to include the inclusive dates of the pay period on wage statements violate

2    California law."  Pl.'s Mem. II at 28; SAC ¶¶ 42–56, 75–80, 87–95.  And in its initial motion,

3    plaintiff did not appear to provide any meaningful answer to the court's previous determination

4    that he had not adequately supported commonality.  Pl.'s Mem. II at 28.  Rather plaintiff simply

5    stated, sweepingly, that answering these questions "would resolve class-wide issues in 'one

6    stroke.'"  *Id.* (citing *Dukes*, 564 U.S. at 359).  As directed by the court, plaintiff supplemented his

7    briefing, pointing to some additional helpful authority within this circuit on the issue of

8    commonality.  *See generally* Suppl. Br.

9            The leading authority, plaintiff reiterates, is the Supreme Court's decision in *Wal-

10   Mart Stores, Inc. v. Dukes*.  In *Dukes*, the Court held "commonality requires the plaintiff to

11   demonstrate that the class members have 'suffered the same injury.'"  *Dukes*, 564 U.S. at 350

12   (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).  "This does

13   not mean merely that they have all suffered a violation of the same provision of law."  *Dukes*,

14   564 U.S. at 350.  Instead, "same injury" requires a "common contention" that "must be of such a

15   nature that it is capable of classwide resolution—which means that determination of its truth or

16   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

17   *Id.*

18           In his supplemental briefing, plaintiff further analyzes how each of the three

19   potential claims—those related to meal period policies, discretionary or bonus payments, and

20   wage statements—meets the commonality requirement.  Suppl. Br. at 2–4.  Regarding the first

21   claim related to meal period policies, plaintiff argues applying California law will "determine in

22   'one stroke' whether Express' meal period practices, uniformly applied to all of its non-exempt

23   California employees, are lawful."  *Id.* at 3.  Plaintiff compares the meal period cause of action to

24   that of the plaintiff in *Brinker Rest. Corp. v. Superior Ct.*, in which the court held: "Claims

25   alleging that a uniform policy consistently applied to a group of employees in violation of the

26   wage and hour law are of the sort routinely, and properly, found suitable for class treatment."  *Id.*

27   (quoting *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal.4th 1004, 1033 (2012)).  Plaintiff also relies

28   on *Bradley v. Networkers Int'l., LLC,*  in which the state appellate court reversed a denial of class

1    certification because "plaintiff's theory of recovery is based on [defendant's] (uniform) lack of a

2    rest and meal break policy and its (uniform) failure to authorize employees to take statutorily

3    required rest and meal breaks." *Id.* (quoting *Bradley v. Networkers Int'l., LLC*, 211 Cal. App.4th

4    1129, 1150–51 (2012)).  These cases are comparable to this one in terms of the issues raised.  The

5    court agrees they support the court's finding commonality within the class, at least with respect to

6    the meal period claims.

7            Plaintiff does not provide additional legal authority to support his claims of

8    commonality relating to the discretionary payments and wage statement claims, but he does

9    provide additional analysis.  First, plaintiff asserts resolution of the claim regarding whether

10   bonuses are non-discretionary invokes "a common question of law, the answer to which will

11   resolve this claim on behalf of the putative class."  Suppl. Br. 3.  Moreover, plaintiff highlights

12   Express admits this policy "was common to all California employees during a portion of the class

13   period" and the calculation of the overtime rate "was identical as applied to all of Express' non-

14   express employees in California."  *Id.* at 3–4.  With respect to the wage statement subclass,

15   plaintiff argues determining whether the wage statements "comply with the requirements of

16   Labor Code section 226(e) will yield a common legal answer."  Suppl. Br. at 4.

17           Having carefully considered plaintiff's supplemental briefing, the court finds each

18   of plaintiff's claims analyzed here appears capable of a classwide resolution.  As plaintiff

19   demonstrates, each of these claims results from a policy affecting the entirety of the class.  In this

20   way, the claims differ from those of the claims in *Dukes*.  In *Dukes*, putative class members "held

21   a multitude of different jobs, at different levels . . . , for variable lengths of time, in [many

22   locations], . . . with a kaleidoscope of supervisors . . . , subject to a variety of regional policies

23   that all differed."  *Dukes*, 564 U.S. at 359–60 (quoting *Dukes*, 603 F.3d at 652 (Kozinski, C.J.,

24   dissenting)).  Class members here worked for different supervisors and at different franchisor

25   locations, but they were not subject to "a variety of regional policies that all differed" as was the

26   case in *Dukes*.  The court notes, however, the wage statement claims apply to a "subclass" of

27   persons who only worked between March 23, 2009 and December 21, 2017.  Because these

28   claims apply to employees who worked within a different range of dates than the dates for the

1   overall class, these claims are not capable of a "classwide resolution."  But the existence of a

2   subclass does not prevent a class from meeting the commonality requirement.  Fed. R. Civ. P.

3   23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a

4   class under this rule.").

5          Also, while plaintiff points to cases in which previous courts have found

6   commonality for classes making claims similar to those here, plaintiff does not explain whether

7   courts have ruled on cases in which there are separate, but related, issues and claims raised by the

8   entire class.  There are cases finding a class fulfills the commonality requirement even when there

9   are multiple common questions that apply to all capable class members.  For example, one court

10  found the class met the commonality requirement even when there were "numerous questions

11  common to the class: whether Defendants' 'All Natural' representations are false and misleading,

12  whether the Challenged Ingredients may legally be included in a product labeled 'All Natural,'

13  and whether the representations constitute 'unfair' or 'unlawful' practices under the UCL,

14  constitute a breach of warranty, or are likely to deceive reasonable consumers in violation of the

15  FAL, CLRA, and UCL."  *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014).

16  Another found the class met the commonality requirement even when there were separate

17  questions of failure to pay wages and overtime, meal period violations, and rest-break liability.

18  *Ching v. Siemens Industry, Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *1–4 (N.D. Cal.

19  Nov. 27, 2013) (citing *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010)

20  ("common factual questions, such as whether [d]efendants' policies deprived the…class members

21  of meal periods, rest periods overtime pay, and reimbursement.")).  Here, the existence of

22  multiple common questions aligns with the questions raised by the classes in *Lilly* and *Ching*.  As

23  in those cases, the existence of these multiple questions does not preclude the court's finding

24  commonality satisfied.  The class here meets the commonality requirement of Rule 23 for

25  purposes of preliminary approval.

26          3.    Rule 23(a)(3)–Typicality

27          The typicality requirement is satisfied if "the claims or defenses of the

28  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

1   "Measures of typicality include 'whether other members have the same or similar injury, whether

2   the action is based on conduct which is not unique to the named plaintiffs, and whether other

3   class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons*

4   *Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

5   508 (9th Cir. 1992)).  Under this "permissive" requirement, "representative claims are 'typical' if

6   they are reasonably coextensive with those of absent class members; they need not be

7   substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v.*

8   *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

9          Plaintiff alleges that he, along with class members, was subject to the same

10   Express meal period policies or payment of premiums for non-compliant meal periods.  Pl.'s

11   Mem. II at 29.  Because the factual predicates are the same, the claims of the named plaintiff and

12   absent class members are "based on identical legal theories."  *Id.*  Nothing indicates plaintiff's

13   claims differ from those of the class.  As a result, the class meets the typicality requirement,

14   preliminarily.

15              4.      Rule 23(a)(4)–Adequacy

16          The adequacy requirement is satisfied only if the representative plaintiffs "will

17   fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts must

18   consider whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with

19   other class members and (2) [] the named plaintiff and their counsel [will] prosecute the action

20   vigorously on behalf of the class[.]"  *Hanlon*, 150 F.3d at 1020.  "Serious conflicts of interest can

21   impair adequate representation by the named plaintiffs, yet leave absent class members bound to

22   the final judgment, thereby violating due process."  *In re Volkswagen 'Clean Diesel' Mktg., Sales*

23   *Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018).

24          Plaintiff has participated in this litigation for seven years.  His efforts include

25   answering written discovery, providing a sworn deposition, making himself available during

26   mediation and updating counsel with necessary information.  Michael H. Stoddart Decl. ¶¶ 8–14,

27   ECF No. 178-4.  Plaintiff's interest appears to be aligned with those of the class; nothing in the

28   record currently before the court suggests otherwise.  As discussed below, the proposed

1   representative award of $10,000 does not appear to incentivize plaintiff to act contrary to the

2   interests of the class as a whole.

3          In addition, plaintiff's counsel has undertaken substantial efforts in this case.

4   *See* Graham P. Hollis Decl., ECF No. 178-3, at 2–3; Khoury Decl., ECF No. 178-2, at 1–13.

5   Mr. Hollis has specialized in employment litigation since 1994 and assisted in reaching

6   settlements in over fifty class action lawsuits with claims similar to those here.  Hollis Decl. ¶¶ 3–

7   4.  Mr. Khoury has practiced law for nearly fifty years and has focused on class action cases,

8   including claims similar to those here, since 1981.  Khoury Decl. ¶ 4.  Plaintiff's counsel

9   participated in the nearly eight years of motion practice in this case, including two motions to

10  dismiss, discovery disputes, and two mediations; counsel also avers litigation expenses reached

11  approximately $70,000.  Khoury Decl. ¶¶ 15–27.   The court is satisfied counsel on this record

12  has prosecuted the action vigorously on behalf of the class to date.

13          5.        Rule 23(b) –Superiority

14          The court must also be satisfied "that a class action is superior to other available

15  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The

16  superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the

17  particular class action procedure will be achieved in the particular case," which "necessarily

18  involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*,

19  150 F.3d at 1023 (citation omitted).

20          Here, as noted above, individual resolution of each class member's dispute would

21  require 162,993 separate lawsuits.  Pl.'s Mem. II at 28.  Moreover, the recovery range of $140 to

22  $1,411.20 for class members in this case is far less than the likely expense of trial, which would

23  make bringing the suits separately undesirable.  Khoury Decl. ¶ 31.  Class action is the superior

24  vehicle for resolving this dispute.

25          6.        Rule 23(b)–Predominance

26          "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

27  sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

28  Although similar to Rule 23(a)'s commonality requirement, the predominance requirement is

14

1   more demanding.  *Id.* at 624; *Dukes*, 564 U.S. at 359.  "When common questions present a

2   significant aspect of the case and they can be resolved for all members of the class in a single

3   adjudication, there is clear justification for handling the dispute on a representative rather than on

4   an individual basis."  *Hanlon*, 150 F.3d at 1022 (quoting Charles Alan Wright, et al.,

5   7AA Federal Practice & Procedure § 1778 (2d ed. 1986)).  But it is important to proceed with

6   "caution when individual stakes are high and disparities among class members great."  *Amchem*,

7   521 U.S. at 625.

8           The court's previous order found the plaintiff had not met its burden of showing

9   common issues predominate.  Order at 8; *see also Vinole v. Countrywide Home Loans, Inc.*,

10  571 F.3d 935, 944 n.9 (9th Cir. 2009) ("The party seeking certification bears the burden of

11  demonstrating that he has met the requirements of Rule 23(b).").  In responding to the court's

12  questioning at hearing and through supplemental briefing, plaintiff has addressed predominance.

13  Although potential class members may have worked at different "client companies," their claims

14  relate to the allegedly unlawful policies and payments of the overall franchisor, Express, and its

15  franchisee who issued wage statements.  Pl.'s Mem. at 29.  As a result, facts relating to each

16  individual class member's experiences supporting specific claims and based on particular

17  supervisors and policies are not as likely to overwhelm predominance.  Instead, the class-wide

18  concerns emanate from a single source, which set the allegedly unlawful policies.  *See Ching v.

19  Siemens Industry, Inc.*, No. C 11-4848-MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 26, 2013)

20  (finding "issues facing the class arise from common questions involving Defendant's calculation

21  and payment of wages and overtime" is "sufficient to satisfy the commonality requirement");

22  *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (holding "common factual

23  questions, such as whether Defendants' policies deprived the putative class members of meal

24  periods, rest periods, overtime pay, and reimbursement" satisfy the commonality requirement).

25  The court finds that class-wide concerns predominate and the class meets this requirement of

26  Rule 23 at this stage.

27  /////

28  /////

B.      Terms of the Proposed Agreement

In light of the court's duty to absent class members, this court opts to "review class action settlements just as carefully at the initial stage as [it] do[es] at the final stage." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016); *see Smothers v. Northstar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019).

Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. Although the court must weigh several factors to approve a settlement, additional factors may be relevant depending on the context of the case and the terms of the agreement.  *See Bluetooth*, 654 F.3d at 946 ("The factors in a court's fairness assessment will naturally vary from case to case . . . .).   In its previous order, the court identified problems with the extent of the release of liability, the lack of information concerning claim value, and provisions of the release of PAGA liability.  Order at 8–9.  Plaintiff has addressed those concerns here.

1.      Claim Form Release

As noted above, the court considered Ms. Martin's concerns regarding the following language in the initial proposed agreement, which included the following language: "Released Claims also include all such claims arising under the California Labor Code." Proposed Agreement § I.32; ECF No. 156-2.  The court acknowledged Ms. Martin's reading of this language did not square with the inclusion of the word "such" in "all such claims arising under the California Labor Code."  Rather, the preceding sentence in the agreement addresses claims "arising from the facts and circumstances in the operative complaint or amendment thereto," and then specifies these claims "includ[e] without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, interest, attorneys' fees, litigation costs, restitution, equitable relief or other relief under Business & Professions Code § 17200, *et seq.*, *based on the following categories*."  Order at 9 (citing Proposed Agreement § I.32 (emphasis added)).  The sentence Martin questioned previously can be read as simply modifying the preceding list and providing further detail about the enumerated releases.

16

1        At the same time, with this reading, the release language appeared duplicative. The

2   release already includes "any and all claims, under federal, state and/or local law, statute,

3   ordinance, regulation, common law, or other source of law, alleged or which could have been

4   alleged, arising from the facts and circumstances in the operative complaint or amendment

5   thereto."  *Id.*  The current proposed agreement does not contain this duplicative, catchall

6   statement.  Proposed Agreement § I.35.  Rather, the agreement lists different categories for the

7   released claims, including descriptions of the allegations supporting the claims and the applicable

8   law, but includes no statement regarding claims arising under the California Labor Code.  *Id.*  It

9   instead references specific claims under the Fair Labor Standards Act, which are included in the

10  release for class members.  *Id.*  Given these changes, the proposed agreement no longer includes

11  the unclear wording.

12                  2.      Gross Settlement Amount

13       Plaintiff previously argued the $10 million settlement represented 40 percent of

14  defendants' total exposure, but the court found it did not have enough information to determine a

15  reasonable valuation of the meal period claim, and plaintiff had not accounted for the value of his

16  other claims.  Order at 10–11 (citing Pl.'s Mem. I at 14).  As a result, the court could not

17  determine if the gross settlement amount was proportionate to the approximate value of recovery.

18  *Cf. Cotter*, 176 F. Supp. 3d at 931 ("Most glaringly, counsel for the plaintiffs pegged the $12.25

19  million settlement figure primarily to the estimated value of the drivers' claim for mileage

20  reimbursement.  But the lawyers estimated the value of the reimbursement claim to be $64

21  million, when in fact, using their own methodology, it is worth more than $126 million.").

22       In the renewed motion for preliminary settlement, plaintiff provides far more

23  extensive information regarding the extent of defendants' liability.  Pl.'s Mem. II at 21–22.  In

24  particular, plaintiff explains his claims against Express for failure to provide meal periods,

25  supporting a damages request totaling approximately $25,314,230.  *Id.* at 22 (citing Khoury Decl.

26  ¶ 48). Plaintiff describes the process he and his counsel used to value the claims against Express

27  during mediation, using a cumbersome method of looking through handwritten time sheets.  *Id.*

28  The settlement reached allows every class member a wage component and a penalty component

17

1  for each week worked at Express.  *Id.*  It is the estimated value of these claims that is

2  approximately $25,314,230.  *Id.*  Plaintiff argues the possibility of not prevailing at trial or on

3  class certification calls for a 75 percent discount of his realistic maximum exposure for settlement

4  purposes, to $6,328,557.50.  *Id.*

5           With respect to defendant's failure to pay overtime wages, plaintiff estimates

6  "class members who received one or more non-discretionary bonuses and worked overtime in the

7  same pay period were owed approximately $631,000 in underpaid overtime wages."  *Id.* at 23.

8  This calculation is based on data provided by defendants in mediation.  *Id.*  Plaintiff estimates the

9  probability of not prevailing at trial supports a settlement of $315,500 as reasonable.  *Id.*

10          The claim for failure to provide accurate itemized wage statements requires an

11  employer to "pay the greater of actual damages, or $50 per employee per pay period for the initial

12  violation and $100 per employee for subsequent violations, not exceeding an aggregate $4,000."

13  *Id.*  Plaintiff estimates potential damages for these violations are $15,243,568, but concedes

14  defendants may have some strong arguments, including that they did not receive notice of an

15  initial violation.  *Id.*  As a result, plaintiff estimates a 75 percent discount of his realistic

16  maximum exposure for purposes of settlement, to $3,810,892.  *Id.*

17          Finally, for the waiting time penalties, plaintiff estimates a penalty of $51,274,802

18  based on 30 days multiplied by the rate of daily pay.  *Id.* at 24.  However, this claim is a

19  derivative claim, and plaintiff concedes defendants would likely be able to establish a good faith

20  defense their failure to pay was not "willful."  *Id.*  Plaintiff discounts the potential maximum

21  exposure by 75 percent for purposes of settlement, to $12,818,700.50.  *Id.*

22          Plaintiff has sufficiently explained several potential impediments to full recovery

23  in this case, and the prospects of plaintiff's losing at trial or on appeal, with all attendant costs,

24  indicates the settlement recovery here is reasonable.

25                  3.      Arm's Length Settlement Negotiations

26          The court also considers whether the parties reached their settlement agreement

27  through arm's length negotiations. Fed. R. Civ. P. 23(e)(2)(B); *In re Tableware Antitrust Litig.*,

28  484 F. Supp. 2d at 1080 (considering whether "proposed settlement appears to be the product of

1  serious, informed, non-collusive negotiations").  Parties' participation in mediation "tends to

2  support the conclusion that the settlement process was not collusive."  *Villegas v. J.P. Morgan*

3  *Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21,

4  2012).

5          Here, the parties participated in mediation on two occasions: first on March 5,

6  2014 and again on September 27, 2017.  Pl.'s Mem. II at 6.  The first mediation was unsuccessful;

7  the second mediation, with a mediator the parties simply identify as Jeffrey Ross, eventually

8  resulted in the parties agreeing upon the principle terms of the proposed settlement.  *Id.*; Khoury

9  Decl. ¶ 25.  This factor weighs in favor of preliminary approval.

10                    4.        Adequate Representation

11         Whether "the class representatives and class counsel have adequately represented

12  the class" and whether "the proposal treats class members equitably relative to each other" also

13  factor into the court's assessment of whether the proposed settlement is fair, reasonable and

14  adequate.  Fed. R. Civ. P. 23(e)(2)(A), (D).  To that end, a proposed agreement should "not

15  improperly grant preferential treatment to class representatives or segments of the class . . . ."  *In*

16  *re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.  Here, plaintiff as the class representative

17  requests a payment of $10,000, in exchange for the release of all claims and for his time and

18  effort prosecuting the matter.  Proposed Agreement § III.4.

19         "An excessive class representative service award may be an indication that the

20  named class member is not adequately representing the interests of the class."  *Flores v. ADT*

21  *LLC*, No. 1:16-CV-00029-AWI-JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citing

22  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013)).  The court

23  ultimately will grant an incentive award only upon receiving "'evidence demonstrating the quality

24  of plaintiff's representative service,' such as 'substantial efforts taken as class representative to

25  justify the discrepancy between [his] award and those of the unnamed plaintiffs.'"  *Flores*, 2018

26  WL 6981043, at *1 (quoting *Reyes v. CVS Pharmacy*, Inc., No. 1:14-CV-00964-MJS, 2016 WL

27  3549260, *15 (E.D. Cal. June 29, 2016)); *In re Online*, 779 F.3d at 947 (court considers

28  "proportion of the [representative] payment[s] relative to the settlement amount, and the size of

1    each payment").  Specifically, this court and others have adopted the following factors to

2    determine whether to approve an enhancement payment: (1) the risk to the class representative in

3    commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties

4    encountered by the class representative; (3) the amount of time and effort spent by the class

5    representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof,

6    enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atl. Richfield Co*.,

7    901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Zakskorn v. Am. Honda Motor Co., Inc*., 2:11-

8    CV-02610-KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015).  This court has found

9    requests of $2,500 per representative, in cases involving three representatives, to be

10   presumptively reasonable.  *See Zakskorn*, 2015 WL 3622990, at *17.  In cases in which the class

11   representative requested an enhancement payment of $10,000, this court has required evidence of

12   substantial effort throughout a protracted case.  *See, e.g. Smothers v. NorthStar Alarm Services,

13   LLC*, No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058, at *12 (E.D. Cal. Mar. 31, 2020)

14   (awarding a $10,000 enhancement payment to each representative plaintiff when they submitted

15   declarations describing their 100 hours of work each).

16          To support his request, Mr. Stoddart provides a declaration to the court detailing

17   his effort in support of this litigation.  Stoddart Decl.  Over the course of seven years, Mr.

18   Stoddart avers he answered written discovery, including 119 requests for production and 21

19   interrogatories, which required extensive research on his part.  *Id*. ¶ 8.  He provided two sworn

20   depositions, made himself available during mediation, and updated counsel with whatever

21   information they needed.  *Id*. ¶¶ 8–14.  Mr. Stoddart assumed this role knowing the risks he could

22   face, both during the litigation and after the litigation with future employers potentially looking

23   askance at his having filed suit here.  *Id*. ¶ 5.

24          The court notes that while the $10,000 award is on the high end of what is

25   typically approved, plaintiff here has demonstrated significant effort throughout the seven-year

26   litigation.  However, at the final approval stage, plaintiff should include analysis of the

27   "proportion of the [representative] payment[s] relative to the settlement amount, and the size of

28   each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947.  At this preliminary

20

1    stage, the information Mr. Stoddart provides suggests he qualifies for the $10,000 award he

2    requests.

3              5.    Attorneys' Fees

4              The court also considers "the terms of any proposed award of attorney's fees,

5    including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).

6              Under Rule 23(h), "[i]n a certified class action, the court may award reasonable

7    attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

8    Fed. R. Civ. P. 23(h).  In diversity actions, state law governs both counsel's right to fees and the

9    method for calculating fees.  *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.

10   1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to

11   fees, but also in the method of calculating the fees."); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6

12   (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control

13   whether an attorney is entitled to fees and the method of calculating such fees.").

14             "[B]oth state and federal courts consider similar tests to evaluate the

15   reasonableness of the fees requested from a settlement fund."  *Flores v. ADT LLC*, No. 1:16-CV-

16   0029-AWI-JLT, 2018 WL 1062854, at *12 (E.D. Cal. Feb. 27, 2018), *report and*

17   *recommendation adopted as modified*, No. 1:16-CV-00029-AWI-JLT, 2018 WL 6981043 (E.D.

18   Cal. Mar. 19, 2018).  California courts have discretion to rely on either a percentage of the

19   recovery or lodestar approach, with "the goal under either . . . approach being the award of a

20   reasonable fee to compensate counsel for their efforts."  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.

21   5th 480, 504 (2016)); *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (quoting *Fischel v.*

22   *Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("To calculate the fee in a

23   common-fund case, the district court 'has discretion to apply either the lodestar method or the

24   percentage-of-the-fund method in calculating a fee award.'")).

25             The Ninth Circuit has generally set a 25 percent benchmark for the award of

26   attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows

27   special circumstances justifying a departure."  *Ontiveros*, 303 F.R.D. at 372 (internal quotation

28   marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942).  The Ninth Circuit has also approved the

1    use of lodestar cross-checks to determine the reasonableness of a particular percentage recovery

2    of a common fund.  *Seguin v. Cty. of Tulare*, No. 1:16-CV-01262-DAD-SAB, 2018 WL 1919823,

3    at *6 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

4            Here, defendants have agreed not to oppose any motion by plaintiff's counsel for

5    attorneys' fees "not in excess of 25 percent (25%), of $2,500,000 of the Gross Settlement

6    Amount, as well as an additional amount for actual litigation costs, not to exceed $70,000."

7    Proposed Agreement § III.8.  Such a clear sailing provision raises a red flag as its benefit accrues

8    primarily to counsel as opposed to the class. While this does not preclude preliminary approval,

9    the court ultimately will conduct a "lodestar cross-check" in the final fairness hearing to

10   determine whether the request is reasonable.  *See Ogbuehi*, 303 F.R.D. at 352.

11           Plaintiff's counsel has submitted declarations to the court describing their work on

12   this case, as well as their experience in this area of the law.  *See* Hollis Decl. at 2–3; Khoury Decl.

13   at 1–13.  As Mr. Khoury represents in his declaration, counsel will "detail the hours expended and

14   the litigation expenses advanced" in their motion for final approval of attorneys' fees and costs.

15   Khoury Decl. ¶ 56.  To allow the court to conduct the lodestar cross-check as planned, plaintiff's

16   counsel will need to provide a breakdown of their hourly rates, hours expended by each attorney,

17   and what work occurred within those hours.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D.

18   245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation

19   need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries

20   submitted by the attorneys and need not review actual billing records.'") (citation omitted)).

21   Additionally, in performing the lodestar cross-check, the court will multiply the hours expended

22   on the litigation by the prevailing local rate for an attorney of the skill required to perform the

23   litigation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  Plaintiff's

24   counsel may wish to consider including evidence demonstrating how their hourly rates compare

25   to rates approved by courts in this district for practicing in this area of the law.

26           6.      Notice

27           "The court must direct notice in a reasonable manner to all class members who

28   would be bound by the propos[ed] [settlement] . . . ."  Fed. R. Civ. P. 23(e)(1)(B).  Under Rule 23's

                                            22

provision for notifying class members of class certification, the notice must state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i).  Furthermore, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  "In a Rule 23(b)(3) class, the notice and any Internet Web site should include opt-out forms." Ann. Manual Complex Lit. § 21.312 (4th ed.). "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, the proposed notice of settlement includes the necessary background information about the nature of the action, the class itself, as well as the process that led to the proposed settlement.  Khoury Decl., Ex. 1, Notice, at 54.

The notice does not explicitly mention that a class member may enter an appearance through an attorney if the class member so desires.  The notice asks: "**<u>Who are Attorneys for the Parties?</u>**", then lists the contact information for plaintiff's counsel and counsel for defendants and states class members can contact plaintiff's counsel if they have questions about the settlement.  *Id.* at 55 (emphasis in original).  The notice then discusses how a class member may "pursue a separate lawsuit, with a separate attorney at your own expense" should a

23

1   class member want to get out of the settlement.  *Id.* at 59.  These provisions could give lay class

2   members the impression they could only be represented by an independent attorney if they opt-

3   out of the settlement.  As a result, the court finds the notice deficient in this respect.

4          Plaintiff has provided an opt-out form for class members to complete and return

5   should they wish to opt out of the settlement.  *Id.*  The opt-out form provides clear instructions

6   regarding the process for opting-out, including the address class members should return the form

7   to, and the notice also describes the difference between opting-out and objecting to the settlement,

8   as well as the separate processes for each.  *Id.* at 59–60.  The notice correctly informs class

9   members when counsel and plaintiff will file their respective motions for attorneys' fees and costs

10  and an incentive award, and where and how class members may review those documents.  *Id.*

11  Importantly, the class members may review the relevant documents on the claim administrator's

12  website and the notice provides guidance on how to do so.  *Id.* at 61.

13         The proposed notice is reasonable in all respects, except for clarifying class

14  members' ability to appear with an attorney.  Because this deficiency is easily correctable, the

15  court will GRANT approval of the form of the notice, contingent on the filing within fourteen

16  days of a corrected notice.

17        C.    <u>PAGA Settlement</u>

18         The court must also consider whether the proposed PAGA settlement is adequate

19  to serve the public interest.  When plaintiffs bring a PAGA action, they do so as the "proxy or

20  agent of the state's labor law enforcement agencies, . . . who are real parties in interest."  *Sakkab*

21  *v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015).  Any PAGA judgment binds

22  not only members of the class, but similarly situated workers who opt out of the class and the

23  state's labor law enforcement agencies.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014).

24  "[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to

25  their fellow aggrieved workers who are effectively bound by any judgment."  *O'Connor v. Uber*

26  *Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp.*

27  *Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

28

1      A court analyzing the compromise of a PAGA claim must consider whether the

2  settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies

3  underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133. (citation omitted); *Haralson v. U.S.*

4  *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 979 (N.D. Cal. June 7, 2019).  In so doing, the court

5  may apply a sliding scale taking account of the Rule 23 class settlement with reference to the

6  PAGA settlement; where "the settlement for the Rule 23 class is robust, the purposes of PAGA

7  may be concurrently fulfilled." *O'Connor*, 201 F. Supp. 3d at 1134.  "By providing fair

8  compensation to the class members as employees and substantial monetary relief, a settlement not

9  only vindicates the rights of the class members as employees, but may have a deterrent effect

10 upon the defendant employer and other employers, an objective of PAGA." *Id.*  However, where

11 the compensation to the class is modest compared to the verdict value, non-monetary relief is of

12 limited benefit to the class, and the settlement does not clarify the rights and obligations of the

13 employees prospectively, the settlement of the non-PAGA claims may not vindicate the interests

14 of PAGA. *Id.* at 1135.  "In these circumstances, the adequacy of settlement as a whole turns in

15 large part on whether the PAGA aspect of the settlement can stand on its own." *Id.*

16      In its renewed motion for preliminary approval, plaintiff addresses the court's

17 previous concerns regarding the release of liability including unnoticed PAGA claims and the

18 inadequate amount of the PAGA settlement.  Order at 12.

19      The previous release of liability included "any and all penalties pursuant to the

20 Private Attorneys General Act ("PAGA") of 2004," Proposed Agreement § I.32.  Order at 11.

21 Previously, plaintiff did not explain how the release of liability can include unnoticed PAGA

22 claims against the Settlement Defendants' many client employers.  *Id.* at 12.  The current

23 proposed agreement no longer includes a release of all unnoticed PAGA claims and instead

24 provides for release of "solely as to Express Services Inc., Phillips & Associates Inc., and

25 Western Wine Services, Inc., all penalties pursuant to the Private Attorneys General Act

26 ("PAGA") of 2004 for the period March 13, 2011 to December 31, 2017 based on the alleged

27 violations of the California Labor Code as set forth in the Complaint and amended complaints and

28 /////

1    Plaintiff's notice to the California Labor and Workforce Development Agency dated July 20,

2    2011 and as amended on February 3, 2012."  Proposed Agreement § 35.

3                    Regarding the proposed PAGA recovery of $50,000, plaintiff argues his maximum

4    exposure is properly highly discounted because Express "changed its meal period policy, bonus

5    payments and format of itemized wage statements during the Class Period" and class members

6    worked many workweeks, not all of which would be entitled to a PAGA penalty.  Pl.'s Mem. II at

7    25.  Moreover, plaintiff has provided the court with authority suggesting the proposed PAGA

8    settlement falls within the range of or is higher than other equivalent settlements.  *See Nen Thio v.*

9    *Genji, LLC*, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) ($10,000 PAGA penalties in $1,250,000

10   gross settlement); *Franco*, 2012 WL 5941801, at *2 ($10,000 PAGA penalties in $2,500,000

11   gross settlement); *Garcia v. Gordon Trucking, Inc*., No. 1:10-CV-0324-AWI-SKO, 2012 WL

12   5364575 (E.D. Cal. Oct. 31, 2012) ($10,000 PAGA penalties in $3,700,000 gross settlement);

13   *Chu v. Wells Fargo Invs., LLC*, No. C 05-4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16,

14   2011) ($10,000 PAGA penalties in $6,900,000 gross settlement.).   Other cases, however, suggest

15   a far greater percentage of the overall settlement may be appropriate for the PAGA penalty here.

16   *See Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-CV-1747-WBS-KJN, 2018

17   WL 746393, at *10 (E.D. Cal. Feb. 6, 2018) (approving 1 percent of gross settlement as PAGA

18   settlement);  *Rodriguez v. RCO Reforesting, Inc.*, No. 2:16-CV-2523-WBS-DMC, 2019 WL

19   331159 (E.D. Cal. Jan. 24, 2019) (6 percent of total settlement as PAGA penalties).  Here, while

20   the difference between the $50,000 proposed PAGA penalty and the gross settlement of

21   $10,000,000 does not prevent the court from approving the settlement preliminarily, at the final

22   approval stage, plaintiff should provide the court with more support explaining why the proposed

23   settlement serves the purposes of PAGA and takes account of these other cases.

24   IV.    <u>CONCLUSION</u>

25                    For the foregoing reasons, the court HEREBY MAKES THE FOLLOWING

26   DETERMINATIONS AND ORDERS:

27       1.   The court finds, on a preliminary basis, that the Settlement Agreement incorporated in full

28             by this reference and made a part of this order granting preliminary approval has no

obvious deficiencies which could not be corrected by the time of final approval, does not improperly grant preferential treatment to the class representatives or segments of the class, and appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this court. The court notes defendants agreed to pay the non-reversionary maximum settlement amount of $10,000,000 in full satisfaction of the claims as more specifically described in the settlement agreement.

2. The court also finds that, on a preliminary basis, the Settlement is fair, just, adequate, and reasonable to all members of the Class when balanced against the probable outcome of further litigation relating to class action certification, liability and damages issues, and potential appeals of rulings. Good cause appearing, the motion for preliminary approval of class action settlement is GRANTED.

3. As part of preliminary approval, the court finds for settlement purposes only, that the class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and conditionally certifies the class for the purposes of settlement as:

> All current and former employees of Defendants who worked assignments during the period March 23, 2008 through December 31, 2017.

4. The court approves and appoints plaintiff Michael Stoddart the class representative.

5. The court approves and appoints Graham Hollis, APC and Cohelan, Khoury, and Singer as class counsel.

6. The court approves and appoints Rust Consulting, Inc. as the settlement administrator to administer the settlement according to the terms of the settlement agreement.

7. The court finds the proposed class notice and the proposed method of dissemination reasonably and adequately advises the class of the information required by Federal Rule of Civil Procedure 23(c)(2)(B), with the exception of the need to clarify class members' right to make an appearance with an independent attorney, as discussed above. The court APPROVES the proposed class notice CONTINGENT ON the filing within fourteen days of an updated proposed notice correcting this deficiency.

8. The court finds the mailing to the class members' present and last known address, with safeguards to perform reasonable skip traces of returned as undeliverable Notice Packets, constitutes an effective method of notifying class members of their rights with respect to the proposed settlement. Accordingly, it is hereby ORDERED that:

   a. No later than fourteen days from the court's issuance of a minute order confirming the court's acceptance of the updated notice required in (7) above as satisfying the contingency and resulting approval of the proposed class notice, defendants shall forward to the appointed administrator the class data as provided for by the terms of the settlement agreement.

   b. No later than 21 days after receipt of the class data, the administrator shall mail the Notice Packets to each class member, by first class United States mail, postage pre-paid.  The exterior of the mailing envelope shall include the following language below the administrator's address:

> <u>Important Legal Document:</u>
> You may get Money from a Class Action
> Settlement; your prompt reply to correct a
> Bad address is required

9. IT IS FURTHER ORDERED that:

   a. Requests for Exclusion:  Requests for exclusion from the settlement must be mailed to the administrator at the address provided for in the class notice, postmarked no later than 45 days from the initial mailing of the Notice Packets to the class.  If the notice response deadline falls on a Saturday or federal holiday, it will be extended to the next day when the U.S. Postal Service is open.

   b. Objections: Notices of objection to the settlement may be mailed to the settlement administrator at the address shown in the class notice, by first class U.S. mail on or before the notice response deadline.  Any written notice of objection should be signed by the class member and/or his or her representative; including the objecting class member's name, address, telephone number, the last four digits of his/her Social Security number or full employee ID number, the case name and

number as shown in the class notice, the basis for each objection, and whether or not the class member intends to appear at the final approval hearing.  Class members may also appear at the time of the final approval hearing to make any objections they may have.

10. IT IS FURTHER ORDERED that within fourteen days of the notice response deadline, class counsel shall file their application for awards of reasonable attorneys' fees and litigation expenses, the class representative service payments, and the administrator's expenses.

11. IT IS FURTHER ORDERED that all papers in support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight calendar days before the final fairness/final approval hearing.

12. IT IS FURTHER ORDERED that all papers I support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight calendar days before the final fairness/final approval hearing.

13. The final approval hearing shall be held before the undersigned at a date to be noticed in the motion for final approval.

14. IT IS FURTHER ORDERED that if, for any reason, the court does not execute and file an order granting final approval and judgment, or if the effective date, as defined by the settlement agreement, does not occur for any reason whatsoever, the settlement agreement and the proposed settlement subject of this order and all evidence and proceedings had in connection therewith, shall be null and void and without prejudice to the status quo ante rights of the parties to this litigation as more specifically set forth in the settlement agreement.

15. IT IS FURTHER ORDERED that pending further order of this court, all proceedings in this matter except those contemplated by this order and in the settlement agreement are STAYED.

16. The court expressly reserves the right to adjourn or to continue the final approval hearing from time-to-time without further notice to class members, except that a notice of

continuance shall be provided to all class members who submit a notice of objection.  In the event the settlement does not become final for any reason, this preliminary approval order shall be of no further force or effect and the fact that the parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, and not be admissible in connection with, the issue of whether a class should be certified in a non-settlement conference.

The motion for preliminary approval is GRANTED and the joint status request is DENIED AS MOOT.

IT IS SO ORDERED.  This order resolves ECF Nos. 178 and 186.

DATED:  October 6, 2020.

CHIEF UNITED STATES DISTRICT JUDGE