UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael H. Stoddart,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Express Services, et al.,<br><br>　　　　　　Defendants. | No. 2:12-cv-01054-KJM-CKD<br><br>ORDER |

The court preliminarily approved settlement of this wage and hour class action. Now, in separate motions, plaintiff moves for final approval of the class action settlement, Mot. Final Approval, ECF No. 198; Mem. Final Approval, ECF No. 198-1, and an award of attorney fees and costs, Mot Att'ys Fees, ECF No. 192; Mem. Att'ys Fees, ECF No. 192-1. As explained below, the court **grants** both motions.

I.      **BACKGROUND**

Plaintiff Michael Stoddart brought this class action in state court alleging several California Labor Code violations against defendants Express Services, Inc., Phillips & Associates, Inc., Western Wine Services, Inc., and Elaine Martin. *See generally* Compl., Notice of Removal Ex. A, ECF No. 1-1. Defendants removed the case to this court on April 20, 2012. Notice of Removal, ECF No. 1. Plaintiff amended the complaint on October 7, 2015, alleging defendants failed to provide meal and rest breaks, pay overtime wages, issue accurate wage

1

statements, and pay wages due upon termination of employment. *See generally* Second Am. Compl. ("SAC"), ECF No. 94. Plaintiff also brought a claim under the California Private Attorneys General Act (PAGA). *Id.*

Plaintiff first moved for preliminary approval of class action settlement on March 9, 2018. Prelim. Approval of Class Action Settlement Mem. P. & A. ("Pl.'s Mem. I"), ECF No. 156-1. Following a hearing, the court denied the motion because plaintiff had not demonstrated the class could be certified under Rule 23 or that the proposed agreement was fair, reasonable and adequate. Prev. Order (Feb. 1, 2019) at 2, ECF No. 174. Plaintiff filed a second motion for preliminary approval on December 19, 2019. Prelim. Approval of Class Action Settlement Mem. P. & A. ("Pl.'s Mem. II"), ECF No. 178. The court held a hearing on the renewed motion on February 7, 2020. Hr'g Minutes, ECF No. 184. On October 7, 2020, the court granted plaintiff's second motion for preliminary approval, certifying the class. *See generally* Prev. Order (Oct. 7, 2020), ECF No. 187.

The court preliminarily approved a gross settlement amount of $10,000,000 and the following deductions from the gross settlement amount:

    (1) $2,500,000 for attorneys' fees and $55,372.91 for litigation expenses;

    (2) $10,000 for a service payment to class representative Michael Stoddart;

    (3) $365,066 for administration expenses to Rust Consulting, Inc.; and

    (4) $50,000 for a PAGA payment, with 75 percent being paid to the Labor Workforce and Development Agency.

Mem. Final Approval at 8. The net settlement fund estimated at $7,032,061.09 was to be allocated among the class, the PAGA group, and the wage statement subclass. Mem. Final Approval at 8 (citing Settlement Agreement § I ¶¶ 7–9; § III ¶ 12(a)–(d), Khoury Decl. Ex. 1, ECF No. 178-2). Participating class members would release the wage and hour claims alleged here and receive shares of the net settlement fund proportionate to "the number of weeks they worked at any time during the period from March 23, 2008 through December 31, 2017." Mem. Final Approval at 8.

/////

In its previous order the court noted final approval would be subject to the parties resolving three issues. First, the proposed notice to class members had to clarify class members' ability to appear at the final approval hearing with an attorney. Prev. Order (Oct. 7, 2020) at 24. This deficiency was corrected and the court approved the notice, which was sent to the class. Revised Notice, ECF No. 188; Min. Order, ECF No. 190. Next, the court noted a Lodestar cross-check would be necessary for the requested attorneys' fees given the clear sailing provision whereby defendants would not oppose any request for attorneys' fees not exceeding 25 percent of the gross settlement amount. Prev. Order (Oct. 7, 2020) at 22. Finally, the court directed plaintiff to provide the court with a more detailed explanation of how the proposed settlement serves the purposes of PAGA. *Id.* at 26.

Plaintiff now moves for attorneys' fees, ECF No. 192, and final approval of the class settlement, ECF No. 198. The court held the final approval hearing on May 7, 2021. Class counsel Michael Singer attended as lead counsel, with Diana Khoury and Graham Hollis also present. For defendants, Morgan Forsey was present for Express Services, and Phillips & Associates and Fraser McAlpine appeared on behalf of Western Wine Services. Also, in attendance was Nicholas Field, a participating class member who filed one of the few objections to the settlement. Field Obj., ECF No. 194

**II.    LEGAL STANDARD**

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). When, as here, a settlement agreement would bind absent class members, the court must hold a hearing and may only approve the settlement "on finding that it is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). To make such a finding, the court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

*Id.*

Before these provisions were incorporated into Rule 23(e), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendments. Those other factors still remain relevant, allowing courts to consider:

  (1) the strength of the plaintiff's case;

  (2) the risk, expense, complexity, and likely duration of further litigation;

  (3) the risk of maintaining class action status throughout the trial;

  (4) the amount offered in settlement;

  (5) the extent of discovery completed and the stage of the proceedings;

  (6) the experience and view of counsel;

  (7) the presence of a governmental participant; and

  (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (line breaks added for readability) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### III. ANALYSIS

The relevant Rule 23 and other factors favor final approval of the proposed settlement here. This action encompassed nearly ten years of litigation, including two motions to dismiss, two motions for preliminary approval, several discovery disputes, and two mediations. Prev. Order (Oct. 7, 2020) at 14. The class was represented by experienced counsel and the court finds no reason to reconsider its previous conclusion that class counsels' representation was adequate.

Similarly, the court finds no reason to alter its early conclusions that the representation of the class by the named plaintiff was adequate and that the incentive award of $10,000 has not incentivized plaintiff to act contrary to the class's interests. *Id.* at 13–14. To review, courts

consider several factors when deciding whether to award an incentive fee to a named plaintiff: (1) "the risk to the class representative in commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative"; (4) "the duration of the litigation;" and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-548, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). The balance of the factors weighs in favor of approving the service award. Mr. Stoddart has provided support for this litigation for the nearly ten years it has taken to get to this stage. He "answered written discovery, including 119 requests for production and 21 interrogatories, which required extensive research on his part. . . . He provided two sworn depositions, made himself available during mediation, and updated counsel with whatever information they needed." Prev. Order (Oct. 7, 2020) at 20 (citing Stoddart Decl. ¶¶ 8–14, ECF No. 178-4). Mr. Stoddart also took on his role knowing he faced risks both during litigation and after given that future employers might look askance at him for filing this suit. *Id*. He has also agreed to a general release, which no other class member was required to sign. Stoddart Decl. ¶ 17. The requested $10,000 is on the high end of what is typically approved for incentive awards, "but not out of line with precedent." *See Smothers*, 2020 WL 1532058, at *12 (citations omitted).

The court also does not break with its prior findings that the agreement was negotiated at arm's length, Prev. Order (Oct. 7, 2020) at 19, and achieved an adequate amount of relief for the class, *id.* at 17–18. The gross settlement amount of $10 million represents 40 percent of defendants' total exposure. *Id.* at 17. As the court explained previously the amount is reasonable considering the "potential impediments to full recovery in this case, and the prospects of plaintiff's losing at trial or on appeal, with all attendant costs." *Id.* at 18; *see, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he Settlement amount . . . was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."). The agreement also treats all members equitably with respect to each other.

The net settlement amount will be allocated among the class, the PAGA group, and the wage statement subclass, with class members' shares calculated based on the "number of weeks they worked at any time during the period from March 23, 2008 through December 31, 2017." Mem. Final Approval at 8 (citing Khoury Decl. ¶ 44, ECF No. 198-2). Class members will receive payments averaging $48.34, with the highest payments reaching $1,388.77. Mem. Final Approval at 1. The above conclusions are further supported by class members' responses. Only four members objected and 517, or 0.35 percent, opted-out. Mem. Final Approval at 1 (citing Pikus Decl. ¶¶ 18, 19, ECF No. 198-3[1]; Khoury Decl. ¶ 12). The court has reviewed the objections, Pikus Decl. Ex. E, ECF No. 198-3, which other than Mr. Field's objection, include a statement from someone who "was never negatively affected by Express Services, and always received [her] fair pay," Pikus Decl. Ex. E at 35, and two assertions that the amount of individual class payments are not sufficient, *id*. at 33–34. While the court has considered these members' concerns that the settlement does not fully compensate them for their labor, it is not dissuaded from finding the settlement is fair and adequate overall. After discussion with counsel at the preliminary hearing, the court directed counsel to file the opt-out forms, which it did. ECF No. 203. No form contains any indication that the persons completing them were confused or had unanswered questions. Based on this record, and the relatively low percentage of opt-outs given the size of the class, they do not preclude approval here.

As noted, Mr. Field is an objector who wishes to participate in the settlement but who appeared at the final approval hearing to articulate his objection. His objection stems from the outcome of a case he filed individually in Shasta County. At hearing, he informed the court that Express did not appear in that matter, but the state court did not award him any damages based on lack of evidence. Before this court, he asserts he is entitled to damages apart from the individual payment he will receive out of the settlement, including for pain and suffering. He appears to argue he should have won his state court case and should receive the damages he sought in that case through the settlement here. The court finds Mr. Fields' objection does not indicate the

---

[1] Plaintiff refers to this as the "Rust" Declaration, as it was made on behalf of Rust Consulting.

settlement is unfair, unreasonable or inadequate. Mr. Field's only recourse appears to be through additional litigation in state court, if that avenue remains open to him.

The court thus turns to its few remaining concerns: the parties' compliance with the PAGA, the proposed attorneys' fee award, and reimbursements for litigation costs and administrative fees.

### A. Attorneys' Fees

The plaintiff requests attorneys' fees of $2,500,000, and reimbursement of litigation costs. Mem. Att'ys Fees at 10. "The court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even if the parties have agreed to the amount, the court must still ensure the award is reasonable. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

#### 1. Ninth Circuit Benchmark

The Ninth Circuit has set the benchmark for attorney's fees at 25 percent of the gross settlement amount, *see In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018), though "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure," *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942). The court may conduct a lodestar cross-check in evaluating the reasonableness of a percentage recovery of a common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

While the proposed award is squarely within the 25 percent benchmark, the court conducts a lodestar cross-check to determine the reasonableness of the attorneys' fees given its prior reservations surrounding the clear-sailing provision.

#### 2. Lodestar Cross-Check

In conducting a lodestar cross-check, the court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted). "This amount may be

increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Wilson v. Metals USA, Inc.*, No. 12-568, 2021 WL 516585, at *6 (E.D. Cal. Feb. 11, 2021) (quoting *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted)). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

        a)        Lodestar Amount

Class counsel provides detailed breakdowns of the hours spent, showing a total of 4,828.2 hours, for a total in $1,943,878 fees between the two firms that worked on this matter. Khoury Decl. Ex. 2, ECF No. 192-2. Specifically, eight different attorneys and three paralegals worked on this matter at Cohelan, Khoury & Singer as shown below.

| Attorney | Years Admitted | Hours | Billable Rate | Proposed Lodestar |
|---|---|---|---|---|
| Timothy D. Cohelan | 47 | 14.5 | $ 900 | $ 13,050.00 |
| Isam C. Khoury | 47 | 46.7 | $ 875 | $ 40,862.50 |
| Michael D. Singer | 37 | 129.6 | $ 875 | $ 113,400.00 |
| Diana M. Khoury | 34 | 148.2 | $ 725 | $ 107,445.00 |
| Marta Manus | 13 | 32.7 | $ 575 | $ 18,802.50 |
| Janine R. Menhennet | 28 | 253.1 | $ 550 | $ 139,205.00 |
| Kimberly D. Neilson | 20 | 98.0 | $ 550 | $ 53,900.00 |
| Jennifer L. Connor | 15 | 49.3 | $ 550 | $ 27,115.00 |
| Amber Worden, Certified Paralegal | N/A | 10.3 | $ 200 | $ 2,060.00 |
| Matthew Atlas, Paralegal | N/A | 44.9 | $ 170 | $ 7,633.00 |
| Carmen Beatrice Cadena, Paralegal | N/A | 224.1 | $ 170 | $ 38,097.00 |

Additionally, at GrahamHollis A.P.C., five attorneys, fourteen paralegals, one case manager and one law clerk worked on this matter, as shown below.

/////

| Attorney | Years Admitted | Hours | Billable Rate | Proposed Lodestar |
|---|---|---|---|---|
| Graham Hollis, Shareholder | 35 | 466.5 | $ 850 | $ 396,525.00 |
| Joe Jaramillo, Associate | 26 | 22.3 | $ 700 | $ 15,610.00 |
| Marta Manus, Associate | 13 | 735.9 | $ 575 | $ 423,142.50 |
| Geoff LaVal, Associate | 10 | 247.4 | $ 550 | $ 136,070.00 |
| Paloma Moreno-Acosta, Associate | 5 | 125.8 | $ 400 | $ 50,320.00 |
| Paralegals and Clerks | N/A | 1953.9 | $125 – $200 | $348,140.50 |

Counsel have also provided declarations in support of their hourly rates, evidence their rates are in line with those in the relevant community, *see Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and itemized records to support the number of hours they worked, *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The court finds counsel has provided adequate detail to conduct a lodestar cross-check here. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." (citation omitted)); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'" (citation omitted)). Given the extent of motion practice in this case spanning nearly ten years and the time required for two rounds of mediation, the court finds 4,828.2 is a reasonable number of total hours, as allocated across attorneys, to use for the lodestar cross-check.

The court turns to whether counsels' rates are reasonable. Courts in the Eastern District have accepted hourly rates between $370 and $495 for associates, though it is common practice to approve lower rates, particularly for attorneys with less experience. *Milburn v. PetSmart, Inc.*, No. 18-535, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019) (approving hourly rates of $495 for associates with seven years' experience); *In re Taco Bell Wage and Hour Actions*,

9

1  222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (noting courts in this district have found
2  reasonable $350 to $400 per hour for attorneys with twenty or more years' experience, $250 to
3  $350 per hour for attorneys with less than fifteen years' experience, and $125 to $200 per hour
4  for attorneys with less than two years' experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-964,
5  2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for
6  attorneys with more than twenty years of experience, and between $175 and $300 for attorneys
7  with less than ten years' experience).

8  Attorney Paloma Moreno-Acosta has the lowest rate among the associates at $400 per
9  hour. As she only has five years of experience, this places her well above the rate courts in this
10 district typically have approved. *See Wilson*, 2021 WL 516585, at *7 (approving $250 hourly
11 rate of associate with three years' experience) (citation omitted)). The remaining associates, who
12 have between ten and twenty years of experience, charge rates between $550 to $575. *Z.F. v.
13 Ripon Unified Sch. Dist.*, No. 2:10-523, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017)
14 (noting "[p]revailing hourly rates in the Eastern District of California are in the $350–$550/hour
15 range for experienced attorneys with over 15 years of experience in civil rights and class action
16 litigation." (citation omitted)). The court reduces Paloma Moreno-Acosta's hourly rate to $300
17 per hour and leaves the others unchanged.

18 The requested rates from the senior counsel and partners with over twenty years'
19 experience, ranging from $700 to $900, also are well above those typically approved in this
20 district. *See Smothers*, 2020 WL 1532058, at *9 (applying $695 per hour to lodestar calculation
21 for attorney with 30 years' experience). While attorneys Diana Khoury, Michael Singer, Isam
22 Khoury, Timothy Cohelan, Graham Hollis and Joe Jaramillo each have extensive experience in
23 litigating wage and hour class action cases, *see* Prev. Order (Oct. 7, 2020) at 14; Khoury Decl.
24 Ex. 2, the court will use the upper range of hourly rates previously found to be reasonable in this
25 district to conduct the lodestar. *See Milburn*, 2019 WL 5566313, at *9 (reducing Attorney
26 Hollis's then $700 hourly rate to $695 per hour "the upper range of hourly rates previously found
27 to be reasonable in this district . . . in calculating attorney Hollis's lodestar"). The court thus
28 /////

applies a $695 rate for attorneys with thirty years of experience. *See Smothers*, 2020 WL 1532058, at *9; *Greer*, 2020 WL 5535399, at *10.

The resulting lodestar amount based on the reasonable number of hours expended and the reasonable rates of class counsel is $1,879,534.00. Comparing the lodestar against the requested fee amount of $2,500,000 would result in a multiplier of 1.3. The court thus considers whether the applicable factors justify such a multiplier.

b) *Bluetooth* factors

Counsel represented the class through extensive discovery and multiple motions and negotiations. The quality of representation indicates a positive multiplier is acceptable. *See In re Bluetooth*, 654 F.3d at 942.

The foremost consideration is the benefit obtained for the class. *Id.* Counsel successfully negotiated a common fund of $10,000,000, inclusive of attorneys' fees and costs, for 145,458 class members, Pikus Decl. ¶ 21. Class members will receive an average estimated payment of $48.19, with the highest estimated payments being $1,384.34. Mem. Att'ys Fees at 11 (citing Pikus Decl. ¶ 19; Khoury Decl. ¶¶ 11, 53). Counsel also obtained remedial benefits through this action, given that shortly after the suit was filed in 2012 defendant made changes to their meal policies and wage statements to conform with applicable laws. *Id.* at 13. Additionally, as noted class members' reactions are overwhelmingly positive regarding the settlement, with only four members objecting and 517 members requesting exclusion. Mem. Final Approval at 9. These factors support adding a positive multiplier.

Nothing in the record or the pending motion suggests the claims here were novel or complicated for counsel; thus, this third factor does not support a positive multiplier.

Counsel undertook the litigation on a contingent fee basis and "faced the significant risk that they could litigate this case for many more years, expend many thousands of hours of work, at great expense, and never be paid." Mem. Att'ys Fees at 17–18 (citing Khoury Decl. ¶ 61). This factor justifies a positive multiplier. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market

/////

to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

On balance, the factors justify the positive lodestar multiplier. *Wilson*, 2021 WL 516585, at *8 ("All four factors favor a positive multiplier, and the multiplier of 1.2 is at the low end of the acceptable range sanctioned by the Ninth Circuit."). Accordingly, the court finds the attorneys' fees requested are reasonable as within the acceptable range in the Ninth Circuit.

### 3. Request for Costs

Class counsel seeks up to $70,000 in litigation costs[2] and $365,066 in settlement administration costs. Mem. Att'ys Fees at 23. The court must determine whether the proposed award of costs and expenses is appropriate. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 13-234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks, citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id*. (internal quotation marks and citation omitted). Counsel seeks reimbursement for the type of costs courts routinely approve for reimbursement such as filing fees, postage, travel, mediation and claims administrator fees and provides an itemized billing as support. Hollis Decl. Ex. 3, ECF No. 192-3; Khoury Decl. Ex 5, ECF No. 192-2; *see Barbosa*, 297 F.R.D. at 454 ("[C]osts incurred, which include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges . . . are routinely reimbursed." (citation omitted)). Given the length and complexity of this litigation, the court finds the request for reimbursement of litigation to be reasonable.

The court also finds the administrative costs to be reasonable. The parties agreed to these costs prior to the court's preliminary approval. The relatively large amount reflects the size of the class, at 145,458 participating members, and the reasonable costs and efforts of the settlement administrator. Suppl. Pikus Decl. ¶ 3, ECF No. 201; *Id* Ex. A (itemized receipt from

---

[2] Presently the litigation costs are estimated at $55,372.91. Mem. Att'ys Fees at 1; Khoury Decl. ¶ 42, ECF No. 192-2.

administrator showing costs for printing and distributing notice, tax reporting, answering calls from class members, and handling of uncashed checks). Given the relevant considerations, the amount is not out of the realm of reason. *See Hose v. Washington Inventory Serv., Inc.*, No. 14-2869, 2020 WL 3606404, at *10 (S.D. Cal. July 2, 2020) (approving award of administrative costs equaling $220,000 for administering settlement for class of 14,676 opt-in plaintiffs); *Destefano v. Zynga, Inc.*, No. 12-4007, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (approving up to $900,000 in settlement administration costs); *Hubbard v. Donahoe*, 958 F. Supp. 2d 116, 122 (D.D.C. 2013) (finding $110,000 in administration costs reasonable).

### B.    PAGA

"[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)). "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal quotation marks and citations omitted). Any PAGA judgment binds not only members of the class, but similarly situated workers who opt out of the class, and the state's labor law enforcement agencies. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014). A court analyzing the compromise of a PAGA claim must consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted). However, neither the PAGA itself nor the California state court has established any specific standard for evaluating PAGA settlements. *See Ramirez v. Benito Valley Farms, LLC*, No. 16-4708, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017).

The court, as it has done in the past, refers to the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), to evaluate the PAGA settlement. *Pena v. Taylor Farms Pac., Inc.*, No. 13-1282, 2021 WL 916257, at *7–8 (E.D. Cal. Mar. 10, 2021); *Decker v. AllStates*

*Consulting Servs., LLC*, 18-3216, 2020 WL 7769842, at *2 (E.D. Cal. Dec. 30, 2020). The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.

Plaintiff estimates the maximum PAGA penalties are quite high, $15,961,896 for each underlying violation. Mem. Final Approval at 15. The settlement proposes a $50,000 PAGA penalty, representing 0.5 percent of the gross settlement amount, *Id.* at 16, which is within the range previously approved by courts in this district. *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 17-853, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving PAGA penalty approximately 2 percent of the gross settlement); *Garcia v. Gordon Trucking, Inc.*, No. 10-324, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving PAGA penalty of $10,000 with a $3.7 million gross settlement). The parties have provided support for the deep discount here and shown the settlement still achieves the purposes of the PAGA, namely deterrence of noncompliance and the collection of penalties, Mem. Final Approval at 15, while avoiding the risk of not being able to prove underlying violations given defendant's prompt change in policies once confronted, *id*. at 15–16. Moreover, the Labor & Workforce Development Agency's nonobjection to the settlement signals its reasonableness. *Id.* at 15.

For the reasons discussed above, the *Hanlon* factors favor approval of the settlement agreement. Therefore, the court approves the PAGA penalties payment.

### IV. CONCLUSION

Plaintiff's motion for attorneys' fees, costs and expenses and a class representative enhancement payment, ECF No. 192, and motion for final approval of the class settlement, ECF No. 198, are **granted**. Without affecting the finality of this order, the court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the settlement.

1       Class counsel is directed to provide the Courtroom Deputy with the address for Mr. Field
2 so the Clerk of Court may serve a courtesy copy of this notice on him.
3       This order resolves ECF Nos. 192, 198, 204.
4       IT IS SO ORDERED.
5 DATED: December 3, 2021.

                                                  CHIEF UNITED STATES DISTRICT JUDGE